IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD P. BOYLES, JR.,<br>　　　Plaintiff<br><br>　　　　　v.<br><br>AMERICAN HERITAGE LIFE<br>INSURANCE COMPANY d/b/a<br>ALLSTATE BENEFITS, a/k/a ALLSTATE<br>LIFE INSURANCE COMPANY OF NEW<br>YORK, subsidiaries of THE ALLSTATE<br>CORPORATION; JEFFREY AZZATO; ST.<br>MARYS INSURANCE AGENCY, INC.;<br>and UNUM LIFE INSURANCE<br>COMPANY OF AMERICA, a/k/a UNUM<br>GROUP,<br>　　　Defendants | CIVIL ACTION NO.  15-274 JOHNSTOWN<br><br>Judge Kim R. Gibson<br><br><br><br><br><br><br><br><br><br>**ELECTRONICALLY FILED** |

**BRIEF OF DEFENDANTS JEFFREY AZZATO AND
ST. MARYS INSURANCE AGENCY, INC. IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendants Jeffrey Azzato ("Mr. Azzato") and St. Marys Insurance Agency, Inc. ("St.

Marys"), by their attorneys, MacDonald, Illig, Jones & Britton LLP, file this Brief in Support of

Motion to Dismiss Plaintiff's First Amended Complaint, and respectfully move for dismissal of

Counts VIII through XII, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure:

**I.    Statement Of Facts**

**A.    Parties**

Boyles was an employee of St. Marys from October 2006 until November 22, 2013.  (Am.

Compl., ¶ 29-31, 71).  St. Marys is an independent insurance agency with its principal office in

St. Marys, Pennsylvania. (Am. Compl., ¶ 9). Mr. Azzato is alleged to be the president and owner of St. Marys. (Am. Compl., ¶ 8).

According to the First Amended Complaint, St. Marys sponsored an employee benefit plan for its employees, including Boyles, which included group short-term and long-term disability insurance. (Am. Compl., ¶ 1, 32, 46, 49, 87-88). The St. Marys group disability plan was insured by a policy or policies issued by American Heritage Life Insurance Company ("American Heritage") from January 1, 2010 through July 31, 2013, and thereafter by a policy or policies issued by Unum Life Insurance Company of America ("Unum") beginning August 1, 2013. (Am. Compl., ¶ 32-34, 46, 49, 87-90). Boyles alleges that Mr. Azzato was a fiduciary as defined by § 3(21)(A) of ERISA by virtue of the exercise of discretionary authority or control over St. Marys' group disability plans, that Mr. Azzato was the administrator of the St. Marys disability benefit plan, and that there existed a principal-agent relationship between St. Marys and Mr. Azzato with regard to the St. Marys disability plan. (Am. Compl., ¶ 143-145, 181-182).

### B.    The St. Marys Plan And Policies

According to the First Amended Complaint, as a benefit of his employment by St. Marys, as of January 1, 2010 Boyles was a participant in a Group Voluntary Disability Insurance Plan underwritten by American Heritage. (Am. Compl., ¶ 32-33).    The American Heritage policy provided short and long-term disability benefits as well as life insurance in the amount of $220,000.00. (Am. Compl., ¶ 34).

The American Heritage policy was in effect from January 1, 2010 until July 31, 2013, when it was terminated by Boyles' employer, St. Marys. (Am. Compl., ¶ 33). The American Heritage policy provided short-term (partial and total) disability benefits and long-term disability benefits

under circumstances described in the policies.  (Am. Compl., ¶ 35-45).    In particular, to be considered partially or totally disabled, a participant applying for short-term disability benefits had to be unable to perform the material and substantial duties of his regular occupation.  (Am. Compl., ¶ 36-38).  Additionally, for partial short-term disability, the participant also had to have incurred a 20% or more loss in monthly earnings.  (Am. Compl., ¶ 38).  For long-term disability benefits, during the elimination period and first 24 months of payments, the participant is considered disabled if he is unable to perform the material and substantial duties of his regular occupation and has 20% or more loss in monthly earnings.  (Am. Compl., ¶ 39).

On August 1, 2013, St. Marys changed the firm's disability insurance coverage to Unum.  (Am. Compl., ¶ 46).  At the time of the change, Boyles alleges that he was on a medical leave of absence, although he was being paid his full salary.  (Am. Compl., ¶ 47, 69-70).  Boyles avers that he was not provided notice of the termination of the American Heritage policy and the switch to the Unum policy.  (Am. Compl., ¶ 48).

The Unum short and long-term disability plans extended coverage to all "full-time employees in active employment in the United States with the employer."  (Am. Compl., ¶ 50).  In order to be considered in active employment, "[e]mployees must be working at least 37.5 hours per week."  (Am. Compl., ¶ 51).  The Unum short and long-term plans also imposed a "Waiting Period" and an "Elimination Period" according to the terms of the plans.  (Am. Compl., ¶ 52-56).

## C.    Boyles' Applications For Disability Benefits

Against this background, the First Amended Complaint alleges that Boyles had back surgery in October 2012, and in December 2012 informed Mr. Azzato, St. Marys' President, that he intended to file a disability claim.  (Am. Compl., ¶ 60-61).  In response, Mr. Azzato told Boyles

that St. Marys would continue to pay Boyles his salary while he recovered, so Boyles elected not to file a disability claim at that time. (Am. Compl., ¶ 62-63). Boyles continued to work at St. Marys as his condition allowed, although his hours of work decreased beginning in May 2013 to approximately 10 to 20 per week, until sometime in June 2013 his work "virtually ceased," and Boyles contends he was "unable to perform the material and substantial duties of his job." (Am. Compl., ¶ 64-68). Boyles continued to be paid his full salary but the decline in Boyles' weekly hours continued, and in November 2013 Mr. Azzato informed Boyles that St. Marys could no longer pay his full salary due to his "diminished work hours." (Am. Compl., ¶ 68-69). St. Marys paid Boyles through November 22, 2013, when Boyles' employment by St. Marys ceased. (Am. Compl., ¶ 70-71).

On November 26, 2013, Boyles filed a disability claim with American Heritage, which was denied on December 19, 2013 due to Boyles' disability being the result of a work-related injury. (Am. Compl., ¶ 72-73). Boyles appealed the denial, but the denial was upheld because, according to medical documentation and information supplied by St. Marys, Boyles was able to perform the material and substantial duties of his occupation, he did not lose 20% or more of his monthly earnings, and he continued to work until November 22, 2013 -- after the American Heritage policy terminated on July 31, 2013. (Am. Compl., ¶ 74-75). A second appeal was denied by American Heritage on or about June 9, 2014. (Am. Compl., ¶ 76)

At some point, Boyles also filed a disability claim with Unum, which was denied, appealed and denied again on or about June 2, 2015 because Unum determined that Boyles was not working the required number of hours (37.5 per week) to be considered in active employment when the Unum policies became effective on August 1, 2013. (Am. Compl., ¶ 80).

### D.     Allegations Against Mr. Azzato And St. Marys

Boyles commenced this action by filing a Complaint in Civil Action in the Court of Common Pleas of Blair County on September 29, 2015.  The state court action subsequently was removed to this Court on the basis of federal question jurisdiction under ERISA.

In his original Complaint, Boyles brought the following claims against Mr. Azzato:  Count IX (Negligence); Count X (Common Law Fraud); Count XI (Termination Without Notice); Count XII (Breach of Fiduciary Duty Pursuant to ERISA, 29 U.S.C. § 1104); and Count XIII (Estoppel). Boyles alleged only one claim against St. Marys - Count XIV (Respondeat Superior).  Each of the four state common law counts asserted against Mr. Azzato (Counts IX, X, XI and XIII) and the single count against St. Marys (Count XIV) related to and had at its core St. Marys' group disability benefits plan -- underwritten at different times by American Heritage and Unum -- which Boyles admitted was an employee welfare benefit plan governed by ERISA.  (Am. Compl., ¶ 15).

Each of the defendants filed motions to dismiss the original complaint, primarily but not exclusively on the grounds that the majority of the claims asserted were state law claims preempted by ERISA.  In response, on November 19, 2015, Boyles filed a First Amended Complaint which purportedly eliminated his state law claims and crafted additional claims against the defendants under ERISA.  Counts VIII, IX and X of the First Amended Complaint directed to Mr. Azzato and Counts XI and XII directed to St. Marys consist of the following:

> 1.     Count VIII:  Breach of fiduciary duty against Mr. Azzato under Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), based upon (a) Mr. Azzato's representation in December 2012 that he (St. Marys) would continue to pay Boyles' full salary while he recovered from back surgery thereby inducing Boyles not to file a disability claim and (b) switching plan providers

effective August 1, 2013 while Boyles was on medical leave without notifying Boyles.  (Am. Compl., ¶ 148-150).

2.      Count IX:  Equitable estoppel against Mr. Azzato under Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), based upon essentially the same averments as Boyles' breach of fiduciary claim in Count VIII.  (Am. Compl., ¶  153-171).

3.      Count X:  Interference with ERISA rights against Mr. Azzato under Section 510 of ERISA, 29 U.S.C. § 1140, alleging that Mr. Azzato's representation in December 2012 that he would continue to pay Boyles' full salary while he recovered and the change in plan providers effective August 1, 2013 interfered with Boyles' ability to receive disability benefits. (Am. Compl., ¶ 173-178).

4.      Count XI:  Respondeat superior against St. Marys, asserting that a principal-agent relationship existed between St. Marys and Mr. Azzato and that St. Marys is liable for actionable conduct of Mr. Azzato.  (Am. Compl., ¶ 180-183).

5.      Count XII:  Breach of fiduciary duty against St. Marys under Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), based upon essentially the same averments as Boyles' breach of fiduciary claim against Mr. Azzato in Count VIII.  (Am. Compl., ¶ 185-192).

Additionally, the First Amended Complaint includes the following requests for relief against Mr. Azzato and St. Marys:

1.      Money damages in excess of $50,000 exclusive of costs, interest, attorneys' fees and other costs, for harm consisting of denial of disability benefits, severe emotional distress, loss of enjoyment and harm to reputation.  (Count IX, XI, XII).

2.      An order granting payment of benefits, or granting any other legal or equitable remedy the Court deems appropriate.  (Count X).

For the reasons set forth below, Counts VIII through X fail to state claims against Mr. Azzato for which relief may be granted under ERISA.  Likewise, Counts XI and XII, which assert ERISA claims against St. Marys based entirely upon the actions of St. Marys' President, Mr. Azzato, also must be dismissed.

## II.   <u>Argument</u>

### A.   **Standard For Dismissal**

In reviewing a Rule 12(b)(6) motion, the court must accept as true all factual allegations contained in the Complaint, as well as all reasonable inferences that may be drawn from those allegations, and view them in the light most favorable to the non-moving party. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir.2008). The Court, however, need not accept as true "conclusory allegations of law, unsupported conclusions and unwarranted inferences." *Pennsylvania House, Inc. v. Barrett*, 760 F.Supp 439, 449 (M.D. Pa. 1991). In *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009), the Supreme Court discussed "[two working principles" underlying the standard it had set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007). "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 1950 (citing *Twombly*, 550 U.S. at 556). "In deciding a Rule 12(b)(6) motion to dismiss, a court does not have to accept or give credit to bald assertions, legal conclusions, unsupported conclusions, unwarranted inferences, unwarranted deductions, footless conclusions of law, or sweeping legal conclusions cast in the form of factual conclusions." *Bds. of Trs. of the Sheet Metal Workers Local Union No. 12 Combined Funds v. TQA Fabrications, Inc.*, 2006 U.S. Dist. LEXIS 14220, at *5-6 (W.D.Pa. Mar. 30, 2006). Thus, a Rule 12(b)(6) motion does not serve to question a plaintiff's well pled facts, but rather tests the legal foundation of his claims. *United States v. Marisol, Inc.,* 725 F.Supp. 833 (M.D. Pa. 1989).

**B.**     **Count VIII Of The First Amended Complaint Fails To State A Cause Of Action Against Mr. Azzato For Breach Of Fiduciary Duty Under Section 502(a)(3) Of ERISA**

In Count VIII of the First Amended Complaint, Boyles asserts a claim against Mr. Azzato for breach of fiduciary duty under Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3).   For several reasons, the allegations in Count VIII of the First Amended Complaint fail to support a cause of action upon which relief can be granted, and Count VIII must be dismissed.

Reduced to its essential components, the breach of fiduciary claim in Count VIII is based upon three discreet acts or omissions attributed to Mr. Azzato:  (1) in response to Boyles' statement in December 2012 that he intended to file a disability claim, representing to Boyles that Mr. Azzato (St. Marys) would continue to pay Boyles' full salary while he recovered thereby inducing Boyles not to file a disability claim;[1] (2) switching plan providers to a plan with lesser benefits while

---

[1] As discussed below, Mr. Azzato's offer to pay Boyles' full salary while he recovered (Am. Compl., ¶ 62) is not a misrepresentation at all because, as alleged in the First Amended Complaint, Boyles did continue to receive his full

Boyles was on medical leave without notifying Boyles of the change; and (3) failing to notify Boyles of the change in plans despite knowing Boyles' circumstances. (Am. Compl., ¶ 147). The First Amended Complaint contends that Mr. Azzato's representations and/or misrepresentations were material upon which Boyles relied to his detriment -- presumably by not filing a claim for disability benefits. (Am. Compl., ¶ 148-150).

Section 502(a)(3) of ERISA provides that a civil action may be brought,

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3). ERISA provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). The fiduciary may not, in the performance of these duties, "materially mislead those to whom the duties of loyalty and prudence are owed." *In re Unisys Corp. Retiree Med. Benefit ERISA Litig.*, 57 F.3d 1255, 1261 (3d Cir. 1995). A plan administrator acts as a fiduciary when explaining plan benefits and business decisions about plan benefits to its employees.[2] *See Unisys*, 57 F.3d at 1261 n. 10.

In order to sustain a breach of fiduciary duty claim, Boyles must plead and eventually establish each of the following elements: (1) the defendant's (here Mr. Azzato) status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation by Mr. Azzato; (3) the materiality of that misrepresentation; and (4) reasonable and detrimental reliance by Boyles on the misrepresentation.

---

salary from St. Marys through November 22, 2013 during which time Boyles continued to perform his duties as he was able. (Am. Compl., ¶ 64-71).

[2] Boyles alleges that Mr. Azzato "exercised discretionary authority or control over the management or operation of the disability plans . . . ." (Am. Compl., ¶ 144). A fiduciary includes any person who "exercises any discretionary authority or discretionary control respecting management of such plan" and any person who "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). Without admitting the point, Mr. Azzato and St. Marys will assume that Mr. Azzato acted in a fiduciary capacity with respect to certain of the allegations raised in the First Amended Complaint.

*Shook v. Avaya, Inc.*, 625 F.3d 69, 73 (3d Cir. 2010); *Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 73 (3d Cir. 2001).

> **1.     The December 2012 Offer Of Full Salary Continuation Was Not A Misrepresentation[3]**

The first requirement of a breach of fiduciary duty claim is a material misrepresentation. Here, the only affirmative representation cited by Boyles is Mr. Azzato's offer to continue to pay his full salary while he recovered.  (Am. Compl., ¶ 62, 147, 154, 190).  But as is confirmed by Boyles' averments, Mr. Azzato's offer was not a misrepresentation at all -- Mr. Azzato continued to pay Boyles' full salary through November 22, 2013 while he recovered and continued to work as he was able.  (Am. Compl., ¶ 64-71).  There was nothing false, misleading or confusing about Mr. Azzato's offer to continue Boyles' full salary, nor is there any allegation that Mr. Azzato ever misrepresented the terms or conditions of the American Heritage disability policy or Boyles' current or future eligibility for benefits under the policy.  As of December 2012, Boyles clearly knew he could file a disability claim with American Heritage because he declared his intention to do so (Am. Compl., ¶ 61, 153), but instead Boyles chose to accept Mr. Azzato's generous and (undoubtedly more beneficial) offer of full salary continuation while he recovered.  Rather than being misled or confused by a false statement, Boyles made a choice to elect to continue to receive his full salary while working as he was able rather than file a disability claim with American Heritage.  Other than the conversation in December 2012, Boyles does not allege that he made any further inquiries or received any other representations concerning his eligibility for benefits under the American Heritage policy.

---

[3] For purposes of this motion to dismiss only, it will be assumed for the sake of argument that the alleged failure to notify Boyles of the change from American Heritage to Unum effective August 1, 2013 could be considered a misrepresentation by omission.  However, it did not result in detrimental reliance.

Mr. Azzato's statement, therefore, is not a material misrepresentation upon which a breach of fiduciary claim under ERISA may be sustained.

### 2.    Boyles Has Not Adequately Pleaded Reasonable And Detrimental Reliance

In the Third Circuit, reasonable and detrimental reliance is a necessary element of a breach of fiduciary duty claim based upon misrepresentation. *Burstein v. Ret. Account Plan,* 334 F.3d 365, 387 (3d Cir. 2003). The First Amended Complaint does not adequately allege reasonable and detrimental reliance upon Mr. Azzato's offer to continue to pay Boyles' full salary while he recovered and continued to work as he was able, or upon the alleged failure of Mr. Azzato or St. Marys to inform Boyles of the change from the American Heritage to Unum policies, effective August 1, 2013.

In the First Amended Complaint, Boyles avers that he accepted Mr. Azzato's offer of full salary continuation and continued to work at St. Marys as he was able, that up until sometime in May 2013 his weekly hours exceeded 10 to 20 hours per week, and that in May and June 2013 he worked approximately 10 to 20 hours per week. (Am. Compl., ¶ 64-66, 157-159). Only as of "sometime in June 2013" did Boyles' work "virtually cease" at which time he became "unable to perform the material and substantial duties of his job . . . ." (Am. Compl., ¶ 66-67, 15 9). Nevertheless, he continued to receive his full salary through November 22, 2013.

The First Amended Complaint does not articulate how or why Boyles' acceptance of Mr. Azzato's offer of full salary continuation while he recovered was detrimental as of the time the offer was made and accepted in December 2012, nor is there any allegation that Boyles made subsequent inquiries concerning a disability claim or that he detrimentally relied on subsequent statements by Mr. Azzato or St. Marys. Boyles clearly was able to work in December 2012 and

he sustained no loss of salary.  In fact, at no time prior to the termination of the American Heritage policy was Boyles eligible for benefits under the terms of the American Heritage policies because, by his own admission, he was neither partially or totally disabled because he did not become "unable to perform the material and substantial duties of his job due to his condition" until "sometime in June 2013," and he did not sustain a loss of 20% or more of his monthly earnings until November 22, 2013, several months after the American Heritage policy terminated.  (Am. Compl., ¶ 66-70).  Boyles' First Amended Complaint fails to adequately plead and explain detrimental reliance given the facts he has pled.

Boyles also cannot sustain his claim by citing his alleged failure to be notified that St. Marys had changed insurers from American Heritage to Unum, effective August 1, 2013.  The First Amended Complaint does not include any averments explaining how this alleged omission (assuming there was any obligation to provide notice) impacted Boyles' eligibility for benefits under either the American Heritage or Unum policies.  Boyles does not allege that he would or could have done anything different had he been notified of the change from the American Heritage to Unum policy.  Rather, the facts as pleaded by Boyles confirm that under the terms of the American Heritage policy, Boyles did not qualify as disabled under the terms of the American Heritage policy prior to its termination at the end of July 2013 because:  (a) he was performing the material and substantial duties of his regular occupation, as he continued to work in excess of 10 to 20 hours per week prior to May 2013, 10 to 20 hours as of May 2013 albeit fewer hours thereafter, and/or (b) he did not incur a 20% or more loss in monthly earnings, since he received his full salary through November 22, 2013, almost four months after St. Marys changed from American Heritage to Unum.

Finally, Boyles does not have a cognizable claim against Mr. Azzato or St. Marys based upon the denial of his claim for disability benefits under the Unum policy, which became effective August 1, 2013.  By his own averments, Boyles' hours of work decreased to approximately 10 to 20 hours per week in May 2013 and his work at St. Marys "virtually ceased" sometime in June 2013 -- although he continued to be paid his full salary through November 22, 2013.  (Am. Compl., ¶ 65-67).  To be eligible for coverage under the Unum policy, Boyles would have to be working at least 37.5 hours per week.  (Am. Compl., ¶ 50-51).  Thus, well before the American Heritage policy terminated and the Unum policy took effect, Boyles was ineligible for coverage under the Unum policy.  His alleged lack of notice regarding St. Marys' change from American Heritage to Unum, therefore, is irrelevant as respects the denial of disability benefits by Unum.

Accordingly, Count VIII of the First Amended Complaint fails to plead a cause of action for breach of fiduciary duty under ERISA and, therefore, must be dismissed.

**C.     Count IX Of The First Amended Complaint Fails To State A Cause Of Action Against Mr. Azzato For Equitable Estoppel Under Section 502(a)(3) Of ERISA**

In Count IX of the First Amended Complaint, Boyles asserts a claim against Mr. Azzato characterized as federal common law estoppel under ERISA.  For many of the same reasons as Count VIII, this claim fails because the allegations of the First Amended Complaint do not establish a misrepresentation, detrimental reliance or extraordinary circumstances.

Similar to his breach of fiduciary duty claim, Boyles' equitable estoppel claim may be boiled down to a few discreet events:  (1) Boyles' decision not to apply for disability benefits in December 2012 because Mr. Azzato offered to continue to pay his full salary while Boyles recovered and continued to work as he was able; (2) St. Marys' change from American Heritage

to Unum effective August 1, 2013; (3) the cessation of Boyles' employment and the salary payments on November 22, 2013; and (4) Boyles' application to American Heritage on November 26, 2013 and the subsequent denial of that claim.  Viewed in this context, the allegations in the First Amended Complaint are incapable of supporting an equitable estoppel claim under Section 502(a)(3) of ERISA.[4]

Under some circumstances, the Third Circuit does recognize a cause of action by a plan participant for "'appropriate equitable relief . . . to redress [ERISA] violations or . . . to enforce any provisions of [ERISA]'" pursuant to Section 502(a)(3) of ERISA based upon a theory of equitable estoppel.  *Pell v. E.I. DuPont de Nemours & Co., Inc.*, 539 F.3d 292, 300 (3d Cir. 2008), quoting 29 U.S.C. § 1132(a)(3).  To prevail under an equitable estoppel theory, a plaintiff "must establish (1) a material misrepresentation, (2) reasonable and detrimental reliance upon the representation, and (3) extraordinary circumstances."  *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 235 (3d Cir. 1994).

## 1. No Misrepresentation Based Upon Payment Of Full Salary During Recovery

The first requirement of an equitable estoppel claim is a material misrepresentation.  Once again, the only affirmative representation cited by Boyles is Mr. Azzato's offer to continue to pay his full salary while he recovered.  (Am. Compl., ¶ 62, 154).  But Mr. Azzato's offer was not a misrepresentation at all -- Mr. Azzato continued to pay Boyles' full salary while he recovered and continued to work as he was able.  (Am. Compl., ¶ 64-70).  There was nothing false, misleading or confusing about Mr. Azzato's offer to continue Boyles' full salary, nor is there any allegation

---

[4] In Paragraph 171, Boyles avers that "[i]njustice to Plaintiff can be avoided only by enforcing the promise."  (Am. Compl., ¶ 171).  The First Amended Complaint does not indicate what "promise" is referenced.

that Mr. Azzato ever misrepresented the terms or conditions of the American Heritage disability policy or Boyles' current or future eligibility for benefits under the policy. Boyles knew he could file a disability claim with American Heritage but instead he chose to accept Mr. Azzato's offer of full salary continuation while he recovered. Rather than being misled or confused by a false statement, Boyles made a choice to elect to continue to receive his full salary while working as he was able rather than file a disability claim with American Heritage.

### 2.      No Detrimental Reliance Is Evident Under The Facts As Pleaded

For the same reasons that his breach of fiduciary duty claim fails, Boyles cannot meet the detrimental reliance requirement of an equitable estoppel claim. The cause of action requires detrimental reliance upon a misrepresentation, and there was no misrepresentation. Furthermore, the First Amended Complaint does not contain any averments explaining how Boyles' acceptance of the full salary continuation while he recovered and was able to work prevented him from filing a disability claim if he had chosen to do so. Boyles made a choice based upon a "promise" which Mr. Azzato and St. Marys fulfilled.

Likewise, the First Amended Complaint does not include averments which explain how or why Boyles' alleged lack of notice that the American Heritage policy terminated July 31, 2013 caused Boyles to rely to his detriment on the policy continuing to be in force. There is no allegation concerning what he would or would not have done had he been told the American Heritage policy had terminated effective July 31, 2013. As of July 31, 2013, Boyles was ineligible to receive disability benefits because he was neither partially nor totally disabled under the terms of the American Heritage policy because, by his own choice, he had elected to continue to receive his full salary from Mr. Azzato and St. Marys and work as he was able.

### 3.    No Extraordinary Circumstances Are Pleaded

Boyles' equitable estoppel claim also is deficient because the First Amended Complaint lacks averments sufficient to support a finding of "extraordinary circumstances."  "[A] plaintiff must do more than merely make out the ordinary elements of equitable estoppel to establish a claim for equitable estoppel under ERISA." *Kurz v. Phila. Elec. Co.*, 96 F.3d 1544, 1553 (3d Cir. 1996) (internal quotation marks omitted). *See also, Gridley v. Cleveland Pneumatic Co.*, 924 F.2d 1310, 1319 (3d Cir.), cert. denied 501 U.S. 1232 (1991).  The "heightened requirement" of "extraordinary circumstances" to support an equitable estoppel claim under ERISA generally requires "a showing of affirmative acts of fraud or similarly inequitable conduct by an employer," or "a network of misrepresentations that arises over an extended course of dealing between parties," or "the vulnerability of particular plaintiffs."  *Kurz*, 96 F.3d at 1553 (citing cases supporting each requirement). *See also, Jenkins v. Union Labor Life Co.*, 543 Fed.Appx. 180, 185 (3d Cir. 2013); *Advanced Orthopedics and Sports Medicine v. Blue Cross Blue Shield of Mass.*, 2015 U.S. Dist. LEXIS 93855 at * 22-23 (Civ. Action No.: 14-7280, D.N.J., July 20, 2015).

Here, Boyles has not pleaded facts which amount to extraordinary circumstances related to either the representation of full salary continuation or his alleged failure to be notified of the change in policies.  The only representation at issue is Mr. Azzato's statement that he would continue to pay Boyles' full salary while he recovered and work as he was able.  This is not a misrepresentation regarding the terms or conditions of the St. Marys disability benefit plan or Boyles' eligibility for benefits.  In fact, as discussed above, it was not a misrepresentation at all, as Boyles continued to receive his full salary from December 2012 through November 22, 2013.  Furthermore, Third Circuit precedent dictates "that an ERISA reporting or disclosure violation,

such as distribution of an inaccurate summary plan description, cannot provide the basis for equitable estoppel . . . in the absence of extraordinary circumstances." *Gridley*, 924 F.2d at 1319. There is no allegation of affirmative acts of fraud, a network of misrepresentations over an extended course of dealing, or that Boyles in particular was in any way vulnerable.  Thus, Boyles' equitable estoppel claim in Count IX fails to state a claim upon which relief can be granted and must be dismissed.

> **D.      Count X Of The First Amended Complaint Fails To State A Cause Of Action Against Mr. Azzato For Interference With ERISA Rights Under Section 510 Of ERISA**

In Count X, Boyles attempts to plead a cause of action under Section 510 of ERISA, 29 U.S.C. § 1140, against Mr. Azzato for interference with ERISA rights.  Count X fails to state a claim upon which relief may be granted, as there is no allegation that Mr. Azzato or St. Marys engaged in prohibited conduct or that Mr. Azzato or St. Marys had specific intent to violate ERISA.

Section 510 provides in pertinent part:

> **§ 1140.  Interference with protected rights**
>
>  It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act [29 U.S.C.A. § 301 et seq.], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act.

29 U.S.C. § 1140.  "Section 510 was enacted by Congress primarily to prevent employers from discharging or harassing their employees to keep them from obtaining ERISA protected benefits."

*Battoni v. IBEW Local Union No. 102 Employee Pension Plan*, 569 F.Supp.2d 480, 494 (D.N.J. 2008), citing *Kowalski v. L&F Prods.*, 82 F.3d 1283, 1287 (3d Cir. 1996).

To state a claim under Section 510, an employee must allege and ultimately establish (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." *Gavalik v. Continental Can Co.*, 812 F.2d 834, 852 (3d Cir.), cert. denied, 484 U.S. 979 (1987); see also *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 922 (3d Cir. 1990), cert. denied, 499 U.S. 920 (1991). The employee must allege that the defendant "had the specific intent to violate ERISA" and "made a conscious decision to interfere with the employee's attainment of pension eligibility or additional benefits." *Jakimas v. Hoffman-LaRoche, Inc.,* 485 F.3d 770, 785 (3d Cir. 2007) (internal quotations omitted).

In the present case, Boyles fails to state a cause of action under Section 510, because the First Amended Complaint does not allege that Mr. Azzato, or St. Marys, engaged in prohibited employer conduct. Boyles was not discharged, fined, suspended, expelled, disciplined or discriminated against by Mr. Azzato or St. Marys. In its most generous reading, the First Amended Complaint identifies the alleged "prohibited employer conduct" as Mr. Azzato's alleged offer in or about November 2012 to continue to pay Boyles' full salary while he recovered and Mr. Azzato's decision to change plans effective August 1, 2013 without notifying Boyles. (Am. Compl., ¶ 174, 176).

In the Third Circuit, "prohibited employer conduct," including actionable discrimination under Section 510, is limited to that which affects the employer-employee relationship. *Fischer v. Phila. Elec. Co.*, 96 F.3d 1533, 1543 (3d Cir. 1996) (Section 510 claims are "limited to actions affecting the employer-employee relationship, not mere changes in the level of benefits"), cert. denied, 520 U.S. 1116 (1997); *Haberern v. Kaupp Vascular Surgeons Ltd. Defined Benefit*

*Pension Plan*, 24 F.3d 1491, 1503 (3d Cir.) ("[C]ourts construing 'discriminate' have concluded . . . that the term should be limited to actions affecting the employer-employee relationship, and we adhere to this construction."), cert. denied, 513 U.S. 1149 (1994).

Here, the continued payment of Boyles' full salary while he recovered and continued to work as he was able is not an example of any prohibited conduct enumerated in Section 510, it is not discriminatory, it does not affect the employer-employee relationship and it certainly is not adverse. Furthermore, the change of plans effective August 1, 2013 is at most, as alleged, a change in benefit level, but is neither enumerated prohibited conduct or discriminatory as it did not affect the employer-employee relationship. Thus, Count X of the First Amended Complaint fails to state a cause of action under Section 510 of ERISA, 29 U.S.C. § 1140.

> **E.     Count XI (Respondeat Superior) And Count XII (Breach Of Fiduciary Duty) Against St. Marys Fail To State Claims Upon Which Relief Can Be Granted**

Count XI (Respondeat Superior) and Count XII (Breach of Fiduciary Duty) asserted against St. Marys incorporate by reference preceding allegations and seeks to hold St. Marys liable for the acts and omissions of Mr. Azzato. No independent acts, omissions or basis for liability on the part of St. Marys are asserted other than vicariously through the actions of Mr. Azzato detailed in Counts VIII, IX and X of the First Amended Complaint.

For the reasons that Boyles has failed to state a cause of action under ERISA against Azzato in Counts VIII, IX and X of the First Amended Complaint, Boyles also fails to state a cause of action against St. Marys in Counts XI and XII, and Counts XI and XII also must be dismissed.

Case 3:15-cv-00274-KRG   Document 35   Filed 12/07/15   Page 20 of 22

**F.      Counts VIII Through XII Each Request Relief Not Available Under ERISA From Mr. Azzato And/Or St. Marys**

Each of Boyles' asserted causes of action against Mr. Azzato and St. Marys seek some form of monetary damages or other relief not available from Mr. Azzato or St. Marys. Counts IX, XI and XII seek money damages in excess of $50,000. Count IX alleges that Boyles has suffered harm, including but not limited to, denial of disability benefits, severe emotional distress, loss of enjoyment and harm to reputation. (Am. Compl., ¶ 170). The *ad damnum* clauses in Counts IX, XI and XII seek money damages "in an amount in excess of $50,000.00 exclusive of costs, interest, attorneys' fees and any other costs associated with this action, or any other relief the Court deems appropriate."

The Supreme Court of the United States and the Third Circuit consistently have stated that ERISA has no provision for compensatory, consequential or punitive damages and, therefore, when a plaintiff seeks damages outside the scope of ERISA it gives rise to "conflict preemption." See *Pilot Life,* 481 U.S. at 54; *Aetna Health, Inc.*, 542 U.S. at 214-216; *Barber*, 383 F.3d at 138.

> Conflict preemption refers to any state cause of action that provides an alternative remedy to those provided by the civil enforcement mechanism in ERISA because such a cause of action conflicts with Congress' clear intent to make the ERISA mechanism exclusive.

*Barber*, 383 F.3d at 141, citing *Pilot Life*, 481 U.S. at 54. The Supreme Court discussed at length in *Pilot Life* that it would frustrate Congress' intent in enacting ERISA if plaintiffs were allowed to seek benefits outside the statutory remedial scheme:

> The deliberate care with which ERISA's civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies strongly argue for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive.

- 20 -

*Pilot Life*, 481 U.S. at 54.  In a suit under Section 502(a)(3) of ERISA, traditional legal relief such as money damages is not available.  *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256-257 (1993); *accord Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 215 (2002).

Each of the Counts against Mr. Azzato and St. Marys purport to be brought under ERISA and relate to the employee welfare benefit plan at issue, and ask for an "alternative remedy" to ERISA's enforcement scheme in the form of monetary damages.  Accordingly, each of these Counts must be dismissed for failure to state a claim upon which relief can be granted.

## III.    Conclusion

Wherefore, defendants Jeffrey Azzato and St. Marys Insurance Agency, Inc., respectfully request that the Court dismiss the claims set forth in Counts VIII through XII of the First Amended Complaint, and the demands for compensatory, consequential and other relief not available from Mr. Azzato and St. Marys under ERISA.

Respectfully submitted,


s/Matthew W. McCullough
Matthew W. McCullough
Pa. I.D. No. 46950
MacDONALD, ILLIG, JONES & BRITTON LLP
100 State Street, Suite 700
Erie, Pennsylvania 16507-1459
(814) 870-7602
FAX (814) 454-4647
mmccullough@mijb.com

Attorneys for Defendants
   Jeffrey Azzato and
   St. Marys Insurance Agency, Inc.

1465192

- 21 -

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 7, 2015, the foregoing Brief of Defendants Jeffrey Azzato and St. Marys Insurance Agency, Inc. in Support of Motion To Dismiss Plaintiff's First Amended Complaint was filed electronically with the Clerk of Court, using the CM/ECF system.  Notice of this filing will be sent to all parties who have appeared of record by operation of the Court's ECF system and constitutes service of this filing under Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure.  Those parties may access this filing through the Court's ECF system.

s/ Matthew W. McCullough
Matthew W. McCullough, Esq.