IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD P. BOYLES, JR.,<br>    Plaintiff<br><br>    v.<br><br>AMERICAN HERITAGE LIFE<br>INSURANCE COMPANY d/b/a<br>ALLSTATE BENEFITS, a/k/a ALLSTATE<br>LIFE INSURANCE COMPANY OF NEW<br>YORK, subsidiaries of THE ALLSTATE<br>CORPORATION; JEFFREY AZZATO; ST.<br>MARYS INSURANCE AGENCY, INC.;<br>and UNUM LIFE INSURANCE<br>COMPANY OF AMERICA, a/k/a UNUM<br>GROUP,<br>    Defendants | CIVIL ACTION NO. 15-274 JOHNSTOWN<br><br><br>Judge Kim R. Gibson<br><br><br><br><br><br><br><br><br><br>**ELECTRONICALLY FILED** |

**REPLY OF DEFENDANTS JEFFREY AZZATO AND
ST. MARYS INSURANCE AGENCY, INC. TO PLAINTIFF'S RESPONSE TO
<u>MOTION TO DISMISS FIRST AMENDED COMPLAINT</u>**

Defendants Jeffrey Azzato ("Mr. Azzato") and St. Marys Insurance Agency, Inc. ("St. Marys"), by their attorneys, MacDonald, Illig, Jones & Britton LLP, file this Reply to Plaintiff's Response to Motion to Dismiss First Amended Complaint, and respectfully move for dismissal of Counts VIII through XII, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure:

I.     **Reply Arguments**

    A.   **Count VIII Of The First Amended Complaint Fails To State A Cause Of Action Against Azzato For Breach Of Fiduciary Duty Under Section 502(a)(3) Of ERISA**

Boyles' Response does not adequately address the arguments raised by Azzato and St. Marys regarding Boyles' failure to state a claim for breach of fiduciary duty under Section 502(a)(3).

First, Boyles has not established or adequately pleaded that Azzato made a material misrepresentation or that he reasonably and detrimentally relied upon such material misrepresentation.  In his Response, Boyles argues that the alleged misrepresentation actually consists of the combined effect of three discreet events:  (1) Azzato's statement that he would continue to pay Boyles' salary while he recovered (which he did well after Boyles stopped working at all); (2) Azzato's alleged failure to inform Boyles of a prospective change to a policy providing less generous benefits; and (3) Azzato's eventual cessation of Boyles' salary payments.  As stated in his original Brief, Azzato's offer in December 2012 to pay full salary while Boyles recovered and continued to work as he was able was a generous offer which Boyles accepted clearly knowing that he could have filed a disability claim instead.  Azzato made good on his offer and the arrangement continued for eight months until June 2013 while Boyles continued to work as he was able.  (Am. Compl., ¶ 66-67).  It was not until "sometime in June 2013" when Boyles' hours of work "virtually ceased" and he alleges he was "unable to perform the material and substantial duties of his job . . . as of that date." (Am. Compl., ¶ 67).  Even then, Azzato continued to pay Boyles' full salary until November 22, 2013.  Boyles does not allege that Azzato knew or could have known, as of December 2012, that Boyles' ability to work would decrease rather than

increase. Boyles also does not claim that he had any further communications with Azzato about filing a disability claim even when his actual work hours began to decrease in May 2013, or when his ability to work virtually ceased in June 2013. Nor does Boyles allege that he proposed but was dissuaded from discontinuing full salary payments so that he could apply for disability benefits. These circumstances do not amount to an intentional, material misrepresentation by Azzato or St. Marys.

Second, Boyles' claims against Azzato and St. Marys suffer from a fundamental and fatal flaw. Boyles' argument that he has pleaded detrimental reliance fails because, as evidenced by his own allegations, he was not eligible under the American Heritage policy had he applied any time between December 2012 (when Azzato offered to pay his salary) and July 31, 2013 when the policy terminated. The only way Boyles can prove otherwise is to rewrite history and/or argue that he met the eligibility requirements under the American Heritage policy despite the fact that he continued to work, a determination made by American Heritage not Azzato or St. Marys.

In December 2012, when Boyles alleges he chose not to apply for disability benefits based on Azzato's offer (alleged misrepresentation), Boyles' own allegations demonstrate that he clearly was able to work and was able to and did perform the material and substantial duties of his regular occupation. In Boyles' own words he did not become "unable to perform the material and substantial duties of his job" until "sometime in June 2013." (Am. Compl., ¶ 67). Given his demonstrated and admitted "ability to perform the material and substantial duties of his job" until sometime in June 2013, in order to have obtained benefits had he applied in December 2012, Boyles would have had to misrepresent to American Heritage that he was unable to work.[1]

---

[1] If he has a contrary position, Boyles should be required to clearly state it in a pleading subject to Rule 11.

Regardless, he has not pleaded and cannot establish detrimental reliance based upon his initial decision not to apply for benefits.

Boyles may contend that even if he had applied for and been denied benefits in December 2012, had he subsequently known Azzato would change policies effective July 31, 2013 he would have re-applied once his hours virtually ceased "starting sometime in June 2013." (Am. Compl., ¶ 66). Several problems exist with this argument. Boyles never revisited his circumstances with Azzato or his eligibility for benefits between "sometime in June 2013" and July 31, 2013, even though he knew his hours had virtually ceased. Even if he had, Boyles has not pleaded that he would have been eligible under the American Heritage policy had he applied on or before July 31, 2013. American Heritage's denial was not based solely on Boyle's continued receipt of his regular salary, but also upon American Heritage's determination that Boyles was able to perform the material and substantial duties of his regular occupation "according to the medical documentation and your employer . . . ." (Am. Comp., ¶ 75). Boyles has not alleged the inaccuracy of any medical documentation or information supplied by Azzato or St. Marys upon which American Heritage's denial may have been based. Stated differently, had Azzato informed Boyles of the impending change and discontinued salary payments, Boyles still has not pleaded that his disability claim would have been approved given that American Heritage's denial also was based upon its interpretation of medical documentation over which Azzato and St. Marys had no control. Under these circumstances, Boyles cannot establish detrimental reliance for purposes of his breach of fiduciary or estoppel claims.

Third, the eventual discontinuance of salary payments and cessation of Boyles' employment on November 22, 2013 had no impact at all on the denials under the American Heritage and/or Unum policies. Boyles was denied by American Heritage because "according to

medical documentation and your employer you were able to perform the material and substantial duties of your regular occupation, you did not lose 20% or more of your monthly earnings, and you continued to work until November 22, 2013. This date is after your policy terminated on July 31, 2013." (Am. Compl., ¶ 75). He was denied by Unum because he was not working enough hours to be considered in active employment when the Unum policy took effect. (Am. Comp., ¶ 80). Allegations regarding the discontinuance of salary and cessation of employment on November 22, 2013, therefore, are immaterial to Boyles' claims.

For these additional reasons, and assuming Boyles must not be permitted to rewrite history and claim that he was disabled when he clearly was not, Count VIII fails to state a cause of action for breach of fiduciary duty because he has not pleaded either a material misrepresentation or detrimental reliance.

### B. Count IX Of The First Amended Complaint Fails To State A Cause Of Action Against Azzato For Equitable Estoppel Under Section 502(a)(3) Of ERISA

Boyles' Response also does not adequately refute the grounds for dismissal of Count IX asserting a claim for equitable estoppel under Section 502(a)(3). While standing by their original arguments regarding the lack of an actionable misrepresentation and detrimental reliance, as well as the argument in the preceding section of this Reply, Azzato and St. Marys specifically address Boyles' failure to plead "extraordinary circumstances" as required to state a claim for equitable estoppel under ERISA.[2]

As stated in their original Brief, Boyles "must do more than merely make out the ordinary elements of equitable estoppel to establish a claim for equitable estoppel under ERISA." *Kurz v.*

---

[2] Apart from the extraordinary circumstances requirement, the facts alleged to support Boyles' claim for equitable estoppel are virtually identical to and duplicative of his claim for breach of fiduciary duty in Count VIII.

*Phil. Elec. Co.*, 96 F.3d 1544, 1553 (3d Cir. 1996). This is a "heightened requirement" and requires "a showing of affirmative acts of fraud or similarly inequitable conduct by an employer," or "a network of misrepresentations that arises over an extended course of dealing between the parties," or "the vulnerability of particular plaintiffs." *Kurz*, 96 F.3d at 1553.

In *Kurz,* the Third Circuit discussed what is and is not "extraordinary circumstances:"

> To support this element, we have previously required a showing of affirmative acts of fraud or similarly inequitable conduct by an employer. See *Rosen v. Hotel & Restaurant Employees & Bartenders Union*, 637 F.2d 592, 598 (3d Cir. 1981) (holding that pension fund could not deny benefits to participant on grounds that participant's employer failed to pay required contributions where fund administrator allowed employee to pay contributions himself), *cert. denied*, 454 U.S. 898, 70 L. Ed. 2d 213, 102 S. Ct. 398 (1981); see also *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1165 n.10 (3d Cir. 1990) (citing *Rosen*). Elsewhere, we have focused on the network of misrepresentations that arises over an extended course of dealing between parties. See *Curcio*, 33 F.3d at 238 (finding extraordinary circumstances where insurer misrepresented type of coverage available, informed patient that certain coverage would be provided, then disclaimed coverage); *Smith v. Hartford Ins. Group*, 6 F.3d 131, 142 (3d Cir. 1993) (suggesting extraordinary circumstances might exist where plaintiff repeatedly and diligently inquired about benefits and defendant repeatedly misrepresented scope of coverage to plaintiff). We have also cited the vulnerability of particular plaintiffs. See *Curcio*, 33 F.3d at 238 (hospital patient denied coverage for substantial claim after hospital represented that coverage would exist); *Smith*, 6 F.3d at 142 (same); but see *Gridley v. Cleveland Pneumatic Co.*, 924 F.2d 1310, 1319 (3d Cir.) (rejecting estoppel where widow of terminal cancer victim sought increased life insurance benefits), *cert. denied*, 501 U.S. 1232, 115 L. Ed. 2d 1023, 111 S. Ct. 2856 (1991).
>
> These cases demonstrate that a plaintiff must do more than merely make out the "ordinary elements" of equitable estoppel to establish a claim for equitable estoppel under ERISA. *Gillis v. Hoechst Celanese Corp.*, 4 F.3d 1137, 1142 (3d Cir. 1993), *cert. denied*,   U.S.  , 128 L. Ed. 2d 192, 114 S. Ct. 1540 (1994); *Gridley*, 924 F.2d at 1319. Because of these heightened requirements, we have consistently rejected estoppel claims based on simple ERISA reporting errors or disclosure violations, such as a variation between a plan summary and the plan itself, or an omission in the disclosure documents. See *Gillis*, 4 F.3d at 1142 (denying recovery where plaintiffs claimed plan documents failed to disclose that severance pay would not be provided to employees who continued working for purchaser of corporate division); *Gridley*, 924 F.2d at 1319 (denying recovery despite omission from disclosure documents of requirement that employee be "actively at work" to qualify for increased life insurance

>benefits; employee was later denied increased benefits based on requirement).

*Kurz v. Philadelphia Elec. Co.*, 96 F.3d 1544, 1553-1554 (3d Cir. Pa. 1996).

In his Response, Boyles reiterates his Count VIII argument that the circumstances as a whole amounted to a misrepresentation but makes only a token effort to argue that he has pleaded "extraordinary circumstances." First, Boyles argues that he originally included a claim of fraud in his first complaint and simply assumes that (1) his original complaint adequately stated a claim for common law fraud and (2) that the facts pleaded in the First Amended Complaint satisfy the "heightened requirement" of "extraordinary circumstances." However, the three-part series of discreet events repeatedly cited by Boyles (Azzato's offer to continue full salary during recovery, Azzato's unannounced change in policies, and the eventual cessation of Boyles' salary continuation) fall well short of "affirmative acts of fraud" or a "network of misrepresentations arising over an extended course of dealing" achieving the level of "extraordinary circumstances." See *Gridley v. Cleveland Pneumatic Co.*, 924 F.2d 1310, 1319 (3d Cir. 1991) (ERISA reporting or disclosure violations, such as distribution of an inaccurate summary plan description, are not alone extraordinary circumstances). The offer of salary continuation during recovery and while Boyles continued to work is not a misrepresentation at all. Unlike *Smith v. Hartford Ins. Group*, supra., there is no allegation that Boyles repeatedly and diligently inquired or reconsidered whether to apply for benefits once his hours of work begin to decline in May and June 2013, or that he was repeatedly discouraged from applying for benefits by Azzato. The situation is much more akin to *Gridley*, supra., where extraordinary circumstances were not present by the employer's failure to inform an employee of an "actively at work" requirement resulted in a later denial of increased life insurance benefits.

Finally, Boyles makes no attempt to argue that he has pleaded a special "vulnerability." The First Amended Complaint includes no averments which suggest a particular vulnerability or disability not held in common with any other employee in the context of a claim for disability benefits.

### C. Count X Of The First Amended Complaint Fails To State A Cause Of Action Against Azzato For Interference With ERISA Rights Under Section 510 Of ERISA

In his Response, Boyles insists that he has pleaded all elements of a claim for interference with ERISA rights under Section 510, including the threshold requirement that the employer must have engaged in "prohibited employer conduct" within the meaning of Section 510.  However, Boyles misconstrues the nature of the "prohibited employer conduct" required by Section 510 and attempts to expand his claim beyond what is actually pleaded in the First Amended Complaint to encompass what sounds like a wrongful termination claim.  In fact, even a most generous reading of the First Amended Complaint does not satisfy the "prohibited employer conduct" requirement. If, as he suggests in his Response, Boyles intends to claim his termination was the culmination of a grand scheme to deny him disability benefits, then he should be required to specifically plead that claim, subject to the requirements of Rule 11, so that his theory will be clear and he can be cross-examined on such allegations.[3]

To state a prima facie case for a violation of Section 510 of ERISA, a plaintiff must demonstrate (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the

---

[3] "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief  that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 1953 (2009) (internal quotations and citations omitted) (holding that the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), applies to "all civil

attainment of any right to which the employee may become entitled. *Dewitt v. Penn-Del Directory Corp.*, 106 F.3d 514, 522 (3d Cir. 1997); *accord Gavalik v. Cont'l Can Co.*, 812 F.2d 834, 852 (3d Cir. 1987), *cert. denied*, 484 U.S. 979 (1987). A plaintiff must allege that the defendant "had the specific intent to violate ERISA" and "made a conscious decision to interfere with the employee's attainment of pension eligibility or additional benefits." *Jakimas v. Hoffmann-La Roche, Inc.*, 485 F.3d 770, 785 (3d Cir. 2007) (internal quotations omitted).[4]

The "prohibited employer conduct" element under Section 510 includes an employer's decision to "discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary." 29 U.S.C. § 1140. In the Third Circuit, "prohibited employer conduct," including actionable discrimination under Section 510, is limited to that which affects the employee-employer relationship. *Fischer v. Phila. Elec. Co.*, 96 F.3d 1533, 1543 (3d Cir. 1996) (Section 510 ERISA claims are "limited to actions affecting the employer-employee relationship, not mere changes in the level of benefits.") (internal quotations omitted), *cert. denied,* 520 U.S. 1116 (1997); *Haberern v. Kaupp Vascular Surgeons Ltd. Defined Benefit Pension Plan*, 24 F.3d 1491, 1503 (3d Cir. 1994) ("[C]ourts construing 'discriminate' have concluded . . . that the term should be limited to actions affecting the employer-employee relationship, and we adhere to this construction."), *cert. denied*, 513 U.S. 1149 (1994).

Viewing the First Amended Complaint itself, not the lawyerly argument set forth in the Response, it is clear that nowhere in Count X or elsewhere does Boyles allege that he was "discharged, fined, suspended, expelled or disciplined or discriminated against "for the purpose of

---

actions" and noting that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

[4] "Proof that the plaintiff lost benefits because of termination alone is not enough." *Jakimas*, 485 F.3d at 785. "Proof that the termination prevented the employee from accruing additional benefits through more years of [*9] service alone is not probative of intent." *Id*.

interfering with his rights under ERISA. Rather, the First Amended Complaint alleges that: (1) Azzato offered to pay Boyles' full salary while he recovered intending to dissuade Boyles from applying for disability benefits and (2) changed plans in August 2013 without notifying Boyles with knowledge of Boyles' circumstances and for the purpose of interfering with his benefits. (Am. Compl., ¶ 173-177). These are the same or similar allegations supporting Boyles' breach of fiduciary duty and estoppel claims in Counts VIII and IX, respectively, but these allegations do not expressly or by inference allege "prohibited employer conduct" for purposes of Section 510. Furthermore, there is no mention whatsoever, in Count X or elsewhere, that the cessation of Boyles' employment on November 22, 2013 was Azzato's objective, intent or part of a decision or scheme to interfere with Boyles' eligibility for disability benefits.

Finally, the cessation of Boyles' employment on November 22, 2013 had no impact whatsoever on the denial of disability benefits under either the American Heritage or Unum policies. Boyles was denied by American Heritage because he was not disabled by definition at the time the policy terminated on July 31, 2013. (Am. Compl., ¶ 75-76). He was denied under the Unum policy because he was not working the required number of hours to be considered in active employment when the Unum policies became effective on August 1, 2013, not because his employment ceased on November 22, 2013.

## II. <u>Conclusion</u>

Wherefore, defendants Jeffrey Azzato and St. Marys Insurance Agency, Inc., respectfully request that the Court dismiss the claims set forth in Counts VIII through XII of the First Amended Complaint, and the demands for compensatory, consequential and other relief not available from Mr. Azzato and St. Marys under ERISA.

        Respectfully submitted,


        s/Matthew W. McCullough
        Matthew W. McCullough
        Pa. I.D. No. 46950
        MacDONALD, ILLIG, JONES & BRITTON LLP
        100 State Street, Suite 700
        Erie, Pennsylvania 16507-1459
        (814) 870-7602
        FAX (814) 454-4647
        mmccullough@mijb.com

        Attorneys for Defendants
           Jeffrey Azzato and
           St. Marys Insurance Agency, Inc.

1468870

## **CERTIFICATE OF SERVICE**

I certify that on January 4, 2016, the foregoing Reply of Defendants Jeffrey Azzato and St. Marys Insurance Agency, Inc. to Plaintiff's Response to Motion To Dismiss First Amended Complaint was filed electronically with the Clerk of Court, using the CM/ECF system. Notice of this filing will be sent to all parties who have appeared of record by operation of the Court's ECF system and constitutes service of this filing under Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure. Those parties may access this filing through the Court's ECF system.

s/ Matthew W. McCullough
Matthew W. McCullough, Esq.