**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RONALD P. BOYLES** | ) | |
| | ) | **CIVIL ACTION NO. 3:15-cv-274** |
| **Plaintiff,** | ) | |
| | ) | **JUDGE KIM R. GIBSON** |
| **v.** | ) | |
| | ) | |
| **AMERICAN HERITAGE LIFE** | ) | |
| **INSURANCE COMPANY d/b/a ALLSTATE** | ) | |
| **BENEFITS a/k/a ALLSTATE LIFE** | ) | |
| **INSURANCE COMPANY OF NEW YORK,** | ) | |
| **SUBSIDIARIES OF THE ALLSTATE** | ) | |
| **CORPORATION; JEFFREY AZZATO; ST.** | ) | |
| **MARYS INSURANCE AGENCY, INC.; and** | ) | |
| **UNUM LIFE INSURANCE COMPANY OF** | ) | |
| **AMERICA a/k/a UNUM GROUP,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

## I.     Introduction

This case arises under the Employee Retirement Income Security Act of 1974 (**ERISA**) from the alleged denial of disability benefits to Plaintiff Robert P. Boyles, Jr. Pending before the Court are Motions to Strike Jury Trial Demand filed by Defendants American Heritage Life Insurance Company (**AHL**), Unum Life Insurance Company of America (**Unum**), and Jeffrey Azzato and St. Marys Insurance Agency, Inc. (**St. Marys**). (*See* ECF Nos. 3, 10, 16). Also pending before the Court are Motions to Dismiss Plaintiff's Complaint and Motions to Dismiss Plaintiff's First Amended Complaint filed by Defendants AHL, Unum, and Jeffrey Azzato and St. Marys (*see* ECF Nos. 4, 8, 14, 27, 29, 34). For the reasons that follow, the Motions to Strike Jury Trial Demand (ECF Nos. 3, 10, 16) and the Motions to Dismiss Plaintiff's Complaint (ECF Nos. 4, 8, 14) are **DENIED AS MOOT**, Defendants AHL's and Unum's motions to dismiss portions of the

First Amended Complaint (ECF Nos. 27, 29) are **GRANTED**, and Defendants Azzato and St. Marys' motion to dismiss portions of the First Amended Complaint (ECF No. 34) is **GRANTED IN PART** and **DENIED IN PART**.

## II.  Jurisdiction and Venue

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as Plaintiff's claims arise under federal law. Venue is proper in this judicial district pursuant to 29 U.S.C. § 1132(e)(2).

## III.  Background

### a.  Procedural Background

Plaintiff initiated the instant action by filing a twenty-count complaint (the **Original Complaint**) in the Court of Common Pleas of Blair County, Pennsylvania, on September 29, 2015. (*See* ECF No. 1-2.) Defendants AHL, Unum, Azzato, and St. Marys removed the action to this Court on October 22, 2015. (*See* ECF No. 1.) Defendants then filed several motions, including motions to strike Plaintiff's demand for a jury trial and motions to dismiss, related to Plaintiff's Original Complaint. (*See* ECF Nos. 3, 4, 8, 10, 14, 16.) These motions will be denied as moot, as explained more fully below, because On November 24, 2015, Plaintiff filed an amended, twelve-count complaint (the **First Amended Complaint** or **FAC**). (*See* ECF No. 26.) Defendants filed motions to dismiss portions of the FAC, which the Court will analyze on the merits in the Discussion section below. (*See* ECF Nos. 27, 29, 34.)

### b. Factual Background

Plaintiff alleges the following facts, which the court accepts as true for the sole purpose of deciding the pending motions to dismiss portions of the FAC.

#### i. Plaintiff's Work History

Plaintiff Ronald P. Boyles, Jr. has been employed in the insurance industry since 1988. (ECF No. 26 ¶ 24.) Plaintiff was at one time employed by Boyles Insurance, Inc., which was established in State College, Pennsylvania. (*Id.* ¶ 25.) In October of 2006, St. Marys acquired Boyles Insurance. (*Id.* ¶ 29.) Defendant Jeffrey Azzato is the current president and owner of St. Marys. (*Id.* ¶ 26.) Azzato began his employment at St. Marys in 1987 and purchased St. Marys along with his former partner in 1996. (*Id.* ¶¶ 27-28.) After St. Marys acquired Boyles Insurance, Plaintiff continued his employment at Boyles Insurance, and at all times relevant to the instant dispute, Plaintiff was employed in the Commercial Lines Division of Boyles Insurance as an affiliate of St. Marys. (*Id.* ¶¶ 30-31.)

#### ii. The AHL Policy

As part of Plaintiff's benefits of employment as an affiliate of St. Marys, he was issued a Group Voluntary Disability Insurance Policy for Employees of St. Marys Insurance Agency, Inc., which was underwritten by insurer American Heritage. (*Id.* ¶ 32.) Coverage under this policy began on January 1, 2010, and was ostensibly terminated on July 31, 2013. (*Id.* ¶ 33.) The Group Voluntary Disability Insurance Policy included Short-Term and Long-Term Disability benefit policies, as well as a Life Insurance Policy, which was valued at $220,000. (*Id.* ¶ 34.) The Short-Term Disability and Long-Term Disability policies provided for benefits in the event that a plan participant became disabled. (*Id.* ¶ 35.)

Under the Short-Term Disability policy, the term "disability" is divided into total and partial disability. (*Id.* ¶ 36.) Total disability is defined as follows: "[t]he employee is totally disabled when American Heritage Life determines that he is unable to perform the material and substantial duties of his regular occupation due to his sickness or injury." (*Id.* ¶ 37.) Partial disability is defined as follows: "[t]he employee is partially disabled when American Heritage Life determines that: 1. he is unable to perform the material and substantial duties of his regular occupation due to sickness or injury; and 2. he has a 20% or more loss in monthly earnings due to the same sickness or injury; and 3. during the elimination period, he is unable to perform the material and substantial duties of his regular occupation." (*Id.* ¶ 38.)

Under the Long-Term Disability policy, disability is defined as follows: "[d]uring the elimination period and the first 24 months of disability payments the employee is disabled when American Heritage Life determines that: 1. he is unable to perform the material and substantial duties of his regular occupation due to his sickness or injury; and 2. he has a 20% or more loss in his monthly earnings due to the same sickness or injury." (*Id.* ¶ 39.)

Under both policies, the term "material and substantial duties" is defined as follows: "[m]aterial and substantial duties means duties that: 1. are normally required for the performance of the employee's regular occupation; and 2. cannot be reasonably omitted or modified, except that if he is required to work on average in excess of 40 hours per week, American Heritage Life will consider him able to perform that requirement if he is working or has the capacity to work 40 hours per week." (*Id.* ¶ 40.) Also under both policies, the term "regular occupation" is defined as follows: "[r]egular occupation means the occupation the employee was routinely performing when his disability begins." (*Id.* ¶ 41.) Also under both

policies, the term "monthly earnings" is defined as follows: "[m]onthly earnings means the employee's gross monthly income from the employer in effect just prior to the date of disability. Gross monthly income is the total income before taxes and any pre-tax deductions made under a qualified deferred compensation plan recognized by the Internal Revenue Service. It does not include income received from commissions, bonuses, overtime pay, or other extra compensation. It does not include income received from sources other than the employer. If the employee becomes disabled while on a covered layoff or leave of absence, we will use his gross monthly income from the employer in effect just prior to the date the absence began." (*Id.* ¶ 42.)

Under the Short-Term Disability Policy, the term "elimination period" is defined as follows: "The employee must be continuously disabled through his elimination period. If his disability is the result of an injury that occurs while he is covered under this plan, his elimination period is 30 days. If his disability is the result of a sickness, his elimination period is 30 days." (*Id.* ¶ 43.)

Under the Long-Term Disability Policy, the term "elimination period" is defined as follows: "The employee must be continuously disabled through his elimination period. American Heritage Life will treat his disability as continuous if his disability stops for 30 days or less during the elimination period. The elimination period is the later of: 1. 180 days; or 2. The date his salary continuation or accumulation sick leave or Short Term Disability payments ends, if applicable." (*Id.* ¶ 44.)

The General Provisions of the Group Disability Policy states that the employee's coverage ends "on the earliest of: 1. the date the policy is cancelled; or 2. the last day of the period for which you made any required contributions; or 3. the last day of the month in which

you ceased active employment, except as provided under the TEMPORARILY NOT WORKING provision; or 4. the date you are no longer in an eligible class; or 5. the date your class in [sic] no longer eligible." (*Id.* ¶ 45.)

Plaintiff's policy with AHL ostensibly ended when Defendant St. Marys, by and through Defendant Azzato, as president and owner, switched carriers to Unum, effective August 1, 2013. (*Id* ¶ 46.) Plaintiff was on a medical leave of absence from work when St. Marys switched carriers. (*Id*. ¶ 47.) Neither Defendant Azzato nor AHL provided Plaintiff or any other plan participant with notice of the termination of the AHL Group Disability Policy at any time. (*Id.* ¶ 48.)

### iii. The Unum Policy

The Unum policy included both a Short Term Disability Plan and a Long Term Disability Plan, which provided for a substantially lower monetary disability benefit than the previous AHL policies. (*Id.* ¶ 49.) Under both the Short Term Disability Plan and the Long Term Disability Plan, all "Full-Time Employees in active employment in the United States with the Employer" were eligible for coverage. (*Id.* ¶ 50.) Both the Short Term Disability Plan and the Long Term Disability Plan imposed a "Minimum Hours Requirement," which stated: "[e]mployees must be working at least 37.5 hours per week." (*Id.* ¶ 51.)The Unum Short Term Disability Plan and Long Term Disability Plan also imposed a "Waiting Period," which was "90 days of continuous service." (*Id.* ¶ 52.)

The Unum Short Term Disability Plan had an "Elimination Period" of "0 days for disability due to an injury" and "7 days for disability due to a sickness," with benefits to begin after the elimination period is completed. (*Id.* ¶ 53.) The Unum Short Term Disability Plan also

provided for a "Weekly Benefit," which was defined as: "60% of weekly earnings to a maximum benefit of $625 per week." (*Id.* ¶ 54.) The Unum Short Term Disability Plan also imposed a "Maximum Period of Payment," which was stated as being "26 weeks." (*Id.* ¶ 55.)

The Unum Long Term Disability Plan had an "Elimination Period" of "[t]he later of . . . 180 days; or the date your Short Term Disability payments end, if applicable." (*Id.* ¶ 56.) The Unum Long Term Disability Plan provided for a "Monthly Benefit," which was defined as "60% of monthly earnings to a maximum benefit of $6,000 per month." (*Id.* ¶ 57.) The Unum Long Term Disability Plan also imposed a "Maximum Period of Payment," which varied depending on age: (1) for insureds less than 65 at the time of disability, the maximum period of payment was five years; (2) for insureds 65 through 68 at the time of disability, the maximum period of payment was to age 70, but not less than one year; (3) for insureds age 69 and over at the time of disability, the maximum period of payment was one year. (*Id.* ¶ 58.)

### iv. The Events Giving Rise to the Claims in the FAC

Prior to the events giving rise to the instant dispute, Plaintiff had experienced medical issues related to his back for several years. (*Id.* ¶ 59.) Plaintiff had his last of several back surgeries in October of 2012, while he was employed by St. Marys. (*Id.* ¶ 60.)

In December of 2012, Plaintiff indicated to Defendant Azzato that he intended to file a disability claim. (*Id.* ¶ 61.) In response to this information, Defendant Azzato informed Plaintiff that, due to Plaintiff's "long time commitment to the agency and his work ethic," he would continue to pay Plaintiff's salary while he recovered. (*Id.* ¶ 62.) Based on this assurance, Plaintiff did not file a disability claim, and continued to attempt to work at St. Marys as his condition allowed. (*Id.* ¶¶ 63-64.)

Beginning in or about May of 2013, Plaintiff's weekly work hours decreased to approximately 10 to 20 hours, and sometime starting in June of 2013, Plaintiff's work at St. Marys virtually ceased due to his medical condition. (*Id.* ¶¶ 65-66.) Plaintiff was unable to perform the material and substantial duties of his job due to his condition as of June of 2013, and this decrease and lack of weekly hours persisted through November of 2013. (*Id.* ¶¶ 67-68.)

In November of 2013, Defendant Azzato informed Plaintiff that he could no longer pay him his full time salary because of Plaintiff's "diminished work hours." (*Id.* ¶ 69.) Defendant Azzato stated that he would pay Plaintiff through November 22, 2013, which was the date on which Plaintiff officially ceased his employment with St. Marys. (*Id.* ¶¶ 70-71.)

On or about November 26, 2013,[1] Plaintiff filed a disability claim with AHL. (*Id.* ¶ 72.) AHL denied Plaintiff's disability claim on or about December 29, 2013; as its reason for denial, AHL noted that Plaintiff's disability was a work related injury. (*Id.* ¶ 73.) Plaintiff appealed AHL's denial of his claim. (*Id.* ¶ 74.) On or about February 13, 2014, AHL upheld its denial of Plaintiff's claim, stating: "[a]ccording to the medical documentation and your employer you were able to perform the material and substantial duties of your regular occupation, you did not lose 20% or more of your monthly earnings, and you continued to work until November 22, 2013. This date is after your policy terminated on July 31, 2013." (*Id.* ¶ 75.) Plaintiff filed a second appeal of AHL's denial, and on or about June 9, 2014, AHL informed Plaintiff that, again, it was upholding its denial of Plaintiff's disability claim, stating: "[w]e are unable to honor your request for benefit as you were not disabled as defined by the Policy and your

---

[1] The FAC appears to contain a typographical error when it states that Plaintiff filed the disability claim with AHL on or about November 26, 2015. (*See* ECF No. 26 ¶ 72.) Based on the surrounding facts, the Court assumes for the purposes of the pending motions that this claim was filed in 2013.

coverage terminated July 31, 2013, which is prior to the disability begin date of November 22, 2013. Accordingly, you are not eligible for benefit." (*Id.* ¶ 76.)

Plaintiff also filed a claim with Unum, which Unum denied. (*Id.* ¶¶ 77-78.) Plaintiff appealed Unum's decision, and on or about June 2, 2015, Unum informed Plaintiff by letter that it was upholding its denial of his claim, stating: "[b]ased on our review, the available information indicates that you were not working the required number of hours to be considered in active employment when the Unum LTD and LWOP policies became effective. You are not covered under these policies." (*Id.* ¶ 80.)

On or about January 20, 2015, Defendant Azzato wrote a letter to AHL concerning Plaintiff's Long Term Disability claim. (*Id.* ¶ 81.) In the letter, Defendant Azzato stated that Plaintiff indicated "that he was interest [sic] in filing a disability claim in December of 2012." (*Id.* ¶ 82.) Defendant Azzato further stated in the letter that he "had advised [Plaintiff] that due to his long time commitment to the agency and his work ethic that [Defendant Azzato] would continue to pay [Plaintiff's] salary while he recovered." (*Id.* ¶ 83.) Defendant Azzato also stated in the letter, "I felt that from around October of 2012 through November of 2013 that I was paying [Plaintiff] or considering [Plaintiff] on a type of full paid medical leave," and "In hindsight, I would have advised [Plaintiff] to file for a disability claim after his last back surgery in October of 2012." (*Id.* ¶¶ 84-85.)

### c. Plaintiff's Claims

Plaintiff asserts twelve claims in the FAC. (*See id.*) Against Defendant AHL, Plaintiff asserts the following four claims: (1) Recovery of Benefits, under ERISA § 502(a)(1)(B) (**Count I**) (*see id.* ¶¶ 86-97); (2) Breach of Fiduciary Duty under ERISA §§ 502(a)(2) and (a)(3) (**Count II**)

(*see* *id.* ¶¶ 98-103); (3) Estoppel (**Count III**) (*see* *id.* ¶¶ 104-14); and (4) Declaratory Judgment under ERISA § 502 (**Count IV**) (*see* *id.* ¶¶ 115-20).

Against Defendant Unum, Plaintiff asserts the following three claims: (1) Recovery of Benefits under ERISA § 502(a)(1)(B) (**Count V**) (*see* *id.* ¶¶ 121-31); (2) Breach of Fiduciary Duty under ERISA §§ 502(a)(2) and (a)(3) (*see* *id.* ¶¶ 132-36) (**Count VI**); and (3) Declaratory Judgment under ERISA § 502 (**Count VII**) (*see* *id.* ¶¶ 137-41).

Against Defendant Azzato, Plaintiff asserts the following three claims: (1) Breach of Fiduciary Duty under ERISA § 502(a)(3) (**Count VIII**) (*see* *id.* ¶¶ 142-50); (2) Estoppel (**Count IX**) (*see* *id.* ¶¶ 151-71); and (3) Interference With ERISA Rights under ERISA § 510 (**Count X**) (*see* *id.* ¶¶ 172-78).

Lastly, against Defendant St. Marys, Plaintiff asserts the following two claims: (1) Respondeat Superior (**Count XI**) (*see* *id.* ¶¶ 179-83); and (2) Breach of Fiduciary Duty under ERISA § 502(a)(3) (**Count XII**) (*see* *id.* ¶¶ 184-92).

As noted above, Defendants have filed motions related to the original Complaint, which will be discussed briefly below. Defendants also filed motions to dismiss various claims included in the FAC. AHL filed a Motion to Dismiss Counts II and IV of the FAC. (*See* ECF No. 29). Unum filed a Motion to Dismiss Counts VI and VII of the FAC. (*See* ECF No. 27.) Defendants Azzato and St. Marys filed a joint motion to dismiss all claims asserted against them (Counts VIII through XII of the FAC). (*See* ECF No. 34.)

After a brief review of the relevant law, these motions will be addressed in turn.

## IV.    Applicable law

Defendants have filed motions to dismiss portions of Plaintiff's FAC pursuant to Federal Rule of Civil Procedure 12(b)(6). The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) allows a party to seek dismissal of a complaint or any portion of a complaint for failure to state a claim upon which relief can be granted. Although the federal pleading standard has been "in the forefront of jurisprudence in recent years," the standard of review for a Rule 12(b)(6) challenge is now well established. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 209 (3d Cir. 2009).

In determining the sufficiency of a complaint, a district court must conduct a two-part analysis. First, the court must separate the factual matters averred from the legal conclusions asserted. *See id.* at 210. Second, the court must determine whether the factual matters averred are sufficient to show that the plaintiff has a "'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The complaint need not include "'detailed factual allegations.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)).

Moreover, the court must construe the alleged facts, and draw all inferences gleaned therefrom, in the light most favorable to the non-moving party. *See id.* at 228 (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003)). However, "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action . . . do not suffice." *Iqbal*, 556 U.S. at 678. Rather, the complaint must present sufficient "'factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged.'" *Sheridan v. NGK Metals Corp.* 609 F.3d 239, 262 n.27 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

Ultimately, whether a plaintiff has pleaded a "plausible claim for relief is a "context-specific" inquiry that requires the district court to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The relevant record under consideration includes the complaint and any "document integral to or explicitly relied upon in the complaint." *U.S. Express Lines, Ltd. V. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). If a complaint is vulnerable to dismissal pursuant to Rule 12(b)(6), the district court must permit a curative amendment, irrespective of whether a plaintiff seeks leave to amend, unless such amendment would be inequitable or futile. *Phillips*, 515 F.3d at 236; *see also Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

## V.  Discussion

The Court will now address the pending motions to dismiss and motions to strike Plaintiff's jury trial demand. The Court will first address the pending motions that relate to the Original Complaint. The Court will then address the three pending motions to dismiss portions of the FAC filed by AHL, Unum, and Defendants Azzato and St. Marys.

### A.  The Motions Related to the Original Complaint Are Denied as Moot

Defendants filed motions to dismiss claims in Plaintiff's Original Complaint (*see* ECF Nos. 4, 8, 14) and motions to strike the jury trial demand made in the Original Complaint (*see* ECF Nos. 3, 10, 16).

Because the FAC is now the operative complaint in this litigation, the motions to dismiss claims in the Original Complaint are denied as moot. (*See* ECF Nos. 4, 8, 14.)

Turning to the motions to strike Plaintiff's jury trial demand, the Court notes that it is well-settled that a litigant filing a case pursuant to 29 U.S.C. § 1132(a)(1)(b) of ERISA is not entitled to a jury trial. *See Pane v. RCA Corp.*, 868 F.2d 631, 636 (3d Cir. 1989); *Turner v. CF&I Steel Corp.*, 770 F.2d 43, 46-47 (3d Cir. 1985); *DeLong v. Aetna Life Ins. Co.*, 232 Fed. App'x 190, 193 n.3 (3d Cir. 2007) (noting that a claim for the denial of disability benefits under 29 U.S.C. § 1132(a)(1)(B) is "an equitable cause of action for which there is no right to a jury trial").

A full analysis of this issue is not necessary, however, in the case at hand because while Plaintiff demanded a jury trial in the Original Complaint, no such demand is made in the FAC. (*See* ECF Nos. 1-2, 26.) Therefore, the Court construes the FAC as effectively withdrawing the jury trial demand that was made in the Original Complaint. The motions to strike the jury trial demand that were filed prior to the FAC being filed are therefore also denied as moot. (*See* ECF Nos. 3, 10, 16.)

**B. Motions to Dismiss Claims in the FAC**

    **a. AHL's and Unum's Motions to Dismiss Counts II, IV, VI, and VII of the FAC**

Defendants AHL and Unum move to dismiss Plaintiff's claims for breach of fiduciary duty (Counts II and VI) and declaratory judgment (Counts IV and VII). (*See* ECF Nos. 29, 27.) AHL and Unum do not challenge the sufficiency of Plaintiff's allegations with respect to these claims, but rather assert that these claims must be dismissed because they are duplicative of Plaintiff's claims for recovery of benefits and are therefore improper.

Because AHL and Unum raise similar arguments in support of their motions to dismiss, and because Plaintiff's responses in opposition are the same with respect to AHL's and Unum's motions, the Court will address these motions to dismiss jointly below.

## i. Counts II and VI (Breach of Fiduciary Duty Against AHL and Unum)

AHL argues that Plaintiff's claim for breach of fiduciary duty against AHL at Count II of the FAC must be dismissed. AHL notes that the Third Circuit has "cautioned that it is improper to assert a breach of fiduciary duty claim when it is akin to a claim to enforce the terms of a benefit plan." ([ECF No. 30 at 4](#) (citing *D'Amico v. CBS Corp.*, 297 F.3d 287, 291 (3d Cir. 2002).) AHL argues that Plaintiff's FAC contains no allegations that differentiate the claim for breach of fiduciary duty (Count II) from his claim for benefits (Count I). In support of this argument, AHL states that to resolve Count II, the Court would need to interpret and apply the ERISA benefits plan, which renders it in effect a claim for benefits, not a claim for breach of fiduciary duty. (*[Id.](#) at 4-5*.) Because Plaintiff does not seek different forms of relief in Count II from those sought in Count I, AHL argues, Count II must be dismissed. (*[Id. at 5](#)*.)

Similarly, Unum argues that Count VI must be dismissed. Unum states that Plaintiff's claim for breach of fiduciary duty at Count VI of the FAC arises out of the same facts and requires the same analysis as Plaintiff's claim for benefits against Unum, and that for each claim, the central question is whether Unum's denial of disability benefits was improper. ([ECF No. 28 at 3](#).) Unum cites *Greene v. Hartford Life & Acc. Ins. Co.*, No. 13-6033, 2014 U.S. Dist. LEXIS 126628 (E.D. Pa. Sept. 10, 2014), for the proposition that when claims under ERISA §§ 1132(a)(3) and (a)(1)(B) "not only factually overlap[], but [seek] precisely the same remedy; the payment of

benefits in accordance with the terms of the plan," there is no way to construe the § 1132(a)(3) claim such that it might provide other appropriate equitable relief for a violation of ERISA for which § 1132(a)(1)(B) did not already provide a remedy. (*Id.* at 3-4.) Unum states that in this case, if Plaintiff "establishes his rights to benefits, he is entitled to the classic form of legal relief. He needs no equitable relief. If [P]laintiff fails to demonstrate his entitlement to disability benefits, he is entitled to no equitable relief for breach of fiduciary duty." (*Id.* at 4.) Therefore, Unum argues, under the reasoning in *Greene*, Plaintiff's claim for Breach of Fiduciary Duty at Count VI of the FAC should be dismissed.

In opposition to AHL's and Unum's motions to dismiss Counts II and VI of the FAC, Plaintiff argues that he may simultaneously plead alternative theories of liability at this stage of the litigation, and that this argument is supported by Third Circuit case law. (ECF No. 42 at 3-4; ECF No. 40 at 3-5.)

Plaintiff acknowledges that district courts have struggled to apply the United States Supreme Court case of *Varity Corp. v. Howe*, 516 U.S. 489 (1996), which addressed when and under what circumstances a plaintiff may seek relief under both §§ 1132(a)(1)(B) and 1132(a)(3) of ERISA. (ECF No. 42 at 4.) Notwithstanding the discord that Plaintiff concedes exists, however, Plaintiff asks the Court to follow the reasoning of the court in *Parente v. Bell Atlantic Pennsylvania*, 2000 WL 419981 (E.D. Pa. Apr. 18, 2000), in which the court held that *Varity* "does not preclude claims under § 1132(a)(3) when a plaintiff has a viable claim under another provision that could provide relief, but only when another provision will certainly provide relief." (ECF No. 42 at 4 (citing *Parente*, 2000 WL 419981); ECF No. 40 at 4 (citing *Green*, 2014 U.S. Dist. LEXIS 126628, at *8) (emphasis added).) Plaintiff argues that under the reasoning of

*Parente*, Plaintiff's claims for Breach of Fiduciary Duty should not be dismissed. Instead, Plaintiff argues that he should be permitted to pursue these claims until there is a determination as to whether Plaintiff has asserted a claim under another provision of ERISA that will "certainly provide relief." (ECF No. 42 at 4; ECF No. 40 at 4.)

In reply to Plaintiff's opposition, AHL too acknowledges that there is divergent authority in the Third Circuit as to whether a beneficiary may simultaneously bring claims under ERISA Sections 1132(a)(1)(B) and 1132(a)(3), and notes that the Court of Appeals for the Third Circuit has not addressed this question directly. (ECF No. 48 at 2.) AHL asks that the Court follow the line of district court cases which have held that, in contrast to the court's holding in *Parente*, a Section 1132(a)(3) claim may only progress "if the plaintiff can demonstrate that [Section 1132(a)(1)(B)] alone may not provide an adequate remedy." (*Id.* at 3 (quoting *Cohen v. Prudential Ins. Co.*, Civ. A. No. 08-5319, 2009 WL 2488911 (E.D. Pa. Aug. 12, 2009).)

After a thorough review of the relevant case law, the Court concludes that Plaintiff's claims against Defendants AHL and Unum for breach of fiduciary duty (Counts II and VI) must be dismissed.

29 U.S.C. § 1132 governs civil enforcement of ERISA. Section 1132(a)(1)(B) allows a participant or beneficiary of a covered plan to bring an action to recover benefits under the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. 29 U.S.C. § 1132. *See also Greene*, 2014 WL 4473725, at *2. Here, Plaintiff has brought claims against Defendants AHL and Unum under § 1332(a)(1)(B) seeking damages under the relevant policies. (*See* ECF No. 26 at 11, 17.) Defendants AHL and Unum do not challenge the sufficiency of these claims.

AHL and Unum do, however, challenge Plaintiff's claims for breach of fiduciary duty, brought pursuant to two separate sections of the ERISA statute. Plaintiff asserts claims for breach of fiduciary duty against AHL and Unum, and cites ERISA §§ 502(a)(2) and (a)(3) as the provisions under which those claims arise. (*See* [ECF No. 26 at 12, 19](ECF No. 26 at 12, 19).)

As a preliminary matter, ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), does not provide a vehicle for the relief that Plaintiff seeks. Section 1132(a)(2) allows a claim to be brought by the Secretary, a participant, beneficiary, or fiduciary seeking appropriate relief under 29 U.S.C. § 1109. *See* 29 U.S.C. § 1132(a)(2). It is well settled, however, that recovery under Sections 1109 and 1132(a)(2) inures to the plan, and not to an individual. *See Leckey v. Stefano*, 501 F.3d 212, 225-26 (3d Cir. 2007) (citing *Massachusetts Mut. Life. Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985)). Therefore, because Plaintiff seeks to recover benefits allegedly owed to him in an individual capacity, his claims for breach of fiduciary duty against AHL and Unum are not authorized pursuant to Section 502(a)(2).

Having found that Plaintiff cannot pursue his claims for Breach of Fiduciary Duty pursuant to Section 502(a)(2), the Court will now consider whether those claims are viable pursuant to Section 502(a)(3).

The parties correctly acknowledge in their briefs that the relevant authority is split on the question of whether a beneficiary may bring simultaneous claims under both § 1132(a)(1)(B) and § 1132(a)(3). Neither the United States Supreme Court nor the Court of Appeals for the Third Circuit has squarely addressed the issue, but district courts have used the Supreme Court's brief discussion of the purpose of § 1132(a)(3) in *Varity* as guidance. District Courts in the Third Circuit, however, have reached conflicting results in cases such as the one at hand.

In *Varity*, a group of plaintiffs alleged that they had been deceived into withdrawing from a benefits plan and sued their former employer for breach of fiduciary duty under § 1132(a)(3). Importantly, the plaintiffs did not bring any claim pursuant to § 1132(a)(1)(B), because they were no longer beneficiaries of the plan and therefore could not pursue claims under it. 516 U.S. at 512. In rejecting the defendants' argument that the equitable relief that the plaintiffs had demanded under § 1132(a)(3) was not appropriate, the Court explained that § 1132(a)(3) is a "catchall" provision that offers "appropriate equitable relief for injuries caused by violations that [§ 1132] does not elsewhere adequately remedy." *Id*. at 508-09, 512. Therefore, in part because they could not seek relief under § 1132(a)(1)(B), the plaintiffs in *Varity* were permitted to pursue their claims under § 1132(a)(3) on the basis that they were deceived into withdrawing from the plan. *Id*. at 512. The Court noted, however, that recovery under § 1132(a)(3) is limited by the phrase "*appropriate* equitable relief." *Id*. at 515. The Court explained, "we should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" *Id*.

Since the Supreme Court issued its ruling in *Varity*, "Courts of Appeals have reached differing conclusions as to whether and under what circumstances *Varity* precludes plaintiffs from simultaneously seeking relief under § 1132(a)(3) and § 1132(a)(1)(B)." *Greene*, 2014 WL 4473725, at *3 (citing cases). As noted above, the Third Circuit has not addressed the question directly, and district courts within this Circuit have reached different results on the issue.

Plaintiff, for example, asks the Court to follow the reasoning of the District Court for the Eastern District of Pennsylvania in *Parente*. In *Parente*, the court held that *Varity* only precludes

claims under § 1132(a)(3) when another provision in the statute will "certainly" provide relief. Thus, court concluded that it was inappropriate to dismiss the plaintiff's claims before discovery could reveal whether the plaintiff would obtain relief under § 1132(a)(1)(B). *Parente*, 2000 WL 419981, at *3.

Defendants AHL and Unum, on the other hand, urge the Court to follow the *Cohen* line of cases. In *Cohen*, the District Court for the Eastern District of Pennsylvania articulated a higher standard for pleading simultaneous relief under §§ 1132(a)(3) and (a)(1)(B). The *Cohen* court stated that relief under § 1132(a)(3) is only available "if the plaintiff can demonstrate that § 1132(a)(1)(B) alone may not provide an adequate remedy. *Cohen*, 2009 WL 2488911, at *4. The *Cohen* court held that the plaintiff's § 1132(a)(3) claim was not viable in that case, reasoning, "plaintiffs' pleading of their two claims is nearly identical, and the relief sought under each count is verbatim the same. Plaintiffs have not presented . . . any reasons why § (a)(1)(B) would not, or might not, furnish them an adequate remedy, nor have they described what additional remedy they might seek under § (a)(3) that cannot be afforded by § (a)(1)(B)." *Id.*

Here, the Court finds that the FAC does not demonstrate that the "appropriate equitable relief" available under § 1132(a)(3) is warranted, and thus agrees with Defendants AHL and Unum that the reasoning in *Cohen* is more appropriately applied here than that in *Parente*. As in *Cohen*, Plaintiff's § 1132(a)(3) and § 1132(a)(1)(B) claims against AHL and Unum overlap factually, and seek the exact same remedy.

The Court agrees with district courts that have held that *Varity* did not establish any bright line rule precluding § 1132(a)(3) and § 1132(a)(1)(B) claims from being asserted simultaneously. Here, however, the Court is unable to construe Plaintiff's § 1132(a)(3) claim

such that it accords any "other appropriate equitable relief" for which the ERISA statute does not already provide a remedy elsewhere. While the Court appreciates the *Parente* court's concern for dismissing claims before the discovery phase of litigation, the Court finds that, like in *Cohen*, there is no discovery that would potentially assist Plaintiff in pursuing his § 1132(a)(3) claim that would not serve the exact same purpose in pursuing his § 1132(a)(1)(B) claim. This case therefore seems to present the very situation in which the Supreme Court indicated that there is no need for equitable relief because the ERISA statute provides appropriate and sufficient grounds for relief elsewhere. *See Varity*, 516 U.S. at 515.

Factually, Plaintiff's claims against AHL and Unum under §§ 1132(a)(3) and (a)(1)(B) rely on the same assertions. For example, in support of his claims for recovery of benefits at Counts I and V of the FAC, Plaintiff states that he exhausted his administrative remedies after AHL's and Unum's denials of his benefits, that he is entitled to benefits under the relevant plans, and that Defendants AHL and Unum improperly denied him his disability benefits in various ways. (ECF No. 26 ¶¶ 93-95, 126-31.)

Then, in support of his claims for breach of fiduciary duty against Defendants AHL and Unum, Plaintiff alleges that Defendants AHL and Unum "breached the fiduciary relationship owed to Plaintiff . . . [b]y failing to provide insurance coverage at the time [Defendants AHL and Unum] knew or reasonably should have known Plaintiff . . . was entitled to such insurance coverage." (*Id.* ¶¶ 101, 135.) Plaintiff goes on to allege that Defendants AHL and Unum also breached their alleged fiduciary duties by misrepresenting policy provisions, insurance coverages, and exclusions, failing to provide a reasonable basis for the denial of insurance coverage, failing to inform Plaintiff of all possible bases of insurance coverage, denying

Plaintiff's coverage "on the basis of external considerations rather than on the particular facts of Plaintiff's claims," and by forcing Plaintiff into litigation to obtain the coverage to which he is entitled. (*See id.*) Moreover, as a result of the alleged breaches of fiduciary duties, Plaintiff alleges that he was "deprived of the value of the disability benefits" to which he is entitled. (*Id.* ¶¶ 103, 136.) The allegations described above demonstrate that the facts underlying the claims for breach of fiduciary duty against AHL and Unum are more appropriately directed to Plaintiff's claims for recovery of benefits against those defendants.

In addition, like in *Cohen*, the relief sought in Counts II and VI, for breach of fiduciary duty, is verbatim identical to the relief sought in Counts I and V, for recovery of benefits. (*See id. at 11-12, 17, 19.*) As in *Greene*, Plaintiff has not identified any equitable relief available to him under § 1132(a)(3); nor has he identified any other relief available to him under that provision that he would not recover if he prevails under § 1132(a)(1)(B). *See Greene*, 2014 WL 4473725, at *4.

The Court thus concludes that the relief Plaintiff seeks under his breach of fiduciary duty claim is effectively the recovery of benefits allegedly due under the relevant AHL and Unum plans. Accordingly, Plaintiff's claims for breach of fiduciary duty against Defendants AHL and Unum are inappropriate, and further amendment of the FAC would not change this result. Counts II and VI are therefore dismissed. *See Erbe v. Billeter*, 2007 WL 2905890, at *14-15 (W.D. Pa. Sept. 28, 2007) (dismissing the plaintiff's § 1132(a)(3) claim where the relief the plaintiff sought, "under the guise of a breach of fiduciary duty claim," was the recovery of money allegedly owed to her under the plain); *Cohen*, 2009 WL 2488911, at *4 (dismissing the plaintiffs' claim for breach of fiduciary duty under § 1132(a)(3) where the plaintiffs' pleading of the § 1132(a)(1)(B) claim and the § 1132(a)(3) claim was nearly identical, and where the relief

sought at each count was verbatim the same); *Greene*, 2014 WL 4473725, at *4 (dismissing the plaintiff's § 1132(a)(3) claim where the plaintiff did not identify any scenario in which he could have obtained relief under § 1132(a)(3) that was not available to him under his § 1132(a)(1)(B) claim, and where the plaintiff's claims not only overlapped factually, but also sought "precisely the same remedy").

Generally, if a complaint is vulnerable to dismissal pursuant to Rule 12(b)(6), the district court must permit a curative amendment, regardless of whether the plaintiff seeks leave to amend, unless such amendment would be inequitable or futile. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). Here, the Court concludes that amendment of the FAC with respect to Counts II and VI would be futile because, as discussed above, these claims are duplicative of Plaintiff's claims for recovery of benefits against Defendants AHL and Unum. Therefore, Counts II and VI are dismissed with prejudice.

### ii. Counts IV and VII (Declaratory Judgment Against AHL and Unum)

With respect to Count IV of the FAC, AHL argues that Plaintiff's claim for declaratory judgment against it must be dismissed, because "ERISA does not provide a separate cause of action for declaratory judgment apart from the ERISA claim for benefits." ([ECF No. 30 at 5-6](#).) Moreover, AHL states that Count IV is duplicative of Count I, as Plaintiff seeks a declaration that he is "entitled to disability benefits, past and present, plus interest." (*[Id.](#) at 6*.)

Similarly, with respect to Count VII of the FAC, Unum states that Plaintiff's claim for declaratory judgment against it should be dismissed because "ERISA does not provide a separate cause of action for declaratory judgment," and that as a result, Plaintiff's "declaratory judgment count is effectively subsumed by his claim for benefits under the terms of the Plan."

([ECF No. 28 at 4](#).) Unum states that Plaintiff's claim for disability benefits and Plaintiff's claim for declaratory judgment are "identical claims based on identical factual allegations" and that Plaintiff, therefore, "is entitled to no further relief under Count VII than he is entitled to under Count V." (*Id*. at 5.)

In opposition to AHL's and Unum's motions to dismiss Plaintiff's declaratory judgment claims, Plaintiff makes the same argument that he makes with respect to his claims for breach of fiduciary duty against AHL and Unum: Plaintiff argues that, following the *Parente* line of cases, he may simultaneously seek alternative forms of relief at this stage of the litigation. Accordingly, Plaintiff argues that his claims for declaratory judgment at Counts IV and VII of the FAC should not be dismissed. ([ECF No. 42 at 4-5](#); [ECF No. 40 at 3-5](#).)

In reply to Plaintiff's opposition, AHL again argues that the Court should follow the *Cohen* line of cases. Under the reasoning of these cases, AHL argues that because Plaintiff has "not identified any scenario in which he can obtain relief under Section 1132(a)(3) that is not available under Section 1132(a)(1)(B), nor any equitable relief to which he is entitled, his Section 1132(a)(3) claims should be dismissed." ([ECF No. 48 at 5](#).)

Plaintiff cites § 502 generally as the provision pursuant to which he brings his claims for declaratory judgment. In support of these claims, Plaintiff alleges that: (1) "a justiciable controversy" exists between Plaintiff and Defendants AHL and Unum; (2) the rights, status, and other legal relations of Plaintiff and Defendants AHL and Unum are uncertain and that the entry of a declaratory judgment would terminate this uncertainty; (3) Plaintiff is entitled to have the relevant insurance policies issued to him by Defendants AHL and Unum interpreted in a "reasonable manner that maximizes insurance coverage"; and (4) Plaintiff thus seeks judicial

determinations that Defendants AHL and Unum are obligated to investigate Plaintiff's claim and pay Plaintiff's disability benefits under the terms of the relevant polices. (ECF No. 26 ¶¶ 116-20, 137-41.) Plaintiff seeks the following relief with respect to his claims for declaratory judgment: "Plaintiff respectfully requests this Honorable Court enter an order declaring Plaintiff is entitled to benefits under the terms of the group disability policy insurance contract with [Defendants AHL and Unum], or afford any other relief this Honorable Court deems appropriate." (*Id.* at 17, 21.)

Section 502(a) of ERISA permits a beneficiary or participant of a covered plan to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "Under § 502(a), a beneficiary may obtain accrued benefits due, a declaratory judgment about entitlement of benefits, or an injunction to require the administrator to pay benefits." *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 272 (3d Cir. 2001). ERISA does not provide a cause of action for declaratory judgment apart from that found in Section 502(a)(1)(B).

Plaintiff's claims for declaratory judgment are therefore effectively subsumed by his claims for recovery of benefits. The facts underlying the claims and the recovery sought in the FAC for declaratory judgment demonstrate that the only declaration Plaintiff seeks is that he is entitled to benefits under the plans with AHL and Unum. This legal relief may be accorded through his recovery of benefits claims under § 1132(a)(1)(B) without Plaintiff asserting a separate claim for equitable relief. As with Plaintiff's claims for breach of fiduciary duty against AHL and Unum, discussed above, Plaintiff is entitled to no further relief pursuant to his claim

for declaratory judgment than he would be should he prevail on his claim for recovery of benefits. The claims are based on identical factual allegations, seek identical factual relief, and are therefore duplicative claims that cannot be simultaneously asserted in the FAC.

Therefore, Plaintiff's claims for declaratory judgment against AHL and Unum, at Counts IV and VII of the FAC, are dismissed. *See Palma v. Harleysville Life Ins. Co.*, 2013 U.S. Dist. LEXIS 179751, at *18-19 (D.N.J. Dec. 23, 2013) (construing the plaintiff's claims for "Declaratory Judgment" and "Violation of ERISA" as one, where the claim for declaratory relief was subsumed by Count II of the complaint regarding ERISA violations and an alleged improper discontinuation of the plaintiff's benefits).

As with Plaintiff's claims for breach of fiduciary duty against AHL and Unum, discussed above, the Court finds that amendment of the FAC would be futile with respect to Plaintiff's claims for declaratory judgment against AHL and Unum. Therefore, Counts IV and VII are dismissed with prejudice. *See Phillips*, 515 F.3d at 231.

### b. Jeffrey Azzato and St. Marys' Motion to Dismiss Counts VIII-XII of the FAC

Defendants Azzato and St. Marys move jointly to dismiss all claims asserted against them in the FAC, which are Counts VIII, IX, X, XI, and XII. (*See* ECF No. 34.) The arguments with respect to each of these Counts will be discussed in detail below. Defendants Azzato and St. Marys also raise arguments in opposition to the relief sought in the FAC. (*See* ECF No. 35 at 20-21.) These arguments will be addressed following the Court's analysis of the individual claims asserted against Defendants Azzato and St. Marys.

### i. Count VIII (Breach of Fiduciary Duty Against Defendant Azzato)

With respect to Count VIII, in which Plaintiff asserts a claim for breach of fiduciary duty against Defendant Azzato under Section 502(a)(3) of ERISA, Defendant Azzato states that Plaintiff fails to state a cause of action upon which relief can be granted, and that Count VIII of the FAC must therefore be dismissed. (ECF No. 35 at 8-10.) Specifically, Defendant Azzato argues that his December 2012 offer to Plaintiff of a full salary continuation was not a misrepresentation and that Plaintiff has not adequately pleaded reasonable and detrimental reliance. (*Id*. at 10-13.)

In opposition to Defendant Azzato's motion to dismiss Count VIII of the FAC, Plaintiff states that he has adequately pleaded a cause of action for breach of fiduciary duty against Defendant Azzato. (*See* ECF No. 47 at 5-8.) Specifically, Plaintiff states that when Defendant Azzato decided to change insurance policies, he was aware of Plaintiff's situation, including his physical condition, intention to file for disability benefits, and decline in work hours, but nonetheless changed to a policy with less monetary benefits without notifying Plaintiff. (*Id*. at 6.) Plaintiff thus states that Defendant's misrepresentation is comprised of three parts: (1) Defendant Azzato's representation that he would continue to pay Plaintiff's salary; (2) Defendant Azzato's misrepresentation by omission in failing to disclose the prospective change in policies "in the face of an unequivocal, affirmative duty to speak"; and (3) Defendant Azzato's subsequent cessation of payment of Plaintiff's salary. (*Id*. at 7.) Further, Plaintiff asserts that he reasonably and detrimentally relied on Defendant Azzato's misrepresentations and failures to disclose by not filing a disability claim. (*Id*. at 7-8.)

In reply, Defendant Azzato argues that Plaintiff's responsive brief did not adequately address the arguments in support of dismissal. (ECF No. 50 at 2.) Defendant Azzato again argues that Plaintiff did failed to plead that Defendant Azzato made a material misrepresentation and that Plaintiff reasonably and detrimentally relied on any such material misrepresentation. (*Id.* at 2-5.)

To state a claim for breach of fiduciary duty under ERISA, a plaintiff must plead the following elements: "(1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation on the part of the defendant; (3) the materiality of that misrepresentation; and (4) detrimental reliance by the plaintiff on the misrepresentation." *Lewis v. Allegheny Ludlum Corp.*, 2013 WL 3989448, at *11 (W.D. Pa. Aug. 2, 2013) (citing *Romero v. Allstate Corp.*, 404 F.3d 212, 226 (3d Cir. 2005)) (internal quotations omitted). Here, Defendant Azzato challenges the sufficiency of Plaintiff's allegations with respect to the second and third prongs (material misrepresentation) and the fourth prong (detrimental reliance).

With respect to prongs two and three, "[a] misleading statement or omission by a fiduciary is material if there is substantial likelihood that it would mislead a reasonable employee in making an adequately informed retirement decision, or a harmful decision regarding benefits." *Lewis*, 2013 WL 3989448, at *11 (citing *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 579 F.3d 220, 228 (3d Cir. 2009)) (internal quotations omitted). "In determining whether an alleged misrepresentation or inadequate disclosure is substantially likely to mislead a reasonable employee, courts examine whether the fiduciary, as an objective matter, knew or should have known that a beneficiary would be confused by the statement or omission." *Id.* (internal quotations omitted).

The Court finds that Plaintiff has sufficiently alleged that Defendant Azzato made a material misrepresentation. In support of Count VIII, Plaintiff alleges that Defendant Azzato breached his fiduciary duties in the following three ways: (1) by representing to Plaintiff that Defendant Azzato would continue to pay Plaintiff's salary, thereby inducing Plaintiff to forgo filing a disability claim; (2) by subsequently switching plan providers to a plan with a substantially lower monetary disability payout, on a date other than the anniversary date of the plan underwritten by AHL, while Plaintiff was absent on medical leave and without notifying Plaintiff of the change; and (3) by failing to disclose to or notify Plaintiff of the change in plans while having full knowledge of Plaintiff's circumstances. (ECF No. 26 ¶ 147.)

While the Court agrees with Defendant Azzato that any one of these three allegations alone would likely not suffice as the material misrepresentation to state a claim for breach of fiduciary duty, the Court finds that, viewing the FAC as a whole and taking all of its allegations as true, Plaintiff has plausibly stated that Defendant Azzato made a material misrepresentation. Specifically, the facts alleged in the FAC, if true, could reasonably lead to the inference that Defendant Azzato, while ostensibly offering to cover Plaintiff's salary while he recovered, withheld information about a planned switch in insurance coverage that could have a material effect on Plaintiff's benefits given his medical condition. Moreover, the facts as alleged also support the reasonable inference that this misrepresentation by omission was material, because had Defendant Azzato disclosed the intent to switch insurance carriers, Plaintiff may have made a different decision with respect to his decision to file a disability claim. (ECF No. 26 ¶ 149.) *See Horvath v. Keystone Health Plan East, Inc.*, 333 F.3d 450, 461 (3d Cir. 2003) ("a fiduciary

has a legal duty to disclose to the beneficiary those material facts, known to the fiduciary but unknown to the beneficiary, which the beneficiary must know for its own protection").

With respect to prong four, the Court concludes that Plaintiff has adequately alleged detrimental reliance. Plaintiff alleges that he detrimentally relied on Defendant Azzato's misrepresentations "in that he did not file a disability claim after Defendant Azzato changed the disability plans, resulting in a denial of Plaintiff's claims by both [Defendants AHL and Unum]." (ECF No. 26 ¶ 150.) This allegation, accepted as true, leads the Court to the reasonable inference that the material misrepresentation allegedly made to Plaintiff by Defendant Azzato resulted in Plaintiff's reliance to his detriment. Defendant Azzato raises several arguments in opposition to this theory of detrimental reliance. For example, Defendant Azzato argues that "[Plaintiff] has not pleaded that he would have been eligible under the [AHL] policy had he applied on or before July 31, 2013," and that "[Plaintiff] . . . has not pleaded that his disability claim would have been approved given that [AHL's] denial also was based upon its interpretation of medical documentation over which Azzato and St. Marys had no control." (ECF No. 50 at 4.) These arguments are outside the scope of the issues with which the Court is faced at this stage of the litigation such that dismissal of Plaintiff's claim against Defendant Azzato for breach of fiduciary duty on their basis would be premature. While these arguments may be supported and indeed may become relevant at a later stage of the case, they do not affect the Court's determination of whether Plaintiff has pleaded detrimental reliance. Defendant Azzato would more appropriately raise these arguments on a future motion for summary judgment.

Taking all facts pleaded in the FAC as true, and making all reasonable inferences flowing therefrom, the Court concludes that Plaintiff has stated a plausible claim for relief for breach of fiduciary duty against Defendant Azzato. Defendant Azzato's motion to dismiss Count VIII of the FAC is therefore denied.

### ii. Count IX (Equitable Estoppel Against Defendant Azzato)

Defendant Azzato argues that Count IX of the FAC for equitable estoppel must be dismissed "for many of the same reasons as Count VIII." (ECF No. 35 at 13.) Defendant Azzato argues that Plaintiff has failed to state a claim upon which relief can be granted, because (1) Defendant Azzato made no misrepresentation to Plaintiff, (2) no detrimental reliance has been alleged, (3) and Plaintiff failed to plead that extraordinary circumstances exist. (*Id.* at 14-17.)

In opposition to Defendant Azzato's motion to dismiss Count IX of the FAC, Plaintiff asserts that he has adequately stated a claim for equitable estoppel under Section 502(a)(3) of ERISA. (*See* ECF No. 47 at 8-10.) Plaintiff argues that Defendant Azzato's three-part representation discussed at Count VIII, above, also satisfies the material misrepresentation requirement here. Plaintiff argues, "[i]n sum, Azzato's representations created a substantial likelihood that Boyles would be misled in making an adequately informed decision about if and when to file a disability claim." (*Id.*) Plaintiff also states that he has adequately pleaded extraordinary circumstances because the "facts as pleaded and the reasonable inferences drawn therefrom are clear: that Azzato intended, by his acts and omissions, to fraudulently deprive [Plaintiff] of disability benefits." (*Id.* at 10.)

To state a claim for equitable estoppel under ERISA § 502(a)(3), an "ERISA plaintiff must establish (1) a material representation, (2) reasonable and detrimental reliance upon the

representation, and (3) extraordinary circumstances." *Burnstein v. Retirement Account Plan for Employees of Allegheny Health Educ. And Research Foundation*, 334 F.3d 365, 383 (3d Cir. 2003) (internal quotations omitted). Here, Defendant Azzato challenges all three prongs, but emphasizes in his reply brief that even if Plaintiff has adequately pleaded the first two prongs, Plaintiff has failed to allege extraordinary circumstances as this requirement has been interpreted by the Third Circuit. (*See* ECF No. 35 at 13-17; ECF No. 50 at 5-8.)

In the analysis for breach of fiduciary duty above, the Court found that Plaintiff has adequately alleged that Defendant Azzato made a misrepresentation by omission on which Plaintiff reasonably and detrimentally relied. Similarly here, in support of his claim for equitable estoppel, Plaintiff alleges that Defendant Azzato represented to Plaintiff that he would continue to pay Plaintiff's salary while he recovered, that this representation was made with the intent to induce Plaintiff's forbearance of filing a disability claim, and that, in reliance on this representation, Plaintiff did not file a disability claim. (ECF No. 26 ¶¶ 154-56.) These allegations, if true, are sufficient to permit the reasonable inference that Defendant Azzato made a material representation on which Plaintiff reasonably and detrimentally relied. Plaintiff has therefore sufficiently alleged prongs one and two for his claim for equitable estoppel under ERISA.

The Court turns, then, to the third equitable estoppel prong under ERISA to determine whether Plaintiff has pleaded extraordinary circumstances. The extraordinary circumstances element of equitable estoppel under ERISA imposes a "heightened requirement" that is not satisfied if the plaintiff "merely make[s] out the ordinary elements of equitable estoppel." *Kurz v. Phila. Elec. Co.*, 96 F.3d 1544, 1553 (3d Cir. 1996) (internal quotations omitted).

The Court of Appeals for the Third Circuit has not defined "extraordinary circumstances," but has stated that such circumstances exist in a variety of factual scenarios. *Pell v. E.I. DuPont de Nemours & Co. Inc.*, 539 F.3d 292, 303 (3d Cir. 2008) (citing *Kurz*, 96 F.3d at 1553 (collecting cases)). The Third Circuit has summarized that "[e]xtraordinary circumstances can arise where there are affirmative acts of fraud, where there is a network of misrepresentations over an extended course of dealing, or where particular plaintiffs are especially vulnerable." *Id.* (internal quotations omitted).

In *Pell*, the Third Circuit affirmed the district court's determination that the plaintiff had established the elements of equitable estoppel under ERISA, including extraordinary circumstances, where the defendant made "repeated affirmative misrepresentations," and where the plaintiff had been diligent and engaged in "persistent questioning about the significant benefits at stake." *Id.* at 304-05. (internal quotations omitted).

The Third Circuit has, however, "consistently rejected estoppel claims based on simple ERISA reporting errors or disclosure violations." *Kurz*, 96 F.3d at 1553-54. Rather, "[f]or estoppel to exist in the ERISA context, extraordinary circumstances amounting to fraud or bad faith must be present." *Jenkins v. Union Labor Life Ins. Co., Inc.*, 900 F.Supp.2d 534, 552 (E.D. Pa. 2012).

In support of Plaintiff's claim for equitable estoppel against Defendant Azzato, he makes the following allegations: (1) Plaintiff told Defendant Azzato that he planned to file a disability claim under the AHL policy in December of 2012; (2) In reply, Defendant Azzato told Plaintiff that he would continue to pay Plaintiff's salary while Plaintiff recovered; (3) Defendant Azzato made this representation with the "intent to induce Plaintiff's forbearance of filing a disability

claim"; (4) In reliance on Defendant Azzato's representation, Plaintiff did not file a disability claim; (5) Defendant Azzato knew of and orchestrated the termination of the AHL policy and the switch to Unum, and had full knowledge of Plaintiff's situation at that time; and (6) Defendant Azzato did not notify Plaintiff of the termination of the AHL policy. (ECF No. 26 ¶¶ 153-56, 163-64.)

Accepting these allegations as true and drawing all reasonable inferences therefrom, the Court concludes that Plaintiff has failed to plead that extraordinary circumstances exist and has therefore failed to state a claim for equitable estoppel under ERISA against Defendant Azzato. Plaintiff's allegations contain no indication that Defendant Azzato repeatedly misrepresented his intent to switch insurance carriers or that Plaintiff engaged in persistent questioning about his entitlement to disability benefits under either plan. Moreover, the FAC is devoid of any alleged "affirmative acts of fraud" taken by Defendant Azzato. Plaintiff's allegations therefore fail to meet the heightened standard for pleading equitable estoppel under ERISA. Count IX of the FAC is therefore dismissed. *See Gridley v. Cleveland Pneumatic Co.*, 924 F.2d 1310, 1319 (3d Cir. 1991) (ERISA reporting or disclosure violations alone are not extraordinary circumstances); *Flick v. Chartwell Advisory Group Ltd.*, 2015 WL 4041969, at *6-7 (E.D. Pa. July 2, 2015) (dismissing claim for equitable estoppel under ERISA where the plaintiff failed to plead extraordinary circumstances and noting that the plaintiff had not alleged facts indicating that he had been diligent or engaged in persistent questioning about the benefits at stake).

Given the general preference for affording plaintiffs the ability to amend a deficient complaint unless it would be inequitable or futile, Plaintiff is granted leave to amend the FAC to attempt to cure its deficiencies with respect to Count IX. *See Shane*, 213 F.3d at 115.

### iii. Count X (Interference with ERISA Rights Against Defendant Azzato)

Defendant Azzato moves to dismiss Count X of the FAC, which asserts a claim for interference with ERISA rights under Section 510, for failure to state a claim upon which relief can be granted. (ECF No. 35 at 17.) Defendant Azzato argues that "there is no allegation that Defendant Azzato or St. Marys engaged in prohibited conduct or that Defendant Azzato had specific intent to violate ERISA." (*Id.*) Defendant Azzato also argues that the FAC does not allege that Defendant Azzato or St. Marys engaged in prohibited employer conduct. (*Id.*)

In opposition to Defendant Azzato's motion to dismiss Count X of the FAC, Plaintiff argues that he has adequately pleaded a claim for interference with ERISA rights. (*See* ECF No. 47 at 10-12.) Specifically, Plaintiff argues that he has alleged that Defendant Azzato engaged in prohibited employer conduct, because he represented to Plaintiff that he would continue to pay Plaintiff while he recovered, which dissuaded Plaintiff from filing a disability claim. (*See id.* at 11.) Plaintiff also asserts that he has circumstantially pleaded the intent necessary to state a claim for interference with ERISA rights, and that three factors are indicative of Defendant Azzato's intent: (1) the timing of his actions; (2) the reasons for the denial of Plaintiff's claims; and (3) that the Unum policy provided for a lower payout than the AHL policy, from which Plaintiff argues it may be inferred that Azzato benefited. (*Id.* at 12.) Thus, Plaintiff argues, the circumstantial evidence plausibly demonstrates that Defendant Azzato had the intent to violate ERISA such that Plaintiff has stated a claim for Interference with ERISA Rights. (*Id.*)

In reply, Defendant Azzato states that the Court should disregard Plaintiff's arguments in his responsive brief, because they are not supported by the factual allegations in the FAC,

which, Defendant Azzato argues, fall far short of satisfying the pleading requirements for a claim for interference with ERISA rights under Section 510 of ERISA. (*See* [ECF No. 50 at 8-10](#).)

Under ERISA Section 510, it is "unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. Thus, to state a claim for interference with ERISA rights under Section 510, a plaintiff must allege (1) prohibited employer conduct, (2) taken for the purpose of interfering, (3) with the attainment of any right to which the employee may become entitled. *Dewitt v. Penn-Del Directory Corp.*, 106 F.3d 514, 522 (3d Cir. 1997) (citing *Gavalik v. Continental Can Co.*, 812 F.2d 834, 852 (3d Cir.), *cert. denied*, 484 U.S. 979, 108 S.Ct. 495, L.Ed.2d 492 (1987)). This requires that the "plaintiff . . . demonstrate that the defendant had the 'specific intent' to violate ERISA." *Id*. (quoting *Gavalik*, 812 F.2d at 851).

The "prohibited employer conduct" element under Section 510 includes an employer's decision to "discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary." 29 U.S.C. § 1140. The Third Circuit has limited actionable conduct under Section 510 to that which affects the employer-employee relationship. *Fischer v. Phila. Elec. Co.*, 96 F.3d 1533, 1543 (3d Cir. 1996) (Section 510 ERISA claims are "limited to actions affecting the employer-employee relationship, not mere changes in the level of benefits") (internal quotations omitted), *cert. denied*, 520 U.S. 1116, 117 S.Ct. 1247, 137 L.Ed.2d 329 (1997).

In support of his Section 510 claim against Defendant Azzato, Plaintiff alleges the following facts: (1) Plaintiff informed Defendant Azzato of his intent to file a disability claim in December of 2012; (2) Defendant Azzato, intending to dissuade Plaintiff from filing a disability

claim, told Plaintiff that he would continue to pay Plaintiff's salary in lieu of Plaintiff filing for disability; (3) In reliance on Defendant Azzato's representation, Plaintiff did not file a disability claim; (4) Defendant Azzato then changed plans without notifying Plaintiff, despite having full knowledge of Plaintiff's situation; and (5) Defendant Azzato took these actions to circumvent the provision of promised benefits. (ECF No. 26 ¶¶ 173-78.)

These allegations are insufficient to state a claim for interference with ERISA rights under Section 510. Nowhere in the FAC does Plaintiff allege conduct on the part of Defendant Azzato that would rise to the level of "prohibited employer conduct" as defined in Section 510 and further elaborated by the Third Circuit. On the face of the FAC, Plaintiff alleges that Defendant Azzato dissuaded him from filing a disability claim by offering to pay Plaintiff's salary, and then changed insurance providers without giving Plaintiff notice of the change. Such conduct does not fall within the enumerated actions that would constitute "prohibited employer conduct" under Section 510. Moreover, these actions and omissions do not affect the employer-employee relationship as required by the Third Circuit to state a claim under Section 510. While Plaintiff does allege that Defendant Azzato did ultimately terminate the employment relationship with Plaintiff, Plaintiff makes no allegation to permit the inference that this action was taken with the specific intent to interfere with Plaintiff's ERISA rights.

Plaintiff has not alleged "prohibited employer conduct" within the meaning of Section 510. Section 510, therefore, does not provide relief for the facts Plaintiff has alleged. Count X is dismissed. *See Jackson v. Rohm & Haas Co.*, 2007 WL 2702804, at *6 (E.D. Pa. Sept. 12, 2007) (dismissing the plaintiff's claim for interference with benefits where plaintiff had "alleged

conduct unbecoming an ERISA fiduciary," but had not alleged any conduct affecting his status as an employee).

Finding that amendment of the FAC with respect to Plaintiff's claim for interference with ERISA rights against Defendant Azzato would not be inequitable or futile, the Court will grant Plaintiff leave to amend the FAC with respect to Count X. *See Phillips*, 515 F.3d at 231.

### iv. Counts XI and XII (Respondeat Superior Liability and Breach of Fiduciary Duty Against St. Marys)

St. Marys states that Counts XI, for respondeat superior liability, and XII, for breach of fiduciary duty, seek to hold St. Marys liable for the acts and omissions of Defendant Azzato, and that no "independent acts, omissions or basis for liability on the part of St. Marys are asserted other than vicariously through the actions of Mr. Azzato detailed in Counts VIII, IX and X of the [FAC]." (ECF No. 35 at 19.) St. Marys thus argues that "[f]or the same reasons that [Plaintiff] has failed to state a cause of action under ERISA against [Defendant] Azzato in Counts VIII, IX and X of the [FAC], [Plaintiff] also fails to state a cause of action against St. Marys in Counts XI and XII" of the FAC. (*Id.*) Accordingly, St. Marys argues that Counts XI and XII of the FAC must be dismissed. (*Id.*)

In opposition to St. Marys' motion to dismiss Counts XI and XII of the FAC, Plaintiff argues that because he has stated viable claims against Defendant Azzato, these claims against St. Marys too must stand. (ECF No. 47 at 12.)

The Court found above that Plaintiff had stated a claim sufficient to survive the instant motion to dismiss with respect to his claim for breach of fiduciary duty against Defendant Azzato. Plaintiff has therefore sufficiently pleaded facts to support his claims against Defendant

St. Marys vicariously for respondeat superior liability and directly for breach of fiduciary duty. Defendant St. Marys' motion to dismiss Counts XI and XII is denied.

### v. The Relief Sought

Defendants Azzato and St. Marys argue that Plaintiff's asserted claims against them "seek some form of monetary damages or other relief not available" under ERISA. (ECF No. 35 at 20.) Defendants Azzato and St. Marys note that the U.S. Supreme Court and the Court of Appeals for the Third Circuit consistently state that "ERISA has no provision for compensatory, consequential or punitive damages and, therefore, when a plaintiff seeks damages outside the scope of ERISA, it gives rise to 'conflict preemption.'" (*Id*. (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987); *Aetna Health Inc. v. Davila*, 542 U.S. 200, 214-16 (2004); *Barber v. Unum Life Ins. Co. of America*, 383 F.3d 134, 138 (3d Cir. 2004).) Defendants Azzato and St. Marys thus argue that, because each of the counts against them "purport to be brought under ERISA and relate to the employee welfare benefit plan at issue, and ask for an 'alternative remedy' to ERISA's enforcement scheme in the form of monetary damages," these counts must be dismissed for failure to state a claim upon which relief can be granted. (*Id*. at 21.)

In opposition to Defendants Azzato and St Marys' arguments related to Plaintiff's requested relief, Plaintiff states that the distinction that Defendants attempt to raise "is one of semantics." (ECF No. 47 at 13.) Plaintiff argues that the "sum and substance" of the relief he seeks is the recovery of benefits to which he was entitled, and states that the Court may impose any remedial scheme it sees fit. (*Id*.) Plaintiff argues that the fact that "the remedy sought in this case is payment of monetary disability benefits does not take it outside the ambit of ERISA,"

and that were this the case, "ERISA would confer a right without a remedy." (*Id*.) Thus, Plaintiff

argues, the relief he seeks in the FAC does not warrant dismissal of any of his claims. (*Id*.)

Defendants' argument as to the relief Plaintiff seeks is unavailing. The cases Defendants

cite address the question of when ERISA may preempt a state statue or common law cause of

action. In *Barber*, the Court of Appeals for the Third Circuit summarized the state of the law

after *Aetna Health*: "Reading *Pilot Life*, *Rush Prudential*, and *Aetna Health* together, a state statute

is preempted by ERISA if it provides a form of relief in a judicial forum that added to the

judicial remedies provided by ERISA . . . or stated another way, if it duplicates, supplements, or

supplants the ERISA civil enforcement remedy." *Barber*, 383 F.3d at 140-41 (internal quotations

omitted). In that case, the Third Circuit held that the state statute at issue was preempted by

ERISA, because it was a "state remedy that allow[ed] an ERISA-plan participant to recover

punitive damages for bath faith conduct by insurers, supplementing the scope of relief granted

by ERISA." *Id*.

Here, in contrast, Plaintiff's causes of action against Defendants Azzato and St. Marys

arise under ERISA. Specifically, Plaintiff alleges claims against these defendants pursuant to

ERISA §§ 502(a)(3) and 510. (*See* ECF No. 26 at 21-27.) These are not common law causes of

action or claims alleged pursuant to a state statute seeking to recover benefits outside of the

remedial scheme enacted by Congress. Moreover, Plaintiff's formulation of the relief he seeks

does not transform his claims into such non-ERISA causes of action. The Court therefore rejects

Defendants Azzato and St. Marys' argument with respect to Plaintiff's requested relief, and

concludes that Plaintiff's prayers for relief do not affect the Court's determinations of which

claims in the FAC will be permitted to proceed.

## VI. Conclusion

For the reasons stated above, the motions to strike jury trial demand (ECF Nos. 3, 10, 16) and the motions to dismiss related to the Original Complaint (ECF Nos. 4, 8, 14) are denied as moot. Defendants Unum's and AHL's motions to dismiss portions of the FAC (ECF Nos. 27, 29) are granted, and Defendants Azzato and St. Marys' motion to dismiss portions of the FAC (ECF No. 34) is granted in part and denied in part.

An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RONALD P. BOYLES** | ) |
| | )     **CIVIL ACTION NO. 3:15-cv-274** |
|       **Plaintiff,** | ) |
| | )     **JUDGE KIM R. GIBSON** |
|    **v.** | ) |
| | ) |
| **AMERICAN HERITAGE LIFE** | ) |
| **INSURANCE COMPANY d/b/a ALLSTATE** | ) |
| **BENEFITS a/k/a ALLSTATE LIFE** | ) |
| **INSURANCE COMPANY OF NEW YORK,** | ) |
| **SUBSIDIARIES OF THE ALLSTATE** | ) |
| **CORPORATION; JEFFREY AZZATO; ST.** | ) |
| **MARYS INSURANCE AGENCY, INC.; and** | ) |
| **UNUM LIFE INSURANCE COMPANY OF** | ) |
| **AMERICA a/k/a UNUM GROUP,** | ) |
| | ) |
|      **Defendants.** | ) |

## ORDER

AND NOW, this 25th day of July, 2016, in accordance with the foregoing

Memorandum Opinion, **IT IS HEREBY ORDERED** as follows:

- Defendants' Motions to Strike Jury Trial Demand (ECF Nos. 3, 10, 16) are **DENIED AS MOOT**;

- Defendants' Motions to Dismiss Plaintiff's Original Complaint (ECF Nos. 4, 8, 14) are **DENIED AS MOOT**;

- Defendant AHL's Motion to Dismiss Counts II and IV of Plaintiff's First Amended Complaint (ECF No. 29) is **GRANTED**, and Counts II and IV of the First Amended Complaint are **DISMISSED WITH PREJUDICE**;

- Defendant Unum's Motion to Dismiss Counts VI and VII of Plaintiff's First Amended Complaint (ECF No. 27) is **GRANTED**, and Counts VI and VII of the First Amended Complaint are **DISMISSED WITH PREJUDICE**;

- Defendants Jeffrey Azzato and St. Marys' Motion to Dismiss Counts VIII, IX, X, XI, and XII (ECF No. 34) of Plaintiff's First Amended Complaint is **GRANTED IN PART** and **DENIED IN PART** as follows:

  o The Motion (ECF No. 34) is **GRANTED** with respect to Counts IX and X. Counts IX and X of the First Amended Complaint are **DISMISSED**. Plaintiff is granted leave to amend the First Amended Complaint with respect to Counts IX and X;

  o The Motion (ECF No. 34) is **DENIED** with respect to Counts VIII, XI, and XII; and

- Plaintiff shall file a Second Amended Complaint with respect to Counts IX and X within twenty-one days of the date of this order.

**BY THE COURT:**

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**

2