# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RONALD P. BOYLES, JR.,** | ) | Case No. 3:15-cv-274 |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| **AMERICAN HERITAGE LIFE** | ) | |
| **INSURANCE COMPANY d/b/a ALLSTATE** | ) | |
| **BENEFITS a/k/a ALLSTATE LIFE** | ) | |
| **INSURANCE COMPANY OF NEW YORK,** | ) | |
| **JEFFREY AZZATO, ST. MARYS** | ) | |
| **INSURANCE AGENCY, INC., and UNUM** | ) | |
| **LIFE INSURANCE COMPANY OF** | ) | |
| **AMERICA a/k/a UNUM GROUP,** | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

**I.    Introduction**

This case arises under the Employee Retirement Income Security Act of 1974 (ERISA) from the denial of disability benefits to Plaintiff Robert P. Boyles, Jr. ("Boyles") by American Heritage Life Insurance Co. ("AHL") and Unum Life Insurance Company of America ("Unum"). Pending before the Court are AMERICAN HERITAGE LIFE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT (ECF No. 60) and UNUM'S MOTION FOR SUMMARY JUDGMENT ON THE ADMINISTRATIVE RECORD (ECF No. 64). The parties have developed their respective positions as to the Concise Statements of Material Facts and submitted numerous exhibits (including the administrative records of AHL and Unum, filed under seal) (ECF Nos. 61, 66-70, 74, 75, 77) and have thoroughly briefed the legal issues

(ECF Nos. 62, 65, 71, 72, 73, 76, 80). The motions are now ripe for disposition. For the reasons that follow, the motions are **GRANTED**.

## II.     Jurisdiction and Venue

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as Plaintiff's claims arise under federal law. Venue is proper in this judicial district pursuant to 29 U.S.C. § 1132(e)(2).

## III.    Background

### A.     Procedural Background

Plaintiff initiated the instant action by filing a twenty-count complaint (the Original Complaint) in the Court of Common Pleas of Blair County, Pennsylvania, on September 29, 2015. (*See* ECF No. 1-2.) Defendants AHL, Unum, Azzato, and St. Marys removed the action to this Court on October 22, 2015. (*See* ECF No. 1.) Defendants then filed several motions related to Plaintiff's Original Complaint. These motions were denied as moot because on November 24, 2015, Plaintiff filed a twelve-count First Amended Complaint ("FAC"). (*See* ECF No. 26). Defendants then filed motions to dismiss portions of the FAC. On July 25, 2016, the Court issued a Memorandum Opinion and Order which: (1) granted the partial motions to dismiss filed by AHL and Unum and dismissed counts II, IV, VI and VII of the FAC; and (2) granted in part and denied in part the motions filed by Defendants Azzato and St. Marys, and dismissed counts IX and X of the FAC.

Plaintiff, AHL, and Unum agreed that no discovery was necessary between them and the case should be decided on the respective administrative records.[1] Pursuant to the Court's Initial Scheduling Order (ECF No. 43), AHL and Unum filed summary judgment motions as to the ERISA claims and Plaintiff has filed his responses thereto.

B. **Factual Background**

At this stage of the case, the Court must view any disputed facts in the light most favorable to Boyles, the non-moving party. However, the facts in this case are largely undisputed. The following recitation is based primarily on Plaintiff's briefs (ECF Nos. 72, 73).

i. **Work History**

Plaintiff Ronald Boyles was employed by St. Marys as a commercial insurance producer from 2006—when St. Marys acquired Boyles' family-operated insurance company, Boyles Insurance Agency—until his employment was terminated in November 2013. By virtue of that employment, Boyles participated in an employee welfare benefit plan sponsored and administered by St. Marys. From January 1, 2010 through July 31, 2013, the plan was insured by a policy underwritten by AHL. Effective August 1, 2013, St. Marys switched coverage to a policy underwritten by Unum.[2]

---

[1] The AHL administrative record is filed under seal at ECF No. 67, in eleven sub-parts. For clarity, references to the AHL administrative record will be cited as "AHL [page number]." The Unum administrative record is filed under seal at ECF Nos. 68, 69, 70. For clarity, references to the Unum administrative record will be cited as "ECF No. xx at [page number]." Unum's policy and its denial letters were attached to Unum's summary judgment motion (ECF No. 64) and will be cited accordingly.

[2] AHL and Unum provided both short- and long-term disability coverage. The issues in this case do not implicate any differences in these coverages. Unum also provided a Life Waiver of Premium ("LWOP") policy, which is discussed in its June 2, 2015 denial letter (ECF No. 64, Ex. D), but is not at issue in this litigation.

Boyles had a history of back problems, which required multiple surgeries. On September 25, 2012, Boyles had surgery to reposition a medical device that was implanted in his back. In December 2012, Boyles expressed interest in filing a disability claim to Azzato, the President of St. Marys. Azzato informed Boyles that, due to Boyles' long-time commitment to the agency and his work ethic, St. Marys would continue to pay Boyles his full salary while he recovered. Azzato stated that he considered Boyles to be on a type of "full-paid medical leave" from December 2012 through November 22, 2013, when his employment terminated.

From October 2012 through May 2013, Boyles would come into the office or work from home, as his condition allowed. On January 10, 2013, Boyles tripped over an electrical cord in his office and injured his left shoulder and wrist, and sustained a concussion. On May 10, 2013, Boyles had shoulder surgery. After that time, Boyles only worked a few hours per week. St. Marys did not use time clocks. Azzato estimated that Boyles' actual hours worked were approximately 10-20 hours per week from May to November, 2013. Azzato terminated Boyles' employment on November 22, 2013.

### ii. Claims History

On December 19, 2013, Boyles submitted a disability claim to AHL. It was denied initially by AHL for the stated reason that his condition resulted from the January 10 workplace accident. Boyles filed three appeals, all of which were rejected by AHL. The overarching basis for the denials was that Boyles continued to receive his full salary, and thus did not satisfy the definition of "disability" under the terms of the AHL policy. AHL's processing of the claim will be discussed in more detail below.

On July 10, 2014, Boyles submitted a disability claim to Unum. On December 26, 2014, Unum denied the claim for the stated reason that Boyles was not in "active employment" on August 1, 2013 (the date the Unum policy became effective), and thus, was not covered under the policy. The denial letter from Unum also referenced the policy's "continuity of coverage" provision and determined that Boyles was not covered under that provision, either. Boyles filed an appeal, which was rejected. This litigation followed.

## IV. Applicable Law

A grant of summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)). A genuine dispute of material fact is one that could affect the outcome of the litigation. *Mahoney v. McDonnell*, 616 F. App'x. 500, 504 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)). However, "'[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). As noted above, the parties agree that there are no material disputes of fact and the pending motions should be resolved based on the administrative records.

"[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). In this case, the parties agree that AHL and Unum, as the plan administrators, each possessed the discretion to determine eligibility for benefits. Therefore, Defendants' decisions to deny Boyles disability payments violates ERISA only if the

decisions were arbitrary and capricious. *Smathers v. Multi-Tool, Inc.*, 298 F.3d 191, 194 (3d Cir. 2002). The burden is therefore on Boyles to show that the denials of benefits were "'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Pinto v. Reliance Std. Life Ins. Co.*, 214 F.3d 377, 393 (3d Cir. 2000) (quoting *Abnathya v. Hoffman-LaRoche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993)). "[T]he court must defer to the administrator of an employee benefit plan unless the administrator's decision is clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan." *Abnathya*, 2 F.3d at 41.

However, when an insurance company both funds a benefits plan and possesses the discretion to determine eligibility under the terms of that plan, as is the case here, courts must take into account the inherent structural conflict of interest. In *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008), the Supreme Court clarified that the appropriate standard of review remains abuse of discretion, but the district court should weigh the conflict of interest as one factor in determining whether there was an abuse of discretion. *Id.* at 118-19. The Court recognizes and weighs that here both AHL and Unum have a conflict of interest.

**V.  Discussion**

Boyles is a sympathetic Plaintiff. He was obviously a valued employee at St. Marys. He had a reputation for long-term commitment to the agency and a strong work ethic. To his credit, he attempted to battle through his medical problems. Azzato, apparently in recognition of Boyles' valuable contributions, attempted to accommodate Boyles by paying him his full salary even though Boyles was unable to work a full-time schedule. The switch in disability-insurance vendors from AHL to Unum appears to have been unrelated to Boyles.

Unfortunately, these events combined to create a unique set of circumstances in which Boyles was denied coverage by both insurers, even though he clearly suffered a disability that prevented him from continuing to work.

In *McKay v. Reliance Standard Life Ins. Co.*, 428 F. App'x 537 (6th Cir. 2011), the Court faced a factually analogous situation. The insured employee, McKay, was an attorney who, like Boyles, suffered from back problems and attempted to work despite his pain. During the time period in which McKay's working hours were affected but he was still receiving his full salary, his employer changed disability-insurance providers, effective January 1, 2004. After McKay's employment ended on January 14, 2004, he filed claims with both disability insurers, each of which denied his claim. On appeal, McKay reasoned that because his employer maintained uninterrupted disability-insurance coverage during the time period in which he sustained his disability, he must be covered by one of the two policies. *Id.* at 541. The Sixth Circuit held that this argument, "while somewhat logical, is incorrect." *Id.* Instead, McKay's eligibility for coverage had to be determined by the specific terms of each policy. *Id.* The Court held that the denial by the prior insurer was reasonable because McKay had not suffered a 20% reduction of income prior to January 1, 2004, when the policy expired. *Id.* at 542. The Court held further that the denial by the new insurer was also reasonable because McKay had not worked sufficient hours to demonstrate that he was "actively at work" after January 1, 2004 and thus did not qualify for coverage under the new policy. *Id.* at 544. In sum, the Court affirmed the denial of benefits by both insurers.

In this case, Boyles challenges similar denials of his claims by both AHL and Unum. These arguments will be addressed in turn below.

### A. AHL

Boyles contends that: (1) AHL unreasonably relied on evidence showing that Boyles did not miss any work time due to his injury, while ignoring evidence showing that Boyles was unable to perform the material and substantial duties of his occupation prior to the expiration of the AHL policy; (2) AHL changed its reasons for denying his claim at successive stages of his appeals; (3) there were procedural irregularities; and (4) AHL was wrong when it determined that St. Marys' payments to Boyles constituted "monthly earnings," as defined by the AHL plan. AHL contends that its denial of coverage was appropriate.

AHL explains that its reasons for denying Boyles' claim changed because the information presented to it changed. In the initial claim, Boyles disclosed his work-related accident on January 10, 2013, that worker's compensation paid his medical bills, and that he returned to work. (AHL 0063-64.) The attached Attending Physician Statement ("APS") by Dr. John Evans opined that Boyles became unable to work as of November 2013. (AHL 0071.) The employer statement by St. Marys confirmed the workers' compensation case, and also stated that Boyles had returned to work part-time from May-November 2013 with full pay, but did not perform any work after November 22, 2013. (AHL 0065.) Thus, AHL denied the claim based on its occupational-injury exclusion. (AHL 0076.) After the denial, St. Marys submitted an amended employer statement, in which it recanted its position that the disability arose from a workers' compensation case, but reaffirmed that Boyles stopped working on November 22, 2013. (AHL 0078-80). In response, AHL denied the claim in a letter dated December 30, 2013, on the basis that Boyles' disability had started after the AHL policy terminated. (AHL 0096.)

In Boyles' first appeal, he recognized that there was confusion between his workers' compensation claim (due to the January shoulder injury) and his disability claim (based on his back injury). Boyles clarified that he had not lost time because of the January 2013 accident and that his back pain became unbearable such that he had been unable to work at all since around June 2013, although he continued to be paid. (AHL 0098-99.) Boyles also submitted a new APS from Dr. Evans which opined that Boyles had been unable to perform his job duties as of June 2013. (AHL 0100.) Given the contradictory statements, AHL requested Dr. Evans' medical records and St. Marys' attendance records. (AHL 0102-103). The attendance records confirmed that Boyles continued to receive his full salary through November 22, 2013. By letter of February 13, 2014, AHL denied the first appeal because Boyles continued to receive his full salary, and thus, did not suffer a 20% or more loss in monthly earnings prior to expiration of the AHL policy. (AHL 0127-29.)

Boyles filed a second appeal, with additional explanation. (AHL 0143-49.) On June 9, 2014, AHL denied this second appeal, again explaining that Boyles had continued to receive his full pay through November 2013. (AHL 0418-20.) In his third appeal, Boyles claimed that his disability date due to his back pain began in December 2012 (prior to the January 2013 work-related accident). Boyles explained that he had previously indicated that he was working full-time because he was receiving his full salary. AHL denied the third and final appeal on February 24, 2015. (AHL 0510.) In light of the confusion between the workers' compensation claim and the disability claim and the additional information provided by Boyles throughout the claim and appeals process, the Court cannot conclude that AHL's changes in reasoning were arbitrary and capricious.

The procedural irregularity[3] alleged by Boyle is that AHL's denial letters do not comply with the requirement in 29 C.F.R. § 2560.503-1(g)(1) that a claimant be provided with a "description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary." Boyles does not articulate how the AHL denial letters failed to comply with this standard. The Court has reviewed each of the AHL denial letters and is unable to conclude that they violate the regulatory requirements. The Court notes that AHL requested additional information during its processing of the claim, that Boyles submitted additional information, and that Boyles pursued three appeals. *See Pini v. First Unum Life Ins. Co.*, 981 F. Supp. 2d 386, 414 (W.D. Pa. 2013) (letter satisfied regulatory obligations because it provided claimant with enough information to facilitate a meaningful appeal).

The Court turns now to the merits of AHL's denial of benefits. Unfortunately for Boyles, the AHL policy established two necessary conditions that must be met for an employee to be considered disabled: (1) the employee must be unable to perform the material duties of his regular occupation; **_and_** (2) he must suffer "a 20% or more loss in his monthly earnings." (AHL 0029; AHL 0037 (emphasis added).) These conditions are defined with the conjunctive "and" rather than the disjunctive "or." It is undisputed that at all times prior to August 1, 2013 (when the AHL policy was in effect), Boyles was paid his full salary by St. Marys. Thus, regardless of

---

[3] Boyles alleges a second irregularity, specifically that AHL's initial denial improperly relied on the workers' compensation exclusion without first determining that he was disabled. This argument is without merit. As the United States Court of Appeals for the Third Circuit explained in *Reed v. CITIGROUP INC*, "the court's focus must be on the Plan's 'final, post-appeal decision,' as '[t]o focus elsewhere would be inconsistent with ERISA's exhaustion requirement." 2016 WL 3626816, at *3 (3d Cir. July 7, 2016) (citations omitted).

how much or little he worked, Boyles never satisfied the condition that he suffer "a 20% or more loss in his monthly earnings."

Boyles argues, citing Azzato's letter to AHL (ECF No. 70 at 566-67), that he was on a type of full-paid medical leave beginning in November 2012. Although Boyles agrees that he received the equivalent of his full salary, he contends that these payments do not fall within the scope of the term "monthly earnings," as defined in the AHL policies. The Court cannot agree. Under both the short- and long-term policies, the term "monthly earnings" is defined as follows:

> **Monthly Earnings means the employee's gross monthly income from the employer in effect just prior to the date of disability. Gross monthly income is the total income before taxes and any pre-tax deductions made under a qualified deferred compensation plan recognized by the Internal Revenue Service. It does not include income received from commissions, bonuses, overtime pay, or other extra compensation. It does not include income received from sources other than the employer. If the employee becomes disabled while on a covered layoff or leave of absence, we will use his gross monthly income from the employer in effect just prior to the date the absence began**.

(AHL 0048.) The payments Boyles received, equivalent to his full salary, were certainly part of his "gross monthly income" and they came from his employer. Boyles does not contend that the payments were equivalent to any of the enumerated exclusions ("commissions, bonuses, overtime pay, or other extra compensation")—nor could he reasonably do so.

AHL's denial of benefits to Boyles was a correct application of the policy language. AHL did not unreasonably favor evidence adverse to Boyles; it did not violate 29 C.F.R. § 2560.503-1(g)(1); and its decision to deny coverage was not wrong, even under a *de novo*

standard of review. Its decision was far from arbitrary and capricious. In sum, AHL is entitled to summary judgment.

**B.     Unum**

Boyles contends that Unum abused its discretion in denying his claim. As an initial matter, Boyles criticizes Unum for believing his own testimony, and that of his co-workers, that he was working far less than the requisite 37.5 hours per week necessary to be eligible for coverage under the Unum policy. Boyles also contends that Unum's denial letters did not comply with 29 C.F.R. § 2560.503-1(g)(1). Finally, Boyles challenges the merits of Unum's decision to deny coverage, which he contends is grounded, in this litigation, on the "continuity of coverage" provisions, although Unum's administrative denials focused on his failure to be "actively at work."

As to Boyles' first argument, it was not arbitrary or capricious for Unum to believe Boyles' testimony about how much he worked. As a salaried employee, the mere fact that Boyles received his full pay did not establish that he worked full-time. Indeed, the evidentiary record was consistent and overwhelming that Boyles had worked less than full-time throughout the relevant time period. It was not error for Unum to rely on the consistent testimony of the witnesses regarding how much Boyles worked.

Boyles alleges two failures of compliance with 29 C.F.R. § 2560.503-1(g)(1). First, he argues that Unum was "woefully deficient" in its discussion of the "continuity of coverage" provision. Second, Boyles argues that Unum did not describe what additional materials would be necessary for him to perfect his claim. Boyles quotes a portion of the December 26, 2014 denial letter, which provides: "**By your own admission, you effectively stopped work and**

**were not in active employment on the Unum policy coverage begin date of August 1, 2013. As such, the prior carrier would likely be liable for any benefit**." (ECF No. 64, Ex. C.) Boyles argues that this statement appears to concede that he was covered under the AHL policy, such that he must be covered by the "continuity of coverage" provision of the Unum policy, but then fails to explain why his claim failed. In arguing that Unum provided insufficient explanation, Boyles ignores the context of this quotation—this paragraph is on page three of a six-page letter that recounts the factual background, quotes the relevant policy provisions, provides a substantial explanation for Unum's decision, and provides information on how to submit an appeal. (ECF No. 64, Ex. C.) And Boyles filed an appeal. *See Pini*, 981 F. Supp. 2d at 414 (letter satisfied regulatory obligations because it provided claimant with enough information to facilitate a meaningful appeal). Unum conducted further investigation. In a phone conversation with Unum appeals representative Lynette Foster during the appeal, Boyles confirmed that he had "barely worked" in 2013. (ECF No. 70 at 1799-1800.) The appeal was denied in another thorough six-page letter. (ECF No. 64, Ex. D.) For these reasons, the Court concludes that Unum did not violate 29 C.F.R. § 2560.503-1(g)(1).

Unum contends that its denial of coverage was correct. According to Unum, Boyles was not eligible for benefits under the Unum policy because he was not "actively at work" on or after August 1, 2013, when the Unum plan went into effect, and he did not qualify for the "continuity of coverage" provisions. The Court agrees with Unum. Unum has not changed its position in this litigation and has consistently adhered to its interpretation of the policy language.

The December 26, 2014 denial letter stated that Boyles' claim had been denied because he was "not eligible under the policy." (ECF No. 64, Ex. C at 2.) The denial letter further explained that Boyles was not working the minimum weekly number of hours (37.5) required to be considered "actively employed" when the Unum policy began. *Id.* The denial letter then addressed the "continuity of coverage" provision (including the paragraph quoted by Boyles above). Unum's letter explained that any "continuity of coverage" payment would "be limited to the amount that would have been paid by the prior carrier." *Id.* at 3.

Unum's denial of coverage was a correct application of the policy language. The "Eligible Group" for both short- and long-term disability benefits at St. Marys was defined as "**All Full-time Employees in active employment in the United States with the Employer**." (ECF No. 64, Ex. A at 3, 5.) The term "Active Employment" is defined as follows: "**Active Employment means you are working for your Employer for earnings that are paid regularly *and* that you are performing the material and substantial duties of your regular occupation. You must be working at least the minimum number of hours as described under Eligible Group(s) in each plan**." (ECF No. 64, Ex. A at 41 (emphasis added).) The "Minimum Hours Requirement" stated that "**Employees must be working at least 37.5 hours per week**." (ECF No. 64, Ex. A at 3, 5.)

Unum's policy definition of the term "active employment" has three necessary conditions: (1) that the employee was "working for [his] Employer for earnings that are paid regularly"; *and* (2) that the employee was "performing the material and substantial duties of [his] regular occupation"; *and* (3) that the employee was working at least 37.5 hours per week. These requirements are defined with the conjunctive "and" rather than the disjunctive "or." It

is uncontested that Boyles was receiving regular pay from St. Marys. But, that is not enough. In *Barinova v. ING*, 363 F. App'x 910 (3d Cir. 2010), the Court rejected a claimant's argument that she was "actively at work" even though she was on leave, because she had received her full salary and related benefits and had not been formally terminated. *Id.* at 914; *accord McKay*, 428 F. App'x at 544. There is no evidence that Boyles ever performed the material and substantial duties of his job after August 1, 2013, when the Unum policy went into effect, or that he worked the 37.5 hours per week necessary to be considered a covered full-time employee.

Unum also correctly interpreted the "continuity of coverage" provision.[4] The Unum policy provided:

> ***WHAT IF YOU ARE NOT IN ACTIVE EMPLOYMENT WHEN YOUR EMPLOYER CHANGES INSURANCE CARRIERS TO UNUM? (Continuity of Coverage)***
>
> When the plan becomes effective, Unum will provide coverage for you if:
>
> - you are not in active employment because of a sickness or injury; and
> - you were covered by the prior policy.
>
> Your coverage is subject to payment of premium.
>
> Your payment will be limited to the amount that would have been paid by the prior carrier. Unum will reduce your payment by any amount for which your prior carrier is liable.

(ECF No. 64, Ex. A at 35.) This provision does not provide coverage because Boyles was not entitled to be paid anything under the AHL policy, for the reasons explained above. Thus, he

---

[4] Unum's brief discusses a second "continuity of coverage" provision that addresses pre-existing conditions. (*See* ECF No. 65 at 15-16.) Boyles has not disputed Unum's interpretation of this provision, nor was it cited by Unum in its denial letters. The Court notes that this provision would not provide coverage because it requires Boyles to have been in "active employment" on the plan's effective date.

could not be paid anything under the Unum "continuity of coverage" provision. In summary, Unum's decision to deny coverage was not an abuse of discretion and Unum is entitled to summary judgment.

## VI. Conclusion

In accordance with the foregoing, AMERICAN HERITAGE LIFE INSURANCE COMPANY'S ("AHL") MOTION FOR SUMMARY JUDGMENT (ECF No. 60); and UNUM'S MOTION FOR SUMMARY JUDGMENT ON THE ADMINISTRATIVE RECORD (ECF No. 64) are **GRANTED**. Defendants AHL and Unum will be dismissed from the case. The case shall proceed against Defendants St. Marys and Azzato.

A corresponding Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD P. BOYLES, JR., ) | Case No. 3:15-cv-274 |
| ) | |
| Plaintiff, ) | JUDGE KIM R. GIBSON |
| ) | |
| v. ) | |
| ) | |
| AMERICAN HERITAGE LIFE ) | |
| INSURANCE COMPANY d/b/a ALLSTATE ) | |
| BENEFITS a/k/a ALLSTATE LIFE ) | |
| INSURANCE COMPANY OF NEW YORK, ) | |
| JEFFREY AZZATO, ST. MARYS ) | |
| INSURANCE AGENCY, INC., and UNUM ) | |
| LIFE INSURANCE COMPANY OF ) | |
| AMERICA a/k/a UNUM GROUP, ) | |
| ) | |
| Defendants. ) | |

## ORDER

AND NOW, this 28th day of December, 2016, in accordance with the foregoing Memorandum Opinion, it is **HEREBY ORDERED** that AMERICAN HERITAGE LIFE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT (ECF No. 60); and UNUM'S MOTION FOR SUMMARY JUDGMENT ON THE ADMINISTRATIVE RECORD (ECF No. 64) are **GRANTED**. AHL and Unum are hereby dismissed from the case.

BY THE COURT:

_____
KIM R. GIBSON
UNITED STATES DISTRICT JUDGE