## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RONALD P. BOYLES, JR.,** | ) | **Case No. 3:15-cv-274** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE KIM R. GIBSON** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **AMERICAN HERITAGE LIFE** | ) | |
| **INSURANCE COMPANY d/b/a** | ) | |
| **ALLSTATE BENEFITS a/k/a ALLSTATE** | ) | |
| **LIFE INSURANCE COMPANY OF NEW** | ) | |
| **YORK, JEFFREY AZZATO, ST. MARYS** | ) | |
| **INSURANCE AGENCY, INC., and UNUM** | ) | |
| **LIFE INSURANCE COMPANY OF** | ) | |
| **AMERICA a/k/a UNUM GROUP,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

### I. Introduction

Before the Court is Jeffrey Azzato and St. Marys Insurance Agency's ("St. Marys") Motion for Summary Judgment (ECF No. 91). The Motion has been fully briefed (ECF Nos. 93, 94, 97, 98, 101, 102, 103) and is ripe for disposition.

After numerous back surgeries and a difficult recovery, Plaintiff Ronald P. Boyles, Jr. contacted Mr. Azzato, the president of Mr. Boyles's employer, St. Marys. Mr. Boyles told Mr. Azzato that he was considering applying for disability benefits. Mr. Azzato instead offered to pay Mr. Boyles's full salary while he recovered and Mr. Boyles thus did not pursue disability.

Months later, St. Marys changed disability insurers. Because of his continued receipt of his full salary and the change in disability policies, when Mr. Boyles ultimately stopped working due to his health problems, both the old and new disability insurers denied his claim for disability

1

benefits. Mr. Boyles filed the present suit against the insurers, St. Marys, and Mr. Azzato pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.,* for the denial of disability benefits and for St. Marys and Mr. Azzato's alleged breaches of fiduciary duty.

St. Marys and Mr. Azzato (collectively, "Defendants") now seek summary judgment on the breach of fiduciary duty claims and a *respondeat superior* claim against St. Marys.

For the reasons that follow, Defendants' Motion is **GRANTED**.

## II. Jurisdiction and Venue

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as Mr. Boyles's claims arise under federal law. Venue is proper in this District under 29 U.S.C. § 1132(e)(2).

## III. Procedural History

Mr. Boyles filed his First Amended Complaint (ECF No. 26) against American Heritage Life Insurance Company ("Allstate"), Mr. Azzato, St. Marys, and Unum Life Insurance Group ("Unum") on November 24, 2015. Mr. Boyles brought twelve counts, many of which were resolved by this Court's Opinions and Orders on Defendants' Motions to Dismiss and Allstate and Unum's Motions for Summary Judgment.[1] (*See* ECF No. 81, 82.) After these two Opinions, only Mr. Azzato and St. Marys remain as Defendants. (*See* ECF No. 82 at 16.) Only three counts remain: (1) Count VIII: ERISA § 502(a)(3)—Breach of Fiduciary Duty against Mr. Azzato, (2) Count XI: *Respondeat Superior* against St. Marys, and (3) Count XII: ERISA § 502(a)(3)—Breach of

---

[1] Mr. Boyles, Allstate, and Unum agreed that no discovery was necessary between them and that the case should be decided on the respective administrative records. (ECF No. 82 at 3.) Thus, Allstate and Unum filed for summary judgment in 2016. Mr. Boyles, Mr. Azzato, and St. Marys conducted discovery on the claims between them and thus had a later summary judgment deadline. (*See* ECF No. 88.)

Fiduciary Duty against St. Marys. (*See* ECF Nos. 81, 82; *see also* ECF No. 93 at 10; ECF No. 97 at 1.)

On January 4, 2019, Mr. Azzato and St. Marys filed a Motion for Summary Judgment (ECF No. 91), accompanied by their Brief in Support (ECF No. 93), Concise Statement of Material Facts (ECF No. 94), and an Appendix containing numerous Exhibits (ECF No. 91-3). Mr. Boyles filed his Memorandum in Opposition (ECF No. 97) and Exhibits in Support thereof (ECF No. 98) on February 15, 2019. Mr. Azzato and St. Marys then filed their Reply Brief (ECF No. 101), Supplemental Concise Statement of Material Facts (ECF No. 102), and Appendix with Exhibits (ECF No. 103) on March 4, 2019.

## IV.   Undisputed Facts[2]

### A.   The Parties

St. Marys is an independent insurance agency with its principal office in St. Marys, Pennsylvania. (ECF No. 94 ¶ 1; ECF No. 97 at 1.) Mr. Azzato is the president and co-owner of St. Marys. (ECF No. 94 ¶ 1; ECF No. 97 at 1.)

In October 2006, St. Marys acquired Boyles Insurance Agency. (ECF No. 94 ¶ 3.) Mr. Boyles, who was an employee of Boyles Insurance Agency, became an employee of St. Marys. (*Id.*

---

[2] The Court derives these facts from a combination of Defendants' Concise Statement of Material Facts (ECF No. 94), Defendants' Appendix of Exhibits thereto (ECF No. 91-3), Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment (ECF No. 97), Plaintiff's Exhibits (ECF No. 98), Defendants' Supplemental Concise Statement of Material Facts (ECF No. 102), and Defendants' Appendix of Exhibits thereto (ECF No. 103). Mr. Boyles did not file a Responsive Concise Statement of Material Facts, as required by the Local Rules of Court of the United States District Court for the Western District of Pennsylvania, *see* LCvR 56.C, https://www.pawd.uscourts.gov/sites/pawd/files/lrmanual20181101.pdf, and the Final Scheduling Order in this case (*see* ECF No. 88 at 4 (demanding "strict compliance" with Local Rule of Court 56.C)). The Court will deem the "Background/Statement of the Case" in Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment (ECF No. 97) to be his responsive concise statement of material facts, as Mr. Boyles clearly uses this section to respond to some of Defendants' Concise

¶¶ 2-3; ECF No. 97 at 2.) He worked primarily out of St. Marys's Boyles Insurance Agency office in State College, Pennsylvania. (ECF No. 94 ¶ 6; ECF No. 97 at 2.) Mr. Boyles's last day of work for St. Marys for which he was paid full salary was November 22, 2013, although he continued to receive paid vacation benefits through December 31, 2013. (ECF No. 94 ¶ 9; ECF No. 97 at 5.)

Mr. Boyles's job duties with St. Marys consisted of selling insurance, soliciting clients and following up on leads, maintaining and servicing his existing book of business, writing new policies or obtaining new coverage for existing clients, handling claims by clients, spending "face time" with clients at least once per year or on some other regular basis, fielding calls, e-mails, and text messages around the clock, and traveling to meet and/or solicit clients and to attend seminars. (ECF No. 94 ¶ 10.) His schedule was more flexible than other employees in St. Marys's State College office and he was able to conduct business remotely. (*Id.* ¶¶ 11-12.)

---

Statement. However, to the extent the Court is unable to identify responsive facts in Mr. Boyles's Background/Statement of the Case, those facts in Defendants' Concise Statement will be deemed admitted. *See* LCvR 56.E ("Alleged material facts set forth in the moving party's Concise Statement of Material Facts . . . will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party."); (ECF No. 88 at 5 ("All material facts set forth in the Movant's Concise Statement of Undisputed Material Facts shall be deemed admitted for the purpose of summary judgment unless specifically controverted as set forth herein.")); *Wylie v. TransUnion, LLC,* Case No. 3:16-cv-102, 2017 WL 4386404, at *1 (W.D. Pa. Sept. 29, 2017) (Gibson, J.) (concluding that a party's failure to timely file a responsive concise statement of material facts resulted in deemed admissions); *Abed-Rabugh v. Hoobrajh,* Case No. 3:17-cv-15, 2019 WL 343178, at *2 (W.D. Pa. Jan. 28, 2019) (Gibson, J.) (treating facts as undisputed when the non-moving party did not respond to the moving party's statement of material facts); *Wells Fargo Bank, N.A. v. Carnell,* Case No. 3:16-cv-130, 2018 WL 2994393, at *2 n.3 (W.D. Pa. June 14, 2018) (Gibson, J.) (deeming a paragraph in the concise statement of material facts as admitted because the opposing party did not respond to the paragraph); *see also* Fed. R. Civ. P. 56(e) ("If a party fails to . . . properly address another party's assertion of fact as required by Rule 56(c), the court may: . . . (2) consider the fact undisputed for purposes of the motion . . . ."). The Court asks Mr. Boyles to diligently adhere to this Court's Local Rules in the future so as not to drain the Court's limited time and resources. *See, e.g., McGovern v. Correct Care Sols., LLC,* Case No. 3:15-CV-221, 2018 WL 769309, at *1 n.2 (W.D. Pa. Feb. 6, 2018) (Gibson, J.) (explaining the importance of complying with the Local Rules regarding concise statements of material fact).

4

## B. St. Marys's Disability Insurance Policies

St. Marys sponsored an employee benefits plan for its employees, including Mr. Boyles. (*Id.* ¶ 27; ECF No. 97 at 2.) This plan included group short-term ("STD") and long-term ("LTD") disability insurance. (ECF No. 94 ¶ 27; ECF No. 97 at 2.) St. Marys was not the plan administrator for the STD or LTD policies.[3] (ECF No. 94 ¶ 191.) Instead, Allstate and Unum, who insured the plans, were the plan administrators with the discretion to determine eligibility for benefits. (*Id.*; ECF No. 82 at 5.) Thus, with respect to STD and LTD benefits under both the Allstate and Unum policies, neither St. Marys nor Mr. Azzato had the discretion to (1) decide whether a group member was paid disability benefits; (2) determine whether an employee was eligible for benefits; (3) determine the level or amount of benefits an employee would or could receive under the policies; (4) determine whether an applicant/employee met the definition of "disability" under the policies; (5) pay benefits if granted; and (6) determine the length of time an individual would receive STD or LTD benefits. (ECF No. 94 ¶ 48.)

### 1. The Allstate Policy

Allstate insured St. Marys's disability plan from January 1, 2010 through July 31, 2013. (*Id.* ¶ 28; ECF No. 97 at 2.) The Allstate plan provided that full-time, active employees working 30 or more hours per week were eligible for coverage. (ECF No. 94 ¶ 30.) To receive STD benefits, an employee had to be continuously disabled for the elimination period of 30 days. (*Id.* ¶ 34; ECF

---

[3] In his Memorandum in Opposition to Defendants' Motion for Summary Judgment, Mr. Boyles claims that St. Marys was the plan administrator. (*See* ECF No. 97 at 10.) Mr. Boyles supports this contention with one citation to the record that does not raise a genuine dispute as to the identity of the plan administrators. *See infra* Section VI.A.1. Moreover, in this Court's Memorandum Opinion and Order on Allstate and Unum's Motions for Summary Judgment, this Court found that the parties—including Mr. Boyles—agreed that Allstate and Unum were the plan administrators. (*See* ECF No. 82 at 5; ECF No. 73 at 5.)

No. 97 at 2-3.) The monthly benefit for a qualifying employee was 60% of monthly earnings up to a maximum benefit of $2,500 for no more than six months. (ECF No. 94 ¶ 34; ECF No. 97 at 2-3.) To receive LTD benefits, the employee had to be continuously disabled for the elimination period of 180 days. (ECF No. 94 ¶¶ 35, 135; ECF No. 97 at 3.) The monthly benefit was 60% of monthly earnings up to a maximum benefit of $6,000 per month payable to age 65. (ECF No. 94 ¶¶ 35, 135; ECF No. 97 at 3.) If the employee continued to receive more than 80% of his monthly earnings, regardless of whether he was totally or partially disabled or working full- or part-time, he did not satisfy the definition of "disability" and no benefits were payable. (ECF No. 94 ¶¶ 36, 38; ECF No. 97 at 2-3.)

### 2. The Switch from Allstate to Unum

St. Marys had the authority to cancel the Allstate policy (ECF No. 94 ¶¶ 31, 123, 139), which it did effective July 31, 2013 when it switched group disability coverage to a policy issued by Unum. (*Id.* ¶¶ 28, 32, 122; ECF No. 97 at 2, 4.) St. Marys originally sought a quote from Unum for STD and LTD policies in mid-June 2013. (ECF No. 94 ¶¶ 40, 128; ECF No. 97 at 4.) Around that time, St. Marys had established a business relationship with Unum and had begun to write for Unum. (ECF No. 94 ¶ 31.) To further its relationship with Unum, St. Marys switched its disability coverage to Unum. (*Id.* ¶¶ 42, 129-30.) During this switch, Mr. Azzato did not contemplate that Mr. Boyles may file for disability at some point. (*Id.* ¶ 144.)

Before the change from Allstate to Unum took effect, a St. Marys employee told Mr. Boyles that St. Marys "currently did just switch to Unum," although Mr. Boyles thought the change would not occur until the policy renewal date and there is a dispute as to whether Mr. Boyles

6

knew the employee was referring to St. Marys's disability policies.[4] (*Id.* ¶¶ 145-48.) Mr. Boyles

did not ask Mr. Azzato any questions regarding the switch from Allstate to Unum. (*Id.* ¶¶ 147,

---

[4] It is undisputed—based on the deemed admissions discussed *supra* note 2—that Mr. Boyles received an email from a St. Marys employee on July 25, 2013, seven days before the change from Allstate to Unum took effect, indicating that Mr. Azzato "currently did just switch to Unum." (ECF No. 94 ¶¶ 146-48.) In relevant part, the email exchange said:

**From:** Angie Krise
**Sent:** Thursday, July 25, 2013 12:15 PM
**To:** Ron Boyles
**Subject:** RE: msa

You can use dental towards your balance that's no problem. As for Allstate [Mr. Azzato] pays for all benefits through them. *He did currently just switch to Unum so lets cross our fingers that they are a better company.* We will still have the vision part through allstate to my understanding but if you do have other questions [Mr. Azzato] would probably be the person to talk to. I don't know much about the ins and outs…I guess its better that way.

I will get the check out in the mail today AND the check will be fore 269.99. You addition was just a little "off" but a simple fix. ☺ Your remaining balance is 665.42.

**From:** Ron Boyles
**Sent:** Thursday, July 25, 2013 9:18 PM
**To:** Angie Krise
**Subject:** RE: msa

Actually the Allstate benefits were voluntary and I pay for my own. [Mr. Azzato] has a group policy for the disability. *I guess if we changed companies (I wasn't aware that was happening but glad. Allstate sucks);* then I need to know how to cancel them if I can. Trying to make an accident claim through them was ridiculous. That's the part that I am questioning. Those accident policies are owned by the employees that purchased them and the premiums are taken from my pre-tax. Thanks.

Ron Boyles
Commercial Accounts
Boyles Insurance Agency
Affiliate of St. Marys Insurance Agency Inc
814-234-1991 office
814-234-4639 fax
814-360-5353 cell

(ECF No. 94 ¶ 147 (emphasis added).) However, Mr. Boyles also explains that he thought the change was not taking place until the policy renewal date in January 2014 and that the email discussion was about an Allstate accident policy, which is distinct from the Allstate disability policy. (ECF No. 97 at 2; ECF No. 91-

149, 155.) Further, Mr. Boyles did not request information from Mr. Azzato or St. Marys regarding St. Marys's disability coverage. (*Id.* ¶¶ 150-53.) And Mr. Azzato never failed or refused to provide information in response to a request from Mr. Boyles. (*Id.*)

### 3. The Unum Policy

Under the Unum policy, full-time employees in active employment with St. Marys had STD and LTD coverage. (*Id.* ¶ 44; ECF No. 97 at 3.) In order to be considered in active employment, employees had to be working at least 37.5 hours per week. (ECF No. 94 ¶ 45; ECF No. 97 at 3.) STD benefits under the Unum policy were 60% of weekly earnings to a maximum benefit of $625 per week for a maximum of 26 weeks. (ECF No. 94 ¶ 47; ECF No. 97 at 3.) LTD benefits were 60% of monthly earnings to a maximum of $6,000 per month. (ECF No. 94 ¶ 47; ECF No. 97 at 3.) The Unum policy differed from the Allstate policy because Unum's LTD policy provided a monthly benefit payable for five years whereas Allstate provided a maximum of $6,000 a month payable to age 65. (ECF No. 94 ¶ 135.)

### C. Mr. Boyles's Back Problems and Surgeries

Mr. Boyles had a history of back problems. (*Id.* ¶ 50; ECF No. 97 at 3.) From late 2011 through September 2012, Mr. Boyles had four surgical procedures related to the implant of a spinal stimulator. (ECF No. 94 ¶ 51; ECF No. 97 at 3.) Each of the first three surgeries interfered with Mr. Boyles's ability to work to some degree, although he was able to continue providing service to his clients and responding to emails while he recovered. (ECF No. 94 ¶ 53.) During his

---

4 at 37-38.) Making all inferences in favor of Mr. Boyles at this stage, the Court finds that Mr. Boyles has sufficiently raised a genuine dispute of material fact as to whether Mr. Azzato and St. Marys notified him that (1) St. Marys was switching disability insurers and (2) the switch would be effective August 1, 2013.

recovery from these surgeries, he continued to work and St. Marys continued to pay his full salary and commissions, even when he worked a reduced schedule. (*Id.* ¶¶ 55-57.)

In September 2012, Mr. Boyles had his fourth surgery. (*Id.* ¶ 58; ECF No. 97 at 3.) Prior to this surgery, Mr. Azzato and Mr. Boyles had a discussion to the effect that Mr. Boyles did not anticipate being off work too long. (ECF No. 94 ¶ 60; ECF No. 97 at 3.) Mr. Azzato indicated that St. Marys would continue to pay Mr. Boyles his full salary during his recovery. (ECF No. 94 ¶ 60; ECF No. 97 at 3.) At that time, Mr. Boyles did not mention a disability claim. (ECF No. 94 ¶ 61.)

After the fourth surgery, Mr. Boyles told Mr. Azzato that his recovery was not going as well as hoped and that he might be off work four to six weeks. (*Id.* ¶ 65; ECF No. 97 at 3.) Mr. Azzato told Mr. Boyles that St. Marys would continue to pay his full salary. (ECF No. 94 ¶ 65; ECF No. 97 at 4.) Again, Mr. Boyles did not mention a disability claim during this conversation. (ECF No. 94 ¶ 66.) Both Mr. Azzato and Mr. Boyles expected Mr. Boyles to eventually recover and come back to work. (*Id.* ¶¶ 67-70.)

Mr. Boyles's first inclination to apply for disability benefits was in December 2012. (*Id.* ¶ 72.) Mr. Boyles obtained an Allstate disability claim form and submitted the portion of the form for which he was responsible to Allstate. (*Id.* ¶¶ 73-74.) However, Mr. Boyles did not follow through with the rest of the Allstate claim form following a conversation with Mr. Azzato.[5] (*Id.* ¶¶ 74, 83; ECF No. 97 at 4.)

Mr. Boyles recounted his conversation with Mr. Azzato as follows:

Q:     Now, at some point after the St. Luke's surgery, did you begin to start thinking, "Maybe I should go on disability"?

---

[5] To complete his disability claim, Mr. Boyles would have needed to get certain information from his employer and physician. (ECF No. 94 ¶ 74.)

9

A:     Yes.

Q:     Alright. Tell me when that occurred, why you were thinking that, who you discussed it with, tell me about it.

A:     Well, it just got to point where just, you know, at what point do you try to keep working, you know. You know, I have had surgery after surgery, you know, it is interfering with my work now, I am on a bunch of medications trying to survive, literally. I gave up. I wanted to keep working forever, you know, like anybody, but it just comes a point where you realize that it's a losing battle. It's just not worth it.

       I knew I had the disability insurance, everybody is telling me to stop, so I said, "Okay. I'm going to stop."

       That was my first inclination of it, and it was December of 2012.

Q:     Before Christmas of 2012?

A:     Yes.

Q:     And before—

A:     Yes, it was in—year, in December of 2012, and I discussed it with [Mr. Azzato], and that's where it came that he would just keep paying me my full salary and, you know, I am going to get better, you know, he kind of cheered me up a little bit with it all. I was really pissed off and depressed and everything.

Q:     You believed you were going to get better?

A:     I wanted to, yeah.

Q:     You believed you would?

A:     At that point, it was—yeah, it was rough.

Q:     And [Mr. Azzato] was encouraging you, you thought—

A:     He encouraged me to keep going, he said, "You can keep going, you are going to get better, I believe you are going to get better," you know, so I went along with it.

10

(ECF No. 94 ¶ 76; *see* ECF No. 97 at 4.) As a result of this conversation, Mr. Boyles decided he would continue to work and did not follow through with his disability claim, as St. Marys would continue to pay him his full salary. (ECF No. 94 ¶ 77; ECF No. 97 at 4.)

During this conversation, there was no discussion about the length of time St. Marys would continue to pay Mr. Boyles's full salary while he was recovering. (ECF No. 94 ¶ 78.) Furthermore, Mr. Boyles did not request and Mr. Azzato did not offer his opinion or recommendation as to whether Mr. Boyles should or should not pursue a disability claim with Allstate. (*Id.* ¶ 79.) Mr. Boyles also did not request and Mr. Azzato did not provide an explanation of Mr. Boyles's eligibility for STD or LTD benefits under the Allstate policy. (*Id.* ¶ 80.) In fact, at no time between Mr. Boyles's September 2012 surgery and the termination of the Allstate policy on July 31, 2013 did Mr. Boyles ask Mr. Azzato to explain his eligibility for coverage under St. Marys's STD or LTD policy. (*Id.* ¶ 81.) Mr. Azzato did not offer this information because, based on his past experience that Mr. Boyles returned to work within days or weeks of his surgeries, Mr. Azzato had not considered the possibility that Mr. Boyles would not recover. (*Id.* ¶ 82.) Mr. Boyles did not have another conversation with Mr. Azzato concerning disability until October 2013. (*Id.* ¶ 90.)

From a financial perspective, Mr. Boyles admits that he was better off receiving his full salary of $9,166.66 per month than receiving the maximum monthly STD benefit of $2,500.00 under the Allstate group policy and that he was grateful to Mr. Azzato for continuing to pay his fully salary. (*Id.* ¶¶ 86, 91-94.) Moreover, at the time he chose to continue receiving his full salary, Mr. Boyles did not believe that Mr. Azzato had any motive for offering to pay Mr. Boyles's full salary other than hoping Mr. Boyles would get better and continue to work. (*Id.* ¶ 89.)

11

## D. Mr. Boyles's Workplace Accident and Workers' Compensation Claim

In early January 2013, Mr. Boyles was working limited hours in the office while still considering a disability claim. (*Id.* ¶ 99; ECF No. 97 at 4.) On January 10, 2013, while working at his office, Mr. Boyles fell down stairs and sustained injuries. (ECF No. 94 ¶ 100.) He then submitted a medical-only workers' compensation claim and St. Marys continued to pay his full salary. (*Id.* ¶ 103.) After a few days off, Mr. Boyles returned to work. (*Id.* ¶ 107.) He underwent shoulder surgery and physical therapy related to his fall. (*Id.* ¶¶ 108-09.)

Mr. Boyles knew that the Allstate group disability policy excluded coverage for disability related to workplace injuries. (*Id.* ¶ 104.) He also knew from his experience working in the insurance industry that his fall at work and the injuries he sustained would impact his ability to receive disability benefits. (*Id.* ¶ 105.) Mr. Boyles thus planned to wait to file a disability claim until his workers' compensation claim was closed. (*Id.* ¶¶ 111-21.) While his workers' compensation claim was pending, the Allstate policy terminated and the Unum policy became effective. (*Id.* ¶ 110.) Mr. Boyles never asked Mr. Azzato any questions about a potential switch in insurers or his eligibility for coverage under St. Marys's disability policies. (*Id.* ¶¶ 146-53.) Mr. Azzato had no reason to believe that Mr. Boyles continued to give any consideration to filing a claim for disability benefits, as Mr. Boyles never mentioned it or inquired after the December 2012 conversation. (*Id.* ¶ 154; ECF No. 97 at 4.) Mr. Azzato believed Mr. Boyles was satisfied with his continued receipt of his salary and that he was working as much as he could. (ECF No. 94 ¶ 154; ECF No. 97 at 4.)

### E. Mr. Boyles's Work Activity from January 10, 2013 to November 22, 2013

After his fall at work on January 10, 2013, Mr. Boyles returned to work within a few days, working to the same extent as he had been working after his fourth surgery in September 2012. (ECF No. 94 ¶ 160.) Between January 2013 and his last day of work in November 2013, Mr. Boyles was actively working and performing the material duties of his job, including writing new business, soliciting new business, communicating with clients and St. Marys employees, and meeting with clients. (*Id.* ¶¶ 161-63, 165-67.)

Then, in early- to mid-October 2013, Mr. Azzato informed Mr. Boyles that Mr. Boyles would have to decide whether he was going to continue to work full-time and receive his full salary or not. (ECF No. 102 ¶ 194.) Mr. Azzato explained that St. Marys had been paying Mr. Boyles his full salary since the September 2012 surgery and that "after 13 months [he] didn't think that [he] was getting [his] money's worth as far as paying [Mr. Boyles] the full time salary that [Mr. Boyles] was receiving." (*Id.* ¶ 195.) Mr. Azzato further explained that Mr. Boyles was not producing at a level needed to continue receiving his full salary. (*Id.* ¶¶ 197, 198; ECF No. 97 at 4.) Mr. Azzato had also learned that others in the State College office were increasingly performing functions that Mr. Boyles normally would do. (ECF No. 102 ¶ 197.) Mr. Boyles's last day working for St. Marys for which he was paid full salary was November 22, 2013. (ECF No. 94 ¶ 9; ECF No. 97 at 5.)

### F. Mr. Boyles's Disability Claims

Mr. Boyles filed an initial disability claim with Allstate on December 19, 2013. (ECF No. 94 ¶ 168.) Allstate denied the claim, asserting that Mr. Boyles's condition resulted from the January 10, 2013 workplace accident. (*Id.* ¶ 168.) Mr. Boyles thereafter filed three appeals with

13

Allstate, all of which were denied because at all times prior to the cancellation of the Allstate policy, Mr. Boyles continued to receive his full salary and thus did not meet the definition of "disability" under the policy. (*Id.* ¶¶ 169, 174-76, 178; ECF No. 97 at 5.)

Mr. Boyles then submitted a disability claim to Unum in July 2014. (ECF No. 94 ¶ 180; ECF No. 97 at 5.) Unum ultimately denied the claim because Mr. Boyles was not in "active employment" on August 1, 2013, when the Unum policy went into effect. (ECF No. 94 ¶ 187; ECF No. 97 at 5.) Unum based this decision in part on Mr. Boyles's admission that after May 2013, he had not worked the requisite number of hours prior to the inception of coverage. (ECF No. 94 ¶ 187.) Mr. Boyles appealed, and Unum upheld its decision. (*Id.* ¶¶ 188, 190; ECF No. 97 at 5.)

## V. Legal Standard

"Summary judgment is appropriate only where . . . there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." *Melrose, Inc. v. Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010) (quoting *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 380 n.6 (3d Cir. 2007)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Material facts are those that will affect the outcome of the trial under governing law. *Anderson*, 477 U.S. at 248. The Court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009). "In making this determination, 'a court must view the facts in the light most favorable to the nonmoving party and draw all

14

inferences in that party's favor.'" *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994)).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials" of the pleading, but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 n.11 (1986)). "For an issue to be genuine, the nonmovant needs to supply more than a scintilla of evidence in support of its position—there must be sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." *Coolspring Stone Supply v. Am. States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993); *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (noting that a party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue" (internal quotation marks omitted)).

**VI.  Discussion**

Only three claims remain in this lawsuit: (1) Count VIII: ERISA § 502(a)(3)—Breach of Fiduciary Duty against Mr. Azzato; (2) Count XI: *Respondeat Superior* against St. Marys; and (3) Count XII: ERISA § 502(a)(3)—Breach of Fiduciary Duty against St. Marys. As Count VIII and Count XII are based upon the same conduct and the same cause of action, the Court will address

these claims together. The viability of Count XI depends on Count VIII, so Count XI will be discussed last.

## A. Counts VIII and XII: Breach of Fiduciary Duty

The parties agree that the disability plans at issue are governed by ERISA. ERISA[6] requires that "a fiduciary . . . discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(1)-(A)(i).

To sustain an ERISA breach of fiduciary duty claim, Mr. Boyles must establish:

> (1) the defendant was "acting in a fiduciary capacity"; (2) the defendant made "affirmative misrepresentations or failed to adequately inform plan participants and beneficiaries"; (3) the misrepresentation or inadequate disclosure was material; and (4) the plaintiff detrimentally relied on the misrepresentation or inadequate disclosure.

*In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 579 F.3d 220, 228 (3d Cir. 2009) (citing *Int'l Union, United Auto., Aerospace & Agric. Workers of Am., U.A.W. v. Skinner Engine Co.*, 188 F.3d 130, 148 (3d Cir. 1999); *Burstein v. Ret. Account Plan for Emps. of Allegheny Health, Educ. & Research Found.*, 334 F.3d 364, 384 (3d Cir. 2003); *Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 73 (3d Cir. 2001)). The Court will address each of these elements in turn.

---

[6] "ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406, 413 (3d Cir. 2013) (quotation marks omitted) (quoting *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 137 (1990)). ERISA accomplishes these goals by "establish[ing] standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans." *Id.* (quotation marks omitted) (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44 (1987)). Specifically, "ERISA defines the circumstances under which a person or entity is a fiduciary, sets forth the duties of these fiduciaries, and provides various causes of action designed to promote the enforcement of these duties." *Id.*

### 1. Fiduciary Capacity

As to the first element, "[t]here are three ways to acquire fiduciary status under ERISA: (1) being named as the fiduciary in the instrument establishing the employee benefit plan; (2) being named as a fiduciary pursuant to a procedure specified in the plan instrument . . . ; and (3) being a fiduciary under the provisions of 29 U.S.C. § 1002(21)(A)." *Glaziers & Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Sec.*, 93 F.3d 1171, 1179 (3d Cir. 1996) (citations omitted). Only the third situation applies in this case.

Under 29 U.S.C. § 1002(21)(A), a person acts as a fiduciary "to the extent . . . he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or . . . he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). As the Third Circuit has explained, "ERISA . . . defines 'fiduciary' not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan." *In re Unisys*, 579 F.3d at 228 (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993)). Fiduciary duties "attach not just to particular persons, but to particular persons performing particular functions." *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1158 (3d Cir. 1990).

The Third Circuit has explained that "where an administrator of a plan decides matters required in plan administration or involving obligations imposed upon the administrator by the plan, the fiduciary duties imposed by ERISA attach." *Payonk v. HMW Indus.*, 883 F.2d 221, 225 (3d Cir. 1989). However, where "employers conduct businesses and make business decisions not regulated by ERISA, no fiduciary duties apply." *Id.* Moreover, "when employers wear 'two hats' as employers and administrators, ' . . . they assume fiduciary status "only when and to the extent"

17

that they function in their capacity as plan administrators, not when they conduct business that is not regulated by ERISA.'" *Id.*

For example, a plan administrator[7] "acts as a fiduciary when explaining plan benefits and business decisions about plan benefits to its employees." *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 492 (3d Cir. 2000) (citing *In re Unisys Corp. Retiree Med. Benefit ERISA Litig.*, 57 F.3d 1255, 1261 n.10 (3d Cir. 1995)). Moreover, "a determination about whether a claimant is entitled to benefits under the terms of the plan documents is a fiduciary act connected to plan administration." *Miller v. Mellon Long Term Disability Plan*, 721 F. Supp. 2d 415, 426 (W.D. Pa. 2010) (citing *Aetna Health Inc. v. Davila*, 542 U.S. 200, 219-20 (2004)). However, "[t]he amendment of an ERISA plan is not a fiduciary act governed by ERISA." *Leuthner v. Blue Cross & Blue Shield of Ne. Pa.*, 454 F.3d 120, 127 (3d Cir. 2006). And those who perform "purely ministerial tasks" are not fiduciaries under ERISA. *Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406, 422 (3d Cir. 2013).

Here, Mr. Boyles asserts that Defendants were fiduciaries because St. Marys was the plan sponsor and plan administrator and Mr. Azzato was the president and co-owner of St. Marys. (ECF No. 97 at 10.) Alternatively, Mr. Boyles argues that Defendants were acting as fiduciaries when Mr. Azzato gave Mr. Boyles the option of receiving his full salary while he recovered instead of filing for disability and when Mr. Azzato failed to tell Mr. Boyles about the change in

---

[7] Under ERISA, a plan administrator is either (1) the person specifically designated as such by the terms of the instrument under which the plan is operated or (2) if no administrator is designated, the plan sponsor. 29 U.S.C. § 1002(16)(A). "Plan sponsor" refers to the following: "(i) the employer in the case of an employee benefit plan established or maintained by a single employer, (ii) the employee organization in the case of a plan established or maintained by an employee organization, or (iii) in the case of a plan established or maintained by two or more employers or jointly by one or more employers and one or more employee organizations, the association, committee, joint board of trustees, or other similar group of representatives of the parties who establish or maintain the plan." 29 U.S.C. § 1002(16)(B).

disability plans from Allstate to Unum. (*Id.* at 11.)

Defendants argue that Mr. Azzato was dealing with a routine personnel issue as opposed to the discretionary administration of a disability benefits plan when he spoke to Mr. Boyles in December 2012 about receiving his fully salary. (ECF No. 93 at 15.) Defendants also assert that the change in disability insurers does not implicate fiduciary obligations under ERISA. (*Id.* at 23.)

The Court agrees that Defendants were not fiduciaries because (1) the Court previously found—and Mr. Boyles previously admitted—that Allstate and Unum were the plan administrators in this case; and (2) Mr. Azzato and St. Marys were not "acting as" administrators or fiduciaries because (a) they did not have discretionary control over the plans that would implicate fiduciary obligations and (b) they were not acting as fiduciaries when taking the actions about which Mr. Boyles complains.

First, as this Court noted in a prior Memorandum Opinion in this case (*see* ECF No. 82), Allstate and Unum were the administrators of their respective plans. (*Id.* at 5.) Mr. Boyles admitted this in his Brief in Opposition to Allstate's Motion for Summary Judgment.[8] (ECF No. 73 at 5 ("*As administrators of the plan,* [Allstate] representatives had a duty to Boyles . . . ."

---

[8] Mr. Boyles's attempt to muddy the waters by claiming that Mr. Azzato admitted that two St. Marys's employees acted as plan administrators is unavailing. (*See* ECF No. 97 at 10.) At his deposition, Mr. Azzato was asked to define "plan administrator" and then indicate who at St. Marys performed the tasks of plan administrator per his definition. (ECF No. 91-5 at 25.) Mr. Azzato responded by identifying two St. Marys's employees. (*Id.*) Mr. Azzato did not testify as to whether any St. Marys employee acted as plan administrator *as defined by ERISA*. Moreover, even if he had so testified, "[w]hether a defendant is a plan administrator is a factual question which requires an inquiry into the plan document and the factual circumstances surrounding the administration of the plan." *Carducci v. Aetna U.S. Healthcare,* 247 F. Supp. 2d 596, 609 (D.N.J. 2003), *rev'd on other grounds, Levine v. United Healthcare Corp.,* 402 F.3d 156 (3d Cir. 2005). Thus, an individual's conclusory testimony as to his understanding of the identity of the plan administrator under ERISA would not raise a genuine dispute of material fact as to the identity of the administrator if the factual circumstances indicated otherwise.

19

(emphasis added)).) As the Third Circuit has noted, "employers take on fiduciary obligations . .

. only to the extent that they act as the actual plan administrators." *Malia v. Gen. Elec. Co.*, 23 F.3d

828, 833 (3d Cir. 1994) (citing *Payonk*, 883 F.2d at 231 (Stapleton, J., concurring in the judgment));

*see Beck v. PACE Int'l Union*, 551 U.S. 96, 101 (2007) ("[The employer's] operation of its defined-

benefit pension plans placed it in dual roles as plan sponsor and plan administrator; an

employer's fiduciary duties under ERISA are implicated only when it acts in the latter capacity.");

*Payonk*, 883 F.2d at 231 (Stapleton, J., concurring in the judgment) ("Under ERISA, the roles of

plan administrator and plan sponsor are distinct. The plan administrator owes a fiduciary duty

to the plan participants; the plan sponsor, as long as it is not acting as an administrator, generally

does not."). Thus, St. Marys and Mr. Azzato did not take on fiduciary obligations because Allstate

and Unum were plan administrators instead of St. Marys and Mr. Azzato.

Next, even if the Court had not previously determined that Allstate and Unum were the

plan administrators who were subject to fiduciary obligations, the Court finds that the

undisputed facts of this case indicate that Mr. Azzato and St. Marys were not "acting as"

administrators or fiduciaries for two reasons.

First, Mr. Azzato and St. Marys were not fiduciaries because they did not exercise

discretionary control over the management or administration of the plans. *See* 29 U.S.C. §

1002(21)(A). With respect to the grant or denial of STD and LTD benefits under both the Allstate

and Unum policies, it is undisputed that neither St. Marys nor Mr. Azzato had the discretion to

(1) decide whether a group member was paid disability benefits; (2) determine whether an

employee was eligible for benefits; (3) determine the level or amount of benefits an employee

would or could receive under the policies; (4) determine whether an employee met the definition

20

of "disability" under the policies; (5) pay benefits if granted; and (6) determine the length of time an individual would receive benefits. (ECF No. 94 ¶ 48.) Further, Mr. Boyles has not pointed to facts that suggest such discretion. For example, Mr. Boyles has not identified evidence that Defendants influenced benefits decisions or had control over the operations of the Allstate and Unum plans. *See Miller*, 721 F. Supp. 2d at 427. Thus, it is undisputed that Defendants did not have the "discretionary authority or discretionary control respecting management of [the] plan" that is required to implicate fiduciary duties. 29 U.S.C. § 1002(21)(A).

Second, Mr. Azzato and St. Marys were not "acting as" fiduciaries or administrators when performing the actions about which Mr. Boyles complains. "[E]mployers take on fiduciary obligations . . . only to the extent that they act as the actual plan administrators." *Malia*, 23 F.3d at 833; *see Beck*, 551 U.S. at 101 (explaining that an employer's fiduciary duties under ERISA are only implicated to the extent the employer acts as plan administrator). Mr. Boyles identifies two occasions that he claims implicated fiduciary obligations—Mr. Azzato's December 2012 full-salary offer to Mr. Boyles and Mr. Azzato's failure to notify Mr. Boyles that St. Marys would be switching disability insurers effective August 1, 2013.[9] However, no reasonable factfinder could determine that these situations implicated fiduciary obligations under ERISA.

With regard to the first occasion—the December 2012 conversation between Mr. Azzato and Mr. Boyles during which Mr. Azzato offered to pay Mr. Boyles his full salary while he recovered—there is no indication that Mr. Azzato's full-salary offer was anything other than a

---

[9] Mr. Boyles argues that these occasions should be discussed together, whereas Defendants argue that the occasions should be viewed as two separate events. (ECF No. 97 at 12-13; ECF No. 101 at 4-5.) The Court will generally address the two events separately because they involve different facts and raise some distinct issues.

business decision regarding a valued employee. Salary decisions are generally matters of business judgment that do not implicate ERISA's fiduciary duties. *See Eckelkamp v. Beste*, 201 F. Supp. 2d 1012, 1023 (E.D. Mo.), *aff'd*, 315 F.3d 863 (8th Cir. 2002) ("Setting compensation levels is a business decision or judgment made in connection with the on-going operation of a business. An employer's discretion in determining salaries is a business judgment which does not involve the administration of an ERISA plan or the investment of an ERISA plan's assets."); *Oren-Bousquet v. LaSalle BVank, N.A.*, No. SA-07-CA-802-H, 2008 WL 11410042, at *1 (W.D. Tex. June 16, 2008) (finding that determining salaries is a business judgment decision); *see also Barrus v. Dick's Sporting Goods, Inc.*, 732 F. Supp. 2d 243 (W.D.N.Y. 2010) ("In determining wage policy, [the d]efendants were not acting as plan fiduciaries . . . . "); *LePage v. Blue Cross & Blue Shield of Minn.*, Civ. No. 08-584 (RHK/JSM), 2008 WL 2570815, at *5 (D. Minn. June 25, 2008) (explaining that ERISA did not apply to the defendant's decision on how to classify employees for payroll purposes).

Moreover, it is undisputed that during this conversation, Mr. Azzato did not offer his opinion or recommendation as to whether Mr. Boyles should pursue a disability claim. (ECF No. 94 ¶ 80.) Mr. Boyles did not ask and Mr. Azzato did not offer to explain his eligibility for coverage under the Allstate policy. (*Id.* ¶ 81.) And Mr. Boyles points to no evidence that suggests that the conversation related to "management of [the] plan" such that it would implicate fiduciary duties under ERISA. *See* 29 U.S.C. § 1002(21)(A). Instead, the undisputed facts show that Mr. Boyles simply told Mr. Azzato that he was considering applying for disability and that Mr. Azzato then offered to pay Mr. Boyles's full salary while he recovered. (ECF No. 94 ¶ 76.) Under these

circumstances, the mere mention of disability benefits is not sufficient to implicate fiduciary obligations under ERISA.

Next, Mr. Boyles claims that Mr. Azzato acted as a fiduciary when he failed to tell Mr. Boyles that St. Marys was changing disability plans from Allstate to Unum effective August 1, 2013 even though he knew that Mr. Boyles had previously indicated an interest in applying for disability.[10] (ECF No. 97 at 11.)

Mr. Boyles cites to the Supreme Court's decision in *Varity Corp. v. Howe*, 516 U.S. 489 (1996), to support his argument. Mr. Boyles claims that *Varity* stands for the proposition that "employers, generally, will be fiduciaries under ERISA when they describe or communicate about employee benefit programs to their employees." (ECF No. 97 at 8.) Mr. Boyles asserts that the failure to notify him about the change in disability insurers was an "omission of communications" that "obviously pertained to benefits," thus implicating fiduciary obligations. (*Id.* at 11.) However, *Varity* is inapposite.

In *Varity*, a parent company developed a plan to transfer its unprofitable divisions and debts into a new subsidiary. *Varity*, 516 U.S. at 493. The company foresaw the possibility that the subsidiary would fail. *Id.* But this failure was viewed as positive because it would eradicate the debts that would be transferred to the subsidiary, including debts arising from a benefits plan. *Id.* Rather than simply terminating the benefits—which it could have done without implicating

---

[10] Defendants argue that Mr. Boyles had notice of the change in disability insurers prior to the change and thus that Mr. Boyles cannot establish that Mr. Azzato and St. Marys were fiduciaries on the ground that they changed plans without telling him. (ECF No. 93 at 22.) However, as discussed *supra* note 4, the Court finds a genuine dispute as to whether Mr. Boyles knew St. Marys was changing disability insurers effective August 1, 2013. Therefore, the Court rejects Defendants' argument that Mr. Boyles's notice entitles Defendants to summary judgment.

fiduciary duties—the parent company called employees to a special meeting where it persuaded them to become employees of the new subsidiary. *Id.* at 493-94. At this meeting, the parent company told employees that their employee benefits would remain secure if they voluntarily transferred to the new subsidiary—even though the parent company knew this was not true. *Id.* at 494. After the employees voluntarily agreed to the transfer and ultimately lost their benefits, they sued the company for, *inter alia*, breach of fiduciary duty. *Id.* at 495. The company argued that it could not be liable for breach of fiduciary duty for its misrepresentations because, when it made those misrepresentations, it was acting as an employer instead of a fiduciary. *Id.*

The Supreme Court concluded that providing plan beneficiaries with information about the likely future of plan benefits related to the administration of the plan because it involved the "exercise of a power 'appropriate' to carrying out an important plan purpose." *Id.* at 502. Thus, the Court held that "making *intentional representations* about the future of plan benefits . . . is an act of plan administration." *Id.* at 505 (emphasis added).

Furthermore, when faced with the argument that communications regarding the termination of a plan could not constitute plan administration because an employer's decision to terminate a plan itself is not an act of plan administration, the Court disagreed.[11] *Id.* The Court

---

[11] The Court rejects the argument that Defendants had no fiduciary duties in this case because amendments to the terms of a plan—such as a change in disability insurers—do not implicate fiduciary obligations. (*See* ECF No. 93 at 23-24.) Both parties agree that a change of disability insurers itself does not implicate fiduciary obligations. (*Id.* at 23; ECF No. 97 at 8); *see Hughes Aircraft Co. v. Jacobsen*, 525 U.S. 432, 444 (1999) ("In general, an employer's decision to amend a pension plan concerns the composition or design of the plan itself and does not implicate the employer's fiduciary duties which consist of such actions as the administration of the plan's assets."); *Lockheed Corp. v. Spink*, 517 U.S. 882, 889-90 (1996) ("Plan sponsors who alter the terms of a plan do not fall into the category of fiduciaries."); *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995) ("Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans."). Mr. Boyles is not arguing that fiduciary duties were implicated by the change of disability insurers itself. Instead, Mr. Boyles is arguing

stated that "plan administrators often have, and commonly exercise, discretionary authority to communicate with beneficiaries about the future of plan benefits." *Id.* According to the Court, exercising this discretionary authority is a form of plan administration that the company violated when it deceived its employees. *Id.* at 506.

*Varity* is inapplicable to the facts of this case. First, during the relevant time period, Mr. Azzato never communicated with Mr. Boyles about the future of plan benefits.[12] Second, Mr. Azzato never affirmatively misrepresented the future of plan benefits to Mr. Boyles. Thus, the *Varity* court's conclusions that "[c]onveying information about the likely future of plan benefits" and "making intentional representations about the future of plan benefits" implicate fiduciary duties is inapplicable to the present case. *Varity*, 516 U.S. at 502, 505; *see Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 416 (5th Cir. 2003) (describing the *Varity* majority's view "that even if disclosure of a plan's future is discretionary, *once an employer chooses to exercise its discretionary authority by informing the employees* of the future status of a benefit plan, it acts as a fiduciary and thus has a duty not to misrepresent the truth" (emphasis added)). Mr. Boyles's attempt to identify fiduciary obligations based solely on Mr. Azzato's *silence* about the August 1, 2013 switch of disability insurers therefore cannot be grounded in the Supreme Court's holding in *Varity*.

---

that Defendants' fiduciary obligations were implicated by their *failure to communicate* about the change of insurers. As stated in *Varity*, "While it may be true that amending or terminating a plan . . . is beyond the power of a plan administrator (or trustee)—and, therefore, cannot be an act of plan 'management' or 'administration,' it does not follow that making statements about the likely future of the plan is also beyond the scope of plan administration." *Varity*, 516 U.S. at 505. Thus, the Court refuses to conclude that Defendants were not fiduciaries just because the change of disability insurers itself did not implicate fiduciary obligations. However, the Court agrees that to the extent Mr. Boyles is arguing that the change in disability insurers implicated fiduciary duties, such an argument is meritless.

[12] And to the extent Angie Krise's email to Mr. Boyles could be a communication about the future of disability benefits that could be attributed to St. Marys, Mr. Boyles does not raise this argument and the Court will thus not consider it. *See supra* note 4.

Mr. Boyles makes no other arguments and cites to no case law supporting his position that Mr. Azzato and St. Marys had fiduciary obligations under ERISA with respect to their failure to tell Mr. Boyles about the switch in disability insurers. And the Court cannot locate any support for the proposition that Defendants' silence under the circumstances of this case involved plan administration that implicated fiduciary duties.

Therefore, the Court finds that there is no genuine dispute that Defendants were not acting as ERISA fiduciaries under the facts of this case. It is undisputed that Defendants were not plan administrators and had no discretionary authority with respect to the management and administration of the disability plans. Furthermore, Mr. Azzato's business decision to pay Mr. Boyles his full salary while he recovered did not implicate fiduciary obligations, in spite of Mr. Boyles's mention of disability benefits. Finally, Mr. Azzato—as an individual and on behalf of St. Marys—did not implicate any fiduciary obligations by failing to notify Mr. Boyles of the change in disability insurers.[13]

Because there is no genuine dispute of material fact and Defendants are entitled to judgment as a matter of law with regard to an essential element of Mr. Boyles's breach of fiduciary

---

[13] The Court also disagrees that St. Marys's status as the plan sponsor implicates fiduciary obligations. "[T]he plan sponsor, as long as it is not acting as an administrator," does not owe a fiduciary duty to plan participants. *Malia*, 23 F.3d at 833 (quoting *Payonk*, 883 F.2d at 231); *In re Fruehauf Trailer Corp.*, 250 B.R. 168, 205 (D. Del. 2000) ("[T]he corporate sponsor of a benefit plan . . . is generally not a fiduciary."); *see also Arrow Drilling Co., Inc. v. Carpenter*, No. Civ.A. 2:02-CV-09097, 2003 WL 23100808, at *2 n.5 (E.D. Pa. Sept. 23, 2003) (explaining that even if the plaintiffs were employer-sponsors of the plan, that alone would not render them fiduciaries under ERISA). Instead, a plan sponsor will only implicate fiduciary duties "if it exercises some discretion or control over the management, assets, or administration of the plan." *In re Fruehauf*, 250 B.R. at 205. As explained above, Mr. Azzato and St. Marys (1) were not plan administrators and (2) were not acting as plan administrators. Thus, St. Marys did not have fiduciary obligations under the facts of this case, in spite of St. Marys's status as plan sponsor.

claims, Defendants are entitled to summary judgment on these claims. The Court will nevertheless address the other elements of a breach of fiduciary duty claim.

## 2. Material Misrepresentation or Omission

The second and third elements of a breach of fiduciary duty claim under ERISA require the defendant to make a material misrepresentation or material omission. Here, Mr. Boyles identified one misrepresentation and one omission by Mr. Azzato that Mr. Boyles claims breached Mr. Azzato and St. Marys's alleged fiduciary duties.

First, Mr. Boyles claims Mr. Azzato made a misrepresentation when he told Mr. Boyles in December 2012 that he would continue to pay Mr. Boyles's full salary while he recovered. (ECF No. 97 at 12.)

"An ERISA fiduciary may not, in the performance of [its] duties, materially mislead those to whom the duties of loyalty and prudence are owed." *In re Unisys*, 579 F.3d at 228 (alteration in original) (quotation marks omitted) (quoting *Adams*, 204 F.3d at 492). "A misleading statement or omission by a fiduciary is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed retirement decision or a harmful decision regarding benefits." *Id.* (quotations and citations omitted).

In this case, no reasonable factfinder could conclude that Mr. Azzato's full-salary offer was a misrepresentation about benefits or that it was substantially likely to mislead a reasonable employee. It is undisputed that Mr. Azzato continued to pay Mr. Boyles's full salary from the December 2012 conversation through November 2013.[14] (ECF No. 94 ¶ 9; ECF No. 97 at 5.)

_____

[14] While it could be argued that Mr. Azzato's decision to stop paying Mr. Boyles his full salary after November 2013 made Mr. Azzato's initial full-salary offer a misrepresentation, the Court finds that, to the extent the full-salary offer misrepresented anything, that misrepresentation was not about benefits and

Moreover, it is undisputed that Mr. Boyles did not request and Mr. Azzato did not offer his opinion or recommendation as to whether Mr. Boyles should or should not pursue a disability claim with Allstate. (ECF No. 94 ¶ 79.) Mr. Boyles also did not request and Mr. Azzato did not provide an explanation of Mr. Boyles's eligibility for STD or LTD benefits under the Allstate policy. (*Id.* ¶ 80.) There is simply no genuine dispute that Mr. Azzato did not make any misrepresentations to Mr. Boyles when he offered to continue to pay Mr. Boyles's full salary while he recovered.[15]

Furthermore, Mr. Boyles does not even argue that the statement was misleading. Instead, he appears to argue that Mr. Azzato's offer was material because it put Mr. Boyles in the unique situation in which he was denied coverage under both policies. (ECF No. 97 at 12.) Mr. Boyles also states that any reasonable person in his position would have accepted the offer. (*Id.* at 13.) However, the fact that the offer was persuasive and purportedly caused an injury to Mr. Boyles does not suggest that the statement was a misrepresentation or that it was substantially likely to mislead an employee into making a harmful benefits decision. Instead, Mr. Boyles's injury — denial of benefits under both the Allstate and Unum disability policies — goes to the detrimental reliance element of his breach of fiduciary duty claims, not to whether Mr. Azzato's full-salary offer was a material misrepresentation.

---

thus could not implicate fiduciary duties under ERISA. Moreover, Mr. Boyles does not make this argument.

[15] Furthermore, Mr. Boyles does not argue that Mr. Azzato made an actionable material omission by failing to tell Mr. Boyles during the December 2012 conversation that Mr. Boyles's receipt of his full salary would affect his eligibility for disability benefits under the Allstate policy. Thus, the Court will not consider this issue.

Mr. Boyles also claims that Mr. Azzato breached fiduciary duties when he, knowing that Mr. Boyles had been considering filing for disability, failed to inform Mr. Boyles that St. Marys's disability insurer would be changing effective August 1, 2013. (ECF No. 97 at 12.)

The Third Circuit's principal case on this issue is *Fischer v. Phila. Elec. Co.*, 994 F.2d 130, 135 (3d Cir. 1993). In *Fischer*, employees asked their employer's benefits counselors whether an early retirement plan would be adopted. *Id.* at 132. The counselors responded that no plan was being considered. *Id.* An early retirement plan was later adopted, and employees who had already retired and thus were ineligible to obtain the benefits provided by the plan sued for breach of fiduciary duty, arguing that the employer had an obligation under ERISA to tell the truth about potential changes to benefits when asked. *Id.* at 133.

The Third Circuit agreed, concluding that "[a] plan administrator may not make affirmative material misrepresentations to plan participants about changes to an employee pension benefits plan." *Id.* at 135; *see Mushalla v. Teamsters Local No. 863 Pension Fund*, 300 F.3d 391, 396 (3d Cir. 2002) ("A plan administrator breaches its fiduciary duty under ERISA if it materially misleads employees who inquire regarding possible changes in a plan."). "Put simply, when a plan administrator speaks, it must speak truthfully." *Fischer*, 994 F.2d at 135.

Here, it is undisputed that Mr. Boyles never asked Mr. Azzato any questions about a potential switch in disability insurers or about St. Marys's disability coverage in general. (ECF No. 94 ¶¶ 147, 149-53, 155.) This case is thus unlike *Fischer*, in which employees *inquired* about potential changes to benefits and the employer misrepresented that no changes were being considered. *See Fischer*, 994 F.2d at 132-33; *Mushalla*, 300 F.3d at 396. Because Mr. Boyles did not inquire about potential changes to St. Marys's disability coverage, Mr. Boyles's breach of

29

fiduciary duty claim must fail. *See Mushalla*, 300 F.3d at 398 (rejecting employees' argument that the benefits fund had an affirmative duty to communicate the potential amendment of the plan to them regardless of whether they made inquiries); *Mushalla v. Teamsters Local No. 863 Pension Fund*, 152 F. Supp. 2d 613, 623 (D.N.J. 2001) (explaining that *Fischer* only requires disclosure of changes to benefits plans in response to an inquiry by a beneficiary), *aff'd*, 300 F.3d 391 (3d Cir. 2002).

Mr. Boyles cites to *Bixler v. Cent. Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292 (3d Cir. 1993), and *Jordan v. Fed. Express Corp.*, 116 F.3d 1005 (3d Cir. 1997), for the proposition that Defendants had an affirmative duty to inform Mr. Boyles about the change in disability insurers. Mr. Boyles argues that Defendants should have known—based on the December 2012 conversation in which Mr. Boyles indicated that he was planning to apply for disability—that their failure to inform Mr. Boyles could cause him harm in the form of denial of disability coverage. (ECF No. 97 at 11-12.) However, the Third Circuit has made clear that *Bixler* and *Jordan* "place[] an affirmative duty on fund administrators to provide fund participants with relevant information *regarding existing benefits*." *Mushalla*, 300 F.3d at 398 (emphasis added). By contrast, *Fischer* governs cases involving potential *changes* to benefits. *Id.* Here, Mr. Boyles's contentions relate to Defendants' failure to tell Mr. Boyles about potential changes to his benefits—Mr. Boyles does not argue that Defendants failed to provide him with information on his existing benefits. Mr. Boyles's claims thus implicate *Fischer* instead of *Bixler* and *Jordan*. And, as explained above, *Fischer* "places a duty on fund administrators to respond truthfully to inquiries of fund participants regarding potential changes to their benefits which are under 'serious consideration.'" *Id.* As no such inquiry was made in this case, Defendants did not violate any

fiduciary obligations by failing to tell Mr. Boyles that disability insurers would be changing effective August 1, 2013. *See id.* (rejecting employees' argument that the benefits fund had an affirmative duty to tell them about the potential amendment of the plan regardless of whether they made inquiries); *Mushalla,* 152 F. Supp. 2d at 623 (explaining that *Fischer* only requires disclosure in response to an inquiry by a beneficiary).

In sum, no reasonable factfinder could determine that Defendants made a material misrepresentation to Mr. Boyles regarding his disability benefits or that Defendants failed to provide Mr. Boyles with information on the change in disability insurers in response to an inquiry from Mr. Boyles. Thus, Mr. Boyles cannot establish that Defendants breached any purported fiduciary duties and the breach of fiduciary duty claims against Defendants fail as a matter of law.

### 3. Detrimental Reliance

The last element of a breach of fiduciary duty claim under ERISA is that the plaintiff must have detrimentally relied on the material misrepresentation or inadequate disclosure. "Detrimental reliance encompasses both an injury and reasonableness." *Shook v. Avaya Inc.,* 625 F.3d 69, 73 (3d Cir. 2010) (citing *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.,* 242 F.3d 497, 508 (3d Cir. 2001); *Curcio v. John Hancock Mut. Life Ins. Co.,* 33 F.3d 226, 237 (3d Cir. 1994)). "An employer, even when acting in a fiduciary capacity, is not responsible for harm that is not reasonably foreseeable." *In re Unisys,* 242 F.3d at 508.

Defendants contend that there is no evidence that Mr. Boyles detrimentally relied on Mr. Azzato's full-salary offer, in part because even if he had not received the full-salary offer, he could not have pursued his disability claim after the January 10, 2013 fall at work due to his open

31

workers' compensation claim. (ECF No. 93 at 21-22.) Defendants also argue that Mr. Boyles cannot establish that he would have been eligible for disability benefits had he applied. (*Id.* at 29.)

However, there is at least some evidence from which a reasonable factfinder could find injury due to Mr. Azzato's actions. For example, a factfinder could conclude that Mr. Boyles had filled out his portion of the disability paperwork and did not complete the rest of the disability benefits application because he decided to continue working and receiving his full salary. (ECF No. 94 ¶¶ 76-77, 83.) Construing the record in Mr. Boyles's favor, a reasonable factfinder could infer that Mr. Boyles would have applied for disability benefits in December 2012 but for Mr. Azzato's offer. Moreover, although there is significant evidence that Mr. Boyles declined to apply for disability in part due to his open workers' compensation claim (ECF No. 93 at 21-22), a factfinder could still find that Mr. Boyles would have completed his disability application prior to the January 2013 fall and workers' compensation issue. A factfinder could also determine that Mr. Boyles would have been eligible for disability under the Allstate policy had he applied, because there is at least some evidence that following his 2012 surgery, Mr. Boyles was working fewer hours, other St. Marys employees were performing tasks he had previously performed, and his work performance was generally impacted by his health problems. (*See, e.g.,* ECF No. 91-4 at 46; ECF No. 91-5 at 20-21; ECF No. 94 ¶¶ 10, 53-55, 70-71, ECF No. 102 ¶¶ 197-98.) Thus, a factfinder could find that Mr. Boyles would have applied for and received disability benefits in December 2012 but for Mr. Azzato's full-salary offer.

A factfinder could also find at least some of this injury to be foreseeable based on the fact that Mr. Azzato knew of Mr. Boyles's continuing health problems and his past mention of

32

disability. Mr. Boyles admitted the following: (1) after his first three surgeries, Mr. Boyles continued to work during his recovery (ECF No. 94 ¶¶ 53, 55); (2) before his fourth surgery, Mr. Boyles told Mr. Azzato that he did not anticipate being off work long and Mr. Boyles intended to return to work after the surgery just like he had returned to work after the previous surgeries (*id.* ¶¶ 60, 62); (3) after the fourth surgery, both Mr. Azzato and Mr. Boyles expected Mr. Boyles to eventually recover and come back to work (*id.* ¶¶ 67-70); (4) at the time of Mr. Azzato's full-salary offer in December 2012, Mr. Azzato had not considered the possibility that Mr. Boyles would not recover, based on his past experience that Mr. Boyles returned to work within days or weeks of his surgeries (*id.* ¶ 82); (5) after Mr. Boyles's workplace accident, Mr. Azzato had no reason to believe that Mr. Boyles continued to give any consideration to filing a claim for disability benefits, as Mr. Boyles never mentioned it or inquired after the December 2012 conversation (*id.* ¶ 154; ECF No. 97 at 4); and (6) Mr. Azzato believed Mr. Boyles was satisfied with his continued receipt of his salary and that he was working as much as he could (ECF No. 94 ¶ 154; ECF No. 97 at 4). However, Mr. Boyles points to the fact that Mr. Azzato knew about his health problems and knew he had previously mentioned disability. Thus, at this stage, a reasonable factfinder could find that the denial of Mr. Boyles's disability claims was reasonably foreseeable at the time of the full-salary offer.

In sum, although the Court finds that genuine disputes preclude a determination on the element of detrimental reliance, the Court still concludes that summary judgment is appropriate based on the first three elements of the breach of fiduciary duty claims. The Court will thus **GRANT** Defendants' Motion for Summary Judgment as to Mr. Boyles's breach of fiduciary duty claims.

33

## B. Count XI: *Respondeat Superior*

Because Mr. Boyles's breach of fiduciary duty claims must be dismissed, there is no actionable conduct on the part of Mr. Azzato for which St. Marys could be held liable. Thus, the Court will **GRANT** Defendants' Motion for Summary Judgment as to Mr. Boyles's *respondeat superior* claim. *See Miller*, 721 F. Supp. 2d at 436 ("Whether *respondeat superior* liability may be invoked to hold the employer/plan sponsor liable for its employee-fiduciaries' breach of fiduciary duties is a question this Court need not reach because, as discussed above, Plaintiff has failed to show that [Defendants] breach a fiduciary duty in the first instance. Thus, there is simply no underlying violation/liability upon which to hold the Bank Defendants vicariously liable, assuming such a claim is viable." (citing *McMahon v. McDowell*, 794 F.2d 100, 109 (3d Cir. 1986))).

## VII. Conclusion

For the foregoing reasons, the Court finds that there is no genuine dispute of material fact that Mr. Azzato and St. Marys did not breach any purported fiduciary duties and that St. Marys cannot be liable on a *respondeat superior* basis. Accordingly, the Court will **GRANT** Defendants' Motion for Summary Judgment. An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RONALD P. BOYLES, JR.,** | ) | **Case No. 3:15-cv-274** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE KIM R. GIBSON** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **AMERICAN HERITAGE LIFE** | ) | |
| **INSURANCE COMPANY d/b/a** | ) | |
| **ALLSTATE BENEFITS a/k/a ALLSTATE** | ) | |
| **LIFE INSURANCE COMPANY OF NEW** | ) | |
| **YORK, JEFFREY AZZATO, ST. MARYS** | ) | |
| **INSURANCE AGENCY, INC., and UNUM** | ) | |
| **LIFE INSURANCE COMPANY OF** | ) | |
| **AMERICA a/k/a UNUM GROUP,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### ORDER

NOW, this 22Nd day of April, 2019, upon consideration of Defendants Jeffrey Azzato

and St. Marys Insurance Agency, Inc.'s Motion for Summary Judgment (ECF No. 91), and for the

reasons set forth in the accompanying Memorandum Opinion, it is **HEREBY ORDERED** that said

Motion is **GRANTED**.

**BY THE COURT:**

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**